JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Ali Razak, Kenan Sabani, Khaldoun Cherdoud

**DEFENDANTS**

Uber Technologies, Inc. and Gegen, LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeremy E. Abay
John K. Weston
Sacks Weston Diamond, LLC
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103  (215) 925-8200

Attorneys *(If Known)*
Matthew J. Hank, Paul C. Lantis and Wendy Buckingham
Littler Mendelson, P.C.
1601 Cherry Street, Suite 1401
Philadelphia, PA 19102  (267) 402-3000

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | ☒ 710 Fair Labor Standards | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | Act | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | | ☐ 720 Labor/Management | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | | Relations | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | | ☐ 740 Railway Labor Act | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | | ☐ 751 Family and Medical | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | | Leave Act | Act |
| | Medical Malpractice | | | ☐ 790 Other Labor Litigation | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 791 Employee Retirement | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | Income Security Act | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | |
| | Employment | **Other:** | | 26 USC 7609 | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | |
| | Other | ☐ 550 Civil Rights | | **IMMIGRATION** | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | ☐ 462 Naturalization Application | |
| | | ☐ 560 Civil Detainee - | | ☐ 465 Other Immigration | |
| | | Conditions of | | Actions | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1332(a)(1), 1441, 1446, and 29 U.S.C. 201 et seq.

Brief description of cause:
Fair Labor Standards Act, Pennsylvania Minimum Wage Act, Pennsylvania Wage Payment and Collection Law

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE  Hon. Michael Baylson

DOCKET NUMBER  2:15-cv-6121-MMB

DATE
02/04/2016

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2124 S. Dorrance St., Philadelphia, PA 19145; 2524 E. Indiana Ave. Philadelphia, PA 19134; 1736 S. Hollywood St., Philadelphia, PA 19145

Address of Defendant: 1455 Market St, Fl. 4, San Francisco, CA 94103-1355

Place of Accident, Incident or Transaction: _____

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: 2:15-cv-6121   Judge Hon. Michael Baylson   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☒   No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
   (Please specify)   Fair Labor Standards Act

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
   (Please specify) 28 U.S.C. Sections 1331, 1332(a)(1), 1367(a), 1441 and 1446

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I,_____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
                              Attorney-at-Law                        Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04 FEB 16   _____   86086
                         Attorney-at-Law                   Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Ali Razak, Kenan Sabini,Khaldoun Cherdoud :     CIVIL ACTION

                  v.

Uber Technologies, Inc. Gegen LLC              NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( X )


| 04 FEB 16 | _M. J. Hank_ | Defendants |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (267) 402-3054 | (267) 402-3131 | mhank@littler.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALI RAZAK, KENAN SABANI and,       :
KHALDOUN CHERDOUD, individually  :
and on behalf of all others similarly situated,  :    Case No. _____
                         :
        Plaintiffs,         :    Judge _____
                         :
     v.              :
                         :    Removed from Court of Common Pleas,
UBER TECHNOLOGIES, INC. and    :    Philadelphia County
GEGEN LLC,               :    Civil Action No. 160100404
                         :
        Defendants.      :

## <u>NOTICE OF REMOVAL</u>

Defendants Uber Technologies, Inc. ("Uber") and Gegen, LLC ("Gegen") (collectively, "Defendants"), hereby remove this action from the Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. §§ 1331, 1332(a)(1), 1367(a), 1441, and 1446. In support of this Notice of Removal ("Notice"), Defendants state as follows:

## I.    PROCESS, PLEADINGS, AND ORDERS

1.    Plaintiffs Ali Razak, Kenan Sabani and Khaldoun Cherdoud ("Plaintiffs") filed a Complaint on or about January 6, 2016, designated as Case No. 160100404 in the Court of Common Pleas of Philadelphia County. Plaintiffs' Complaint is attached as Exhibit A.

2.    The Complaint alleges Defendants failed to pay Plaintiffs, and others similarly situated, compensation according to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101-333.115, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1-260.45. Specifically, Plaintiffs claim that Defendants violated the federal and state statutes

referenced above by (i) failing to pay employees the applicable hourly minimum wage; (ii) failing to pay employees an overtime premium for every hour worked in excess of 40 hours in a work week; (iii) requiring employees to pay a fee for the opportunity to work a shift; (iv) requiring employees to wear, maintain, and pay for uniforms; (v) failing to meet recordkeeping requirements; (vi) failing to meet posting requirements; and (vii) failing to pay business expenses, such as gas, vehicle maintenance, and collision and supplemental insurance.

3.      In the Complaint, Plaintiffs allege that Defendant "Gegen is a wholly owned subsidiary of Uber" that it "is a corporation organized and existing under the laws of Delaware, with its principal place of business at 7821 Bartram Avenue, Philadelphia, Pennsylvania" "established to handle Uber's affairs in Philadelphia, Pennsylvania." (Compl. at ¶¶ 13-15.)

4.      Pursuant to 28 U.S.C. § 1446(a), the attached exhibit constitutes all process, pleadings and orders served upon Defendants or filed or received in this action by Defendants.

II.     **VENUE**

5.      Because the Court of Common Pleas of Philadelphia County lies in the Eastern District of Pennsylvania, this Court is the appropriate venue for removal. *See* 28 U.S.C. §§ 118(a) and 1441(a).

III.    **FEDERAL JURISDICTION**

7.      This Court has jurisdiction under 28 U.S.C. § 1331, which provides this Court with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."

8.      Plaintiffs allege violations of the FLSA (*see generally* Compl. at pp. 16-17, 20-23), a federal statute. Where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a

substantial question of federal law," then the case arises under federal law within the meaning of Section 1331. *Koresko v. Murphy*, 464 F. Supp. 2d 463, 467 (E.D. Pa. Dec. 12, 2006) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 126 S. Ct. 2121, 2131 (2006)). Because Plaintiffs seek relief under federal law, this Court has original jurisdiction over Plaintiffs' FLSA claims and supplemental jurisdiction over the rest of the case under 28 U.S.C. § 1367(a).

## IV.    DIVERSITY JURISDICTION EXISTS UNDER 28 U.S.C. § 1332(a)

9.      An additional, and alternative, basis for this Court's jurisdiction is 28 U.S.C. § 1332(a). Under Section 1332(a), federal courts have original jurisdiction over actions in which the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

### A.    Diversity Of Citizenship Exists

10.      For diversity purposes, an individual is a citizen of the state in which he or she is domiciled with the intent to remain. *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008). To be domiciled in a state, a person must reside there and intend to remain indefinitely. *See Krasnov v. Dinan*, 465 F.2d 1298, 1300-01 (3d Cir. 1972). A person may only have one domicile, and thus, may be a citizen of only one state for diversity jurisdiction purposes. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914). Ali Razak alleges that he is a citizen of the Commonwealth of Pennsylvania and a resident of Philadelphia County. (Compl. at ¶ 9.) Kenan Sabani alleges that he is a citizen of the Commonwealth of Pennsylvania and a resident of Philadelphia County. (Compl. at ¶ 10.) Khaldoun Cherdoud alleges that he is a citizen of the Commonwealth of Pennsylvania and a resident of Philadelphia County. (Compl. at ¶ 11.) Accordingly, Mr. Razak, Mr. Sabani, and Mr. Cherdoud are citizens of the Commonwealth of Pennsylvania for purposes of diversity jurisdiction.

11.     For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of the state in which it was incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).  A corporation's principal place of business is its "nerve center" – the place "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

12.     Defendant Uber is incorporated in the State of Delaware, and its principal place of business is San Francisco, California.  Accordingly, Uber is a citizen of Delaware and California, and not Pennsylvania, for diversity purposes.  *See* 28 U.S.C. §§ 1332(a)(1), (c)(1).  In support of these assertions, the Declaration of Michael Colman, an Operations Specialist with Uber, is attached as Exhibit B (hereinafter "Colman Decl.").

13.     Defendant Gegen is a limited liability company.  As such, it is a citizen of each state in which its members are citizens.  *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013). Gegen's sole member is Uber, which is incorporated in the State of Delaware, and its principal place of business is San Francisco, California.  (Colman Decl. at ¶ 2.)  Accordingly, Gegen is a citizen of California and Delaware for diversity purposes.  *See* 28 U.S.C. §§ 1332(a)(1), (c)(1).

## B.     The Amount In Controversy Exceeds $75,000

14.     Pursuant to 28 U.S.C. § 1446(c), Defendants need only establish by a preponderance of evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement.

15.     For jurisdictional purposes, "determining the amount in controversy begins with a reading of the complaint filed in the state court."  *See Samuel-Bassett v. Kia Motors America, Inc.*, 357 F.3d 392, 398 (3d Cir. 2004).  The court, however, does not merely accept a plaintiff's

contentions regarding the amount in controversy, but is required to analyze the legal claims to determine if a plaintiff's actual monetary demands exceed the $75,000 threshold. *Morgan v. Gay*, 471 F.3d 469, 474-75 (3d Cir. 2006).

16.     Plaintiffs' Complaint does not allege a specific amount in controversy, but states that, in addition to interest and attorneys' fees, Plaintiffs seek to recover injunctive relief, liquidated damages, and "[a]ll forms of damages attributable to Defendants' violations." (Compl. at pp. 29-30 [Prayer For Relief].)

17.     Where removal is based on diversity of citizenship and the initial pleading seeks a money judgment but does not demand a specific sum, "the notice of removal may assert the amount in controversy," and a removing defendant need only establish that it is more likely than not that the amount in controversy exceeds the jurisdictional minimum of $75,000. *See* 28 U.S.C. § 1446(c)(2)(A).

18.     Although Defendants deny the validity and merit of Plaintiffs' claims and allegations, and deny that Plaintiffs' are entitled to any relief, Plaintiffs' claims establish an amount in controversy in excess of the jurisdictional minimum of $75,000, exclusive of interest and costs, because Plaintiffs are seeking attorneys' fees. (Compl. at ¶¶ 131, 136, 141, 148, 153, p. 29 at ¶ h).

19.     Attorneys' fees must be taken into account when determining whether the amount in controversy is met. *Frederico v. The Home Depot*, 507 F.3d 188, 199 (3d Cir. 2014) (noting that attorneys' fees "could be as much as thirty percent of the judgment"); *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) (holding that "attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action").

20. In *Raspa v. The Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J. 2007), the complaint was similar to the Complaint in this case. There, as here, plaintiffs did not state an exact sum sought in the complaint, but they demanded attorneys' fees and the court found that attorneys' fees "alone can exceed six figures." *Id*. Since Plaintiffs are seeking attorneys' fees and such fees can exceed six figures, Plaintiffs are seeking an amount in controversy over the $75,000 jurisdictional minimum. *See id*.

21. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## V.   COMPLIANCE WITH PROCEDURAL REQUIREMENTS

22. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), as it is being filed on February 4, 2016, which is within thirty days of Defendants' receipt of the Complaint.

23. In accordance with 28 U.S.C. § 1446(d), Defendants have filed this Notice with this Court, are serving a copy of this Notice upon counsel for Plaintiffs, and are filing a copy of this Notice in the Court of Common Pleas of Philadelphia County.

24. Defendants reserve the right to submit further evidence supporting this Notice should Plaintiffs move to remand.

## VI.    CONCLUSION

**WHEREFORE**, having fulfilled all statutory requirements, Defendants pray the instant action pending against them in the Court of Common Pleas of Philadelphia County, Pennsylvania, be removed to this Court and request that this Court assume full jurisdiction over this matter as provided by law.

Respectfully submitted,

Matthew J. Hank (PA #86086)
Paul C. Lantis (PA #309240)
Wendy Buckingham (PA #320259)
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000 – telephone
267.402.3131 – facsimile
mhank@littler.com
plantis@littler.com
wbuckingham@littler.com

*Attorneys for Defendants*

UBER TECHNOLOGIES, INC. and
GEGEN, LLC

Dated:  February 4, 2016

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALI RAZAK, KENAN SABANI and,      :
KHALDOUN CHERDOUD, individually   :
and on behalf of all others similarly situated,  :     Case No. _____
                                 :
            Plaintiffs,      :     Judge _____
                                 :
     v.                     :
                                 :     Removed from Court of Common Pleas,
UBER TECHNOLOGIES, INC. and      :     Philadelphia County
GEGEN LLC,                :     Civil Action No.  160100404
                                 :
          Defendants.     :

## NOTICE TO ADVERSE PARTIES OF REMOVAL AND CERTIFICATE OF NOTICE
## TO PROTHONOTARY OF COURT OF COMMON PLEAS

Pursuant to 28 U.S.C. § 1446(d), Defendants hereby give written notice to Plaintiff that a notice of removal based upon original jurisdiction under 28 U.S.C. § 1331, diversity jurisdiction under 28 U.S.C. § 1332(a) and original jurisdiction through the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), was filed in the above-captioned matter on February 4, 2016. Defendants, through counsel, also certify that a notice of said filing and a copy of the notice of removal were filed with the Court of Common Pleas of Philadelphia County on February 4, 2016.

## **CERTIFICATE OF SERVICE**

I, Matthew J. Hank, hereby certify that I caused a true and correct copy of the

foregoing Notice of Removal, Corporate Disclosure Statement, and ancillary documents, to be

served via first class mail, postage prepaid, upon:

> Jeremy E. Abay, Esquire
> John K. Weston, Esquire
> Sacks Weston Diamond, LLC
> 1845 Walnut Street, Suite 1600
> Philadelphia, Pennsylvania 19103

Dated: February 4, 2016                    Matthew J. Hank

# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JANUARY 2016**     **000404**

E-Filing Number: 1601008313

| | |
|---|---|
| PLAINTIFF'S NAME<br>ALI RAZAK | DEFENDANT'S NAME<br>UBER TECHNOLOGIES, INC. |
| PLAINTIFF'S ADDRESS<br>2124 S. DORRANCE STREET<br>PHILADELPHIA PA 19145 | DEFENDANT'S ADDRESS<br>1455 MARKET STREET, 14TH FLOOR<br>SAN FRANCISCO CA 94103 |
| PLAINTIFF'S NAME<br>KENAN SABANI | DEFENDANT'S NAME<br>GEGEN LLC |
| PLAINTIFF'S ADDRESS<br>2524 E. INDIANA AVENUE<br>PHILADELPHIA PA 19134 | DEFENDANT'S ADDRESS<br>7821 BARTRAM AVENUE<br>PHILADELPHIA PA 19153 |
| PLAINTIFF'S NAME<br>KHALDOUN CHERDOUD | DEFENDANT'S NAME |
| PLAINTIFF'S ADDRESS<br>1736 S. HOLLYWOOD STREET<br>PHILADELPHIA PA 19145 | DEFENDANT'S ADDRESS |

| TOTAL NUMBER OF PLAINTIFFS<br>3 | TOTAL NUMBER OF DEFENDANTS<br>2 | COMMENCEMENT OF ACTION<br>☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☐ Writ of Summons  ☐ Transfer From Other Jurisdictions |
|---|---|---|

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☐ Jury<br>☐ Non-Jury<br>☒ Other: CLASS ACTION | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE
C1 - CLASS ACTION

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED PRO PROTHY**

JAN 06 2016

**D. SAVAGE**

IS CASE SUBJECT TO COORDINATION ORDER?   YES   NO

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: ALI RAZAK , KENAN SABANI , KHALDOUN CHERDOUD

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>JEREMY E. ABAY | ADDRESS<br>1845 WALNUT STREET<br>SUITE 1600<br>PHILADELPHIA PA 19103 |
|---|---|
| PHONE NUMBER<br>(215)925-8200 | FAX NUMBER<br>(267)639-5422 | |
| SUPREME COURT IDENTIFICATION NO.<br>316730 | E-MAIL ADDRESS<br>jabay@sackslaw.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>*JEREMY ABAY* | DATE SUBMITTED<br>Wednesday, January 06, 2016, 12:19 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**SACKS WESTON DIAMOND, LLC**
Jeremy E. Abay (Attorney # 316730)
John K. Weston (Attorney # 26314)
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
Telephone: (215) 925-8200
Facsimile: (267) 639-5422



*Attorneys for Plaintiffs, the Class and Collective Action*

---

| | |
|---|---|
| ALI RAZAK, KENAN SABANI and KHALDOUN CHERDOUD, individually and on behalf of all others similarly situated, | PHILADELPHIA COUNTY COURT OF COMMON PLEAS CIVIL TRIAL DIVISION |
| Plaintiffs, | CLASS ACTION |
| vs. | TERM, 2016 |
| UBER TECHNOLOGIES, INC. and GEGEN LLC, | NO. |
| Defendants. | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

<u>NOTICE</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

**Philadelphia Bar Association**
**Lawyer Referral and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

<u>AVISO</u>

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

**Asociacion De Licenciados De Filadelfia**
**Servicio De Referencia E Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-61971**

Ali Razak, Kenan Sabani and Khaldoun Cherdoud (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this collective action under 29 U.S.C. § 216(b) and class action under Pa. R.C.P. 1701-1717 against Uber Technologies, Inc. and Gegen LLC (collectively "Defendants"), and allege the following:

## NATURE OF ACTION

1.   Defendants failed to pay Plaintiffs, and others similarly situated, compensation according to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101-333.115 and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1-260.45.

2.   Plaintiffs are certified limousine drivers that perform on-demand transportation services for Defendants.

3.   Defendants misclassify their limousine drivers as independent contractors even though they are actually employees under federal and state law.

4.   By misclassifying its limousine drivers as independent contractors, Defendants unlawfully avoid paying hourly wages, overtime wages, business expenses, unemployment taxes, social security taxes, disability taxes, workers' compensation premiums and other mandatory employment benefits.

5.   By misclassifying their limousine drivers as independent contractors, Defendants wrongfully shift business expenses onto their limousine drivers.

6.   Plaintiffs bring this collective and class action, individually and on behalf of all others similarly situated, against Defendants for repeated violations of the FLSA, PMWA and WPCL. Those violations include, but are not limited to: failing to pay Plaintiffs and other limousine drivers any wages, let alone the applicable hourly minimum wage; failing to pay

Plaintiffs and other limousine drivers an overtime premium for every hour worked in excess of 40 hours in a work week; and, requiring Plaintiffs and other limousine drivers to cover their own business expenses, thereby further reducing and/or eliminating their earnings.

7.      Plaintiffs bring this collective and class action under the FLSA, PMWA, and WPCL for damages and other relief, as set forth below.

8.      Plaintiffs also bring this class action for damages arising from introduction of UberX, an illegal competitor of the class, into the marketplace.  As explained in greater detail below, Defendants' violated their fiduciary duty to Plaintiffs and the Class.

## THE PARTIES

9.      Plaintiff **ALI RAZAK** (hereinafter "Razak") is a citizen of the Commonwealth of Pennsylvania, residing in Philadelphia, Pennsylvania.

10.      Plaintiff **KENAN SABANI** (hereinafter "Sabani") is a citizen of the Commonwealth of Pennsylvania, residing in Philadelphia, Pennsylvania.

11.      Plaintiff **KHALDOUN CHERDOUD** (hereinafter "Cherdoud") is a citizen of the Commonwealth of Pennsylvania, residing in Philadelphia, Pennsylvania.

12.      Defendant **UBER TECHNOLOGIES, INC.** (hereinafter "Uber") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 1455 Market Street, San Francisco, California.

13.      Defendant **GEGEN LLC** (hereinafter "Gegen") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 7821 Bartram Avenue, Philadelphia, Pennsylvania.

14.      Gegen is a wholly owned subsidiary of Uber.

3

15.    Gegen is an alter ego of Uber, established to handle Uber's affairs in Philadelphia, Pennsylvania.

16.    Gegen is operated by Uber employees, and all of Gegen's operations are controlled by Uber.

17.    At all times material hereto, Plaintiffs were and continue to be "employees," as defined by the FLSA, 29 U.S.C. § 203(e)(1) and PMWA, 43 P.S. § 333.103, and as that word is used for purposes of the WPCL.

18.    At all times material hereto, Defendants, collectively and/or individually, were and continue to be "employers," as defined by the FLSA, 29 U.S.C. §203(d), PMWA, 43 P.S. § 333.103 and WPCL, 43 P.S. § 260.2a.

19.    At all times material hereto, Defendants were and continue to be engaged in interstate commerce, as defined by the FLSA, 29 U.S.C. §§ 206(a), 207(a).

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over Plaintiffs' federal claims pursuant to 29 U.S.C. § 216(b), which provides that a lawsuit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

21.    This Court has original jurisdiction over Plaintiffs' state claims pursuant to 42 Pa. C.S.A § 931.

22.    Venue is appropriate under Pa. R.C.P. 1006 because Defendants are located in this county, and because transactions or occurrences out of which the cause of action arose took place in this county.

23. The vast majority of Defendants' interactions with Plaintiffs and Class members occurred or arose out of Gegen's headquarters at 7821 Bartram Avenue in Philadelphia, Pennsylvania.

## FACTUAL BACKGROUND

A. How Uber Works

24. Uber is the developer of a mobile phone application (hereinafter "App" or "Uber App") that provides on-demand car services to the general public. The App can also be accessed through an internet browser.

25. Uber's on-demand limousine service, which is accessed through the App, is marketed under the name "UberBLACK."

26. Uber also refers to its on-demand limousine service as "UberBLACK – The Original," as it was the first service ever offered by Uber.

27. Uber's App is essentially a personal dispatch service.

28. The App is first downloaded onto a customer's mobile phone.

29. Once downloaded, the App requests, among other things, the customer's debit or credit card information, which is held by Uber for future billing.

30. In order to request a ride, the customer must log into the App. The App then locates the customer through the Global Positioning System ("GPS") software on the customer's mobile phone. The customer can either request a ride at his or her current location, or can manually set another location for pickup. After requesting a ride, the customer has discretion to cancel his or her request.

5

31.    When the App receives the request, it is submitted to one of Uber's subsidiaries, which Uber refers to as a third-party "Transportation Company."

32.    Gegen is Uber's Transportation Company in Philadelphia, Pennsylvania.

33.    When Gegen receives the fare request from Uber, it forwards that request to a driver who is logged into the App.

34.    Gegen has discretion in deciding which driver receives the fare.

35.    After the driver accepts the fare, he or she is provided the customer's name and location through the App.

36.    When the ride is completed, Uber automatically charges the customer's previously supplied credit or debit card.  The customer does not directly pay the driver anything for the ride.

37.    Uber advises customers that gratuity is included in the fare and that there is no need to tip the driver, even though gratuity is not included in the fare.  Uber requires drivers to decline tips if offered by the customer.

38.    After the customer is charged, at a rate dictated by Uber, Uber asks the customer to rate his or her driver using a five star system.

39.    When demand for Uber's services reaches a certain level, Uber engages in "surge pricing."  During the "surge period" customers are charged nearly ten times Uber's normal rate. Uber has total control over its surge pricing.

**B.    How Uber BLACK Drivers are Paid**

40.    At the end of each week, the driver receives an electronic earnings statement from Uber and Gegen.

41. The driver's "total payout" equals the "trip earnings" less "miscellaneous" expenses.

42. Trip earnings equal the driver's fares less Uber's fee.

43. Uber's fee is 25% of the trip earnings, and is taken off the top.

44. In addition to its 25% fee, Uber automatically deducts various expenses from the driver's earnings. These expenses include, but are not limited to: (1) regulatory fees accessed by the Philadelphia Parking Authority (hereinafter "PPA"); (2) vehicle payments; and, (3) insurance premium payments.

45. As stated, Defendants automatically deduct vehicle payments from their drivers' weekly earnings. For reasons explained in greater detail below, Defendants impose requirements on their drivers that restrict their ability to obtain auto financing. As a result, drivers are forced to use lenders that partner with Defendants. These lenders charge the drivers subprime interest rates regardless of the driver's credit risk. By automatically deducting loan payments from their drivers' weekly earnings, Defendants are acting as a debt collector for the lender.

46. As stated, Defendants automatically deduct insurance premium payments from their drivers' weekly earnings. This insurance is provided by Knightbrook Insurance Company (hereinafter "Knightbrook") and purports to cover the driver in the event of an accident. Defendants require their drivers to submit to coverage under the Knightbrook policy. However, Defendants refuse to release the terms of the policy to its drivers even though the drivers pay for the coverage. The drivers are thus unable to select their own coverage and have no say in how much they are charged by Knightbrook. By automatically deducting the premium payments from their drivers' weekly earnings, Defendants are acting as a debt collector for Knightbrook. The deduction is referred to as "Gegen Insurance" on the driver's weekly statement.

7

47.     The aforesaid expenses are automatically deducted from the driver's earnings regardless of whether the driver earned enough money to cover the expenses. If there is a net negative balance, the driver must go to the Gegen office and pay the balance in order to maintain access to his or her Uber account. In some instances, the negative balance is rolled into the next week's statement. Negative balances are often rolled-over, even if the driver submitted payment to Gegen, because of Defendants' delay in processing such payments.

48.     In addition to the miscellaneous expenses, drivers are responsible for other operating expenses, including, but not limited to: (1) PPA driver certification application fees; (2) PPA driver certification renewal fees; (3) vehicle inspection sticker fees; (4) gas; (5) vehicle maintenance; (6) mobile phone expenses; (7) tolls when not carrying a fare; (8) fees to wait in the PHL commercial vehicles lot; (9) expenses related to purchasing and maintaining proper driver attire; (10) and, collision and other supplemental insurance.

49.     The aforementioned expenses are incurred in the scope and course of Plaintiffs and Class members' employment with Defendants, and for the benefit of Defendants' business.

**C.    UberBLACK Auto Financing and Liability Insurance**

50.     Individuals desiring to work as UberBLACK drivers, which was the only option available during Uber's launch and expansion in Philadelphia, are subject to PPA oversight.

51.     As an initial matter, these drivers must undergo PPA training, testing, examination, a criminal background check and driving history check.

52.     Once certified, the driver is only permitted to operate a registered limousine.

53.     In order to register a limousine with the PPA, the owner must first apply for a Certificate of Public Convenience, which currently costs $12,000. The certificate holder must also be able to show proof of commercial liability insurance for the vehicle.

8

54.    Even if a potential driver is willing to invest in a luxury vehicle and certification, very few can afford the upfront application cost of $12,000.

55.    Gegen thus applied for and obtained its own Certificate of Public Convenience under which it registers UberBLACK drivers in Philadelphia. Likewise, Gegen purchased a commercial liability insurance policy from Knightbrook under which UberBLACK drivers are covered. Gegen simply passes these costs along to UberBLACK drivers through weekly automatic deductions.

56.    In order for Defendants' plan to be effective, drivers have to transfer their vehicle's title to Gegen. This title transfer requirement creates another issue for drivers. Most drivers who purchase a luxury vehicle require financing, and generally all lenders prohibit a title or loan transfer during the contract period.

57.    Defendants' plan creates a second issue. Gegen has its own commercial liability insurance policy in compliance with PPA regulations. Gegen is the name insured on that policy and refuses to release the policy's terms to drivers. Drivers, however, must show proof of commercial liability insurance when purchasing a luxury vehicle to be used as a limousine.

58.    Defendants' solution was to create a small network of auto dealers and lenders willing to accommodate these issues. Gegen provides specific dealerships with a copy of Gegen's insurance policy. Uber selected Exeter Financial Corp. (hereinafter "Exeter"), which it had used in other states, as the primary lender for UberBLACK drivers in Philadelphia.

59.    Defendants thus directed potential drivers to these dealerships, which would either self-finance the deal or use an Uber-friendly lender.

60.    Drivers sent to these dealers were systematically charged subprime interest rates, twelve percent (12%) and higher, regardless of their actual credit risk.

**D.     Uber in Philadelphia**

61.     Uber launched its operations in Philadelphia, Pennsylvania in June of 2012.  At the time, Uber was only offering limousine services.  Uber would later brand its limousine service as "UberBLACK."

62.     Uber established Gegen as its Transportation Company for limousine drivers operating in Philadelphia, Pennsylvania.

63.     As demand increased, Defendants solicited new drivers in various ways, including, but not limited to: (1) asking new drivers for names and telephone numbers of people who may be interested in driving for Uber; (2) advertising to potential drivers that they could make upwards of $90,000 by driving for UberBLACK; (3) advising potential drivers on how they could obtain a luxury vehicle by going through Uber's partnered dealers and lenders; (4) for a limited time, reimbursing vehicle down payments; and, (5) for a limited time, providing a ten percent (10%) discount on vehicle payments.

64.     Defendants induced hundreds of individuals to become UberBLACK drivers, including Plaintiffs and Class members.

65.     As UberBLACK drivers, Plaintiffs and Class members underwent PPA certification to obtain a limousine driver certificate.  In addition to having to pay application and renewal fees to the PPA, Plaintiffs and Class members underwent a comprehensive criminal background check, a driving history check, a physical examination, testing, training and routine vehicle inspections pursuant to 53 Pa. C.S. § 5706.

66.     UberBLACK drivers are certified and comply with PPA regulations.

**E.**     Uber X's Illegal Operation in Philadelphia

67.     Demand for Uber's limousine service, UberBLACK, exploded in Philadelphia.

68.     The number of UberBLACK drivers grew with demand.

69.     Customers were opting for UberBLACK over taxis, despite the higher costs, and Defendants saw this as a new opportunity.

70.     Uber launched UberX in Philadelphia in October of 2014.

71.     Uber set up a second Transportation Company called Raiser-PA LLC (hereinafter "Raiser") to handle its UberX operations in all of Pennsylvania.

72.     Like UberX, Raiser is merely an alter ego of Uber.

73.     Like UberBLACK, UberX is provided through the same Uber App.

74.     In order to take over Philadelphia's taxi transportation industry, Uber took a different approach with UberX.

75.     Uber does not require UberX drivers to comply with PPA regulations.

76.     Drivers who provide car services through UberX violate 53 Pa. C.S. § 5714(f), among other pertinent taxi regulations.

77.     PPA has declared that all car services provided through UberX are illegal because Uber refuses to subject itself and its UberX drivers to PPA's regulatory oversight.

78.     Unlike UberBLACK drivers, UberX drivers do not undergo criminal background and driving history checks by the PPA.

79.     Unlike UberBLACK drivers, UberX drivers do not receive PPA physical examinations, testing, vehicle inspections and training.

80.     Unlike UberBLACK drivers, there is no proof that UberX drivers are adequately insured for purposes of providing taxi services.  Indeed, many of these drivers have only

11

Case ID: 160

personal auto insurance, which ordinarily excludes coverage if the driver uses his or her vehicle in a commercial capacity.

81.     In blatant disregard to taxi regulations, UberX illegally charges rates lower than those approved by the PPA.

82.     UberBLACK drivers are disadvantaged by UberX's anticompetitive rates.

83.     Upon information and belief, there are approximately 10,000 UberX drivers operating in Philadelphia.

84.     As a direct and proximate result of UberX's illegal operation in Philadelphia, UberBLACK drivers, such as Plaintiffs and Class members, have been damaged.

85.     Uber has purposefully and unlawfully diverted business away from its UberBLACK drivers.

86.     Uber has shifted its marketing towards UberX.

87.     Uber has updated its App so that UberX is the default selection.

88.     Uber has told UberBLACK drivers to become UberX drivers, even though UberX is illegal and UberBLACK drivers have invested thousands of dollars in operating costs.

**F.     Uber and Gegen's Control over UberBLACK Drivers**

89.     Although Uber and Gegen call their limousine drivers independent contractors, they are actually employees under federal and state law.  Uber and Gegen are the limousine drivers' employers.

90.     This employer/employee relationship is evidenced by the level of control Uber and Gegen exert over UberBLACK drivers.

91.     UberBLACK drivers, including Plaintiffs and Class members, are subject to stringent rules, requirements and conditions, which include, but are not limited to:

Case ID: 16010

a.      Defendants control the number of fares each driver receives;

b.      Defendants have the authority to suspend or terminate a driver's access to the App;

c.      Defendants do not permit drivers to take emergency phone calls while carrying a fare;

d.      Drivers must submit to coverage under Gegen's liability insurance policy;

e.      Defendants automatically deduct Gegen's insurance premiums from their drivers' weekly earnings;

f.      Defendants refuse to release the Knightbrook insurance policy information, even though their drivers are purportedly covered under it;

g.      Defendants automatically deduct Gegen's PPA expenses from their drivers' total earnings;

h.      Defendants require their drivers to transfer their vehicle's title over to Gegen;

i.      Drivers are suspended or terminated from the App if their earnings are net negative and they do not pay Gegen the balance;

j.      Drivers are not permitted to ask for gratuity even though it is industry standard for customers to tip limousine drivers;

k.      Drivers must refuse gratuity even if offered by the customer;

l.      Drivers must submit to Uber's customer rating system;

m.      Drivers are subject to suspension or termination if they receive an unfavorable customer rating, even if that rating is unfounded or malicious;

13

Case ID: 1601

n.      Defendants manipulate their drivers' rating in order to create a pretense for suspension or termination;

o.      Drivers who refuse a fare are subject to suspension and termination;

p.      Drivers are not permitted to see the customer's destination until they accept the fare request;

q.      Drivers are not permitted to provide estimates;

r.      Drivers are not permitted to promote their personal business to UberBLACK customers, even if the customer affirmatively solicits the driver's personal limousine services;

s.      Uber has absolute discretion in deciding how much customers are charged;

t.      Uber has absolute discretion in deciding what percentage it will deduct from their drivers' earnings;

u.      Uber has absolute discretion in deciding whether a customer will receive a surcharge on his or her fare, which negatively impacts the driver's customer rating and number of fares available;

v.      Uber is under no obligation to compensate drivers if their App malfunctions;

w.      UberBLACK drivers are subject to a queue controlled by Gegen when seeking fares at the airport;

x.      If a driver's rating falls below a certain level, that driver's access to the App is terminated;

y.      If a driver's rating falls below a certain level, that driver must take and pay for an instructional course set up through Gegen;

14

Case ID: 160

z.      Uber has the sole and absolute discretion in granting a rider's request for a fare adjustment, and if a fare is adjusted then the driver must accept a reduced payment;

aa.     Drivers must take a reduced payment in the event a customer disagrees with the route of travel, which is determined by Uber's navigation software;

bb.     If a customer uses false or fraudulent billing information, the driver must accept a reduced payment or no payment, even though Uber has total control over the customer's billing information;

cc.     Drivers have no control over how their services are marketed by Uber;

dd.     Drivers must wear certain business attire while working;

ee.     Drivers can only use certain luxury vehicles chosen by Uber;

ff.     Drivers must agree to allow Uber to automatically deduct vehicle loan payments from their earnings;

gg.     Defendants require UberBLACK drivers to be certified and licensed by the PPA; and,

hh.     Defendants require drivers to submit to Uber's surge pricing scheme, which Uber has absolute discretion.

92.     Defendants' employees enforce the aforementioned rules, requirements and conditions.

93.     Failure to abide by the aforementioned rules, requirements and conditions results in disciplinary action, such as suspending or terminating a driver's access to the Uber App or reducing the number of fares received by the driver.

15

## COLLECTIVE ACTION ALLEGATIONS

94.     Plaintiffs bring their FLSA claims on behalf of themselves and all similarly situated current and former employees of Defendants, who opt-in, as a collective action pursuant to 29 U.S.C. § 216(b).

95.     At all times material hereto, Plaintiffs and members of the Collective Action were employees of Defendants and, as such, were entitled to all the protections provided by the FLSA.

96.     Throughout the relevant time period, Defendants subjected Plaintiffs and similarly situated current and former employees to the same policies and procedures, including, but not limited to: (a) failing to pay employees the applicable hourly minimum wage; (b) failing to pay employees an overtime premium for every hour worked in excess of 40 hours in a work week; (c) requiring employees to pay a fee for the opportunity to work a shift; (d) requiring employees to wear, maintain, and pay for uniforms; (e) failing to meet recordkeeping requirements; and, (f) failing to meet posting requirements.

97.     Plaintiffs and members of the Collective Action were forced to incur business expenses for the benefit of Defendants, which cut into Plaintiffs' and Collective Action members' earnings.

98.     Upon information and belief, there are many similarly situated current and former employees of Defendants who have been damaged by its FLSA violations, as set forth herein. These similarly situated current and former employees would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join this Collective Action.

99.     Upon information and belief, there are many similarly situated current and former employees of Defendants who have been damaged by their FLSA violations.

100.    These similarly situated current and former employees would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the collective action.

101.    These similarly situated current and former employees are known to Defendants, are readily identifiable and can be located using Defendants' records.

102.    Plaintiffs will request the Court to authorize notice to all situated current and former employees of Defendants, informing them of the pendency of this action and their right to "opt-in" to this lawsuit, pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid compensation, overtime compensation and liquidated damages under the FLSA.

103.    Defendants failed to make, keep, and preserve accurate records with respect to Plaintiff and members of the Collective Action, including hours worked each workday and total hours worked each workweek, as required by 29 U.S.C. § 211(c) and supporting federal regulations.

104.    Defendants failed to post and keep posted in a conspicuous place on their premises a notice explaining the FLSA, as prescribed by the Wage and Hour Division of the U.S. Department of Labor, in violation of the FLSA and supporting federal regulations, including 29 C.F.R. § 516.4.

105.    Defendants' failure to make, keep and preserve accurate records was willful and, therefore, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

## CLASS ACTION ALLEGATIONS

106.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Pa. R.C.P. 1701-1717.

Case ID: 1601

107. At all times material hereto, Plaintiff and Class members were employees of Defendants and, as such, were entitled to the protections provided by PMWA and WPCL.

108. Plaintiffs seek certification of a class defined as follows:

All persons who provided limousine services, now known as UberBLACK, through Defendants' App in Philadelphia, Pennsylvania.

109. During the three-year period preceding the filing of this class action complaint, no other class action has been filed asserting the same or similar factual allegations against Defendants on behalf of the same or other persons.

110. The Class members are so numerous that joinder is impracticable, and the disposition of their claims in this case and as part of a single class action lawsuit, rather than through numerous individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent.

111. There are numerous and substantial questions of law and fact common to all members of the Class, which predominate over any individual issues. These common questions of law and fact include, without limitation:

a.    Whether the Plaintiffs and Class members are employees of Defendants;

b.    Whether Defendants failed to pay Plaintiffs and Class members an hourly rate at or above the prevailing minimum wage;

c.    Whether Plaintiff and Class Members were paid an hourly rate less than the prevailing minimum wage because Defendants required Plaintiffs and Class members to pay for various business expenses;

d.    Whether Plaintiff and Class Members were paid an overtime premium less than the required rate because Defendants required Plaintiffs and Class members to pay for various business expenses;

18

Case ID: 1601C

e. Whether Defendants damaged Plaintiffs and Class members by introducing an illegal competitor into the marketplace;

112. Plaintiffs' claims are typical of the claims of the Class they seek to represent. Plaintiffs are members of the Class they seek to represent. Class members are ascertainable from Plaintiffs' records and/or from Defendants' records and/or records from third parties.

113. Plaintiffs will fairly and adequately represent the Class and have no interests that are antagonistic to the claims of the Class. Plaintiffs will vigorously pursue the claims of the Class.

114. Plaintiffs have retained counsel who are competent and experienced in class action litigation.

115. A class action is superior to other available methods of litigation for the fair and efficient adjudication of this controversy. Trial of Plaintiffs and Class members' claims is manageable through this class action lawsuit. Unless a class is certified, Defendants will be unjustly enriched at the expense of Class members.

116. There is no plain, speedy or adequate remedy other than by maintenance of this class action because it is economically unfeasible for members of the Class to pursue remedies other than by way of class action.

117. Plaintiffs know of no difficulty that will be encountered in the management of this litigation, which would preclude maintenance of a class action.

118. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

19

Case ID: 16010

119.    Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

120.    Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiffs and the Class.

**FIRST CAUSE OF ACTION**
**FLSA – Failure to Pay Minimum Wages**
**(Brought on behalf of Plaintiffs and members of the FLSA Collective Action)**

121.    Plaintiffs re-allege the preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

122.    At all times material hereto, Plaintiffs and members of Collective Action were engaged in commerce within the meaning of 29 U.S.C. §§ 203(e), 203(m), and 206(a).

123.    At all times material hereto, Plaintiff and members of Collective Action were or have been employees within the meaning of 29 U.S.C. §§ 203(e), 203(m), and 206(a).

124.    At all times material hereto, Defendants were the employers of Plaintiffs and members of the Collective Action within the meaning of 29 U.S.C. §§ 203(e), 203(m), and 206(a).

125.    At all times material hereto, Defendants were employers in commerce within the meaning of 29 U.S.C. §§ 203(e), 203(m), and 206(a).

126.    Defendants failed to pay Plaintiffs and members of the Collective Action the minimum wages they were entitled to under the FLSA.

127.    Defendants were required to pay directly to Plaintiffs and members of the Collective Action the federal minimum wage rate of at least $7.25 per hour.

20

128.    Defendants were not and are not eligible to avail themselves of the federal tipped minimum wage rate because they did not permit Plaintiffs and members of the Collective Action collect and retain tips.

129.    Defendants were not and are not eligible to avail themselves of the federal tipped minimum wage rate because they failed to inform Plaintiffs and members of the Collective Action of the provisions of 29 U.S.C. § 203(m).

130.    Defendants failed to post and keep posted in a conspicuous place on the premises of their establishments a notice explaining the FLSA, as prescribed by the Wage and Hour Division of the U.S. Department of Labor, in violation of the FLSA and supporting federal regulations, including 29 C.F.R. § 516.4.

131.    As a direct and proximate result of Defendants' violations of the FLSA, Plaintiffs and members of the Collective Action have suffered damages in amounts to be determined at trial and are entitled to recovery of such amounts. Plaintiffs and members of the Collective Action are also entitled to liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

132.    Defendants' unlawful conduct, as described herein, was willful and intentional. Defendants were aware or should have been aware that the practices described in this Collective Action were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and members of the Collective Action. Given Defendants' willful and intentional violations, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

## SECOND CAUSE OF ACTION
### FLSA – Failure to Pay Overtime Wages
### (Brought on behalf of Plaintiffs and members of the FLSA Collective Action)

133.    Plaintiffs re-allege the preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

134.    The overtime wage provisions set forth in the FLSA and supporting federal regulations apply to DefendantsPlaintiffs and members of the Collective Action.

135.    Defendants failed to pay Plaintiffs and members of the Collective Action an overtime premium for hours worked in excess of 40 hours in a work week.

136.    As a direct and proximate result of Defendants' violations of the FLSA, Plaintiffs and members of the Collective Action have suffered damages in amounts to be determined at trial and are entitled to recovery of such amounts. Plaintiffs and members of the Collective Action are also entitled to liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

137.    Defendants' unlawful conduct, as described herein, was willful and intentional. Defendants were aware or should have been aware that the practices described in this Collective Action were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and members of the Collective Action. Given Defendants' willful and intentional violations, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

## THIRD CAUSE OF ACTION
### FLSA – Failure to Pay Free and Clear Wages
### (Brought on behalf of Plaintiffs and members of the FLSA Collective Action)

138.    Plaintiffs re-allege the preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

Case ID: 16010

139.    As set forth above, Defendants required Plaintiffs and members of the Collective Action to pay various expenses for the opportunity to obtain fares through the Uber App.

140.    Plaintiffs and members of the Collective Action did not earn any wages, let alone wages that were free and clear. The cost of having to pay various expenses cut into the wages and overtime pay that Plaintiffs and members of the Collective Action are entitled to.

141.    As a direct and proximate result of Defendants' violations of the FLSA, Plaintiff and members of the Collective Action have suffered damages in amounts to be determined at trial and are entitled to recovery of such amounts. Plaintiffs and members of the Collective Action are also entitled to liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

142.    Defendants' unlawful conduct, as described herein, was willful and intentional. Defendants were aware or should have been aware that the practices described in this Collective Action were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and members of the Collective Action. Given Defendants' willful and intentional violations, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

## SIXTH CAUSE OF ACTION
### PMWA Violations – Failure to Pay Minimum and Overtime Wages
### (Brought on behalf of Plaintiffs and Class Members)

143.    Plaintiffs re-allege the preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

144.    The PMWA requires employers to pay employees wages for all hours worked at a rate not less than Pennsylvania or federal minimum wage rate pursuant to 43 P.S. § 333.104(a)-(b).

23

Case ID: 16010(

145. The PMWA further provides that "employees shall be paid for overtime not less than one and one half times the employee's regular rate" for hours worked in excess of forty (40) hours in a workweek pursuant to 43 P.S. § 333.104(c).

146. Defendants violated the PMWA by failing to pay Plaintiffs and the Class members the Pennsylvania minimum wage rate of $7.25 per hour.

147. Defendants violated the PMWA by failing to pay Plaintiffs and the Class members in accordance with 43 P.S. § 333.104(c).

148. As a direct and proximate result of Defendants' violations of the PMWA, Plaintiffs and Class members were deprived of wages and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, together with interest, costs, and attorney's fees pursuant to 43 P.S. § 333.113.

## SEVENTH CAUSE OF ACTION
### WPCL Violations – Failure to Designate Regular Paydays
### (Brought on behalf of Plaintiffs and Class Members)

149. Plaintiffs re-allege the preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

150. The WPCL requires an employer to pay wages due to its employees on regular paydays designated in advance by the employer pursuant to 43 P.S. § 260.3.

151. Subsection 4 of the WPCL, 43 P.S. § 260.4, requires an employer to notify each employee of when and where he or she will be paid and the rate of pay; or, alternatively, must conspicuously post the aforementioned facts at the employer's place of business.

152. Defendants violated the regular payday and notification requirements of the WPCL.

24

Case ID: 160

153.   As a direct and proximate result of Defendants' violations of the WPCL, Plaintiffs and Class members were damaged and deprived of compensation in amounts to be determined at trial. Plaintiffs and Class members are entitled to such amounts of unpaid compensation, liquidated damages, costs and attorney's fees pursuant to 43 P.S. §§ 260.9-260.10.

## EIGHTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Brought on behalf of Plaintiffs and Class Members)

154.   Plaintiffs re-allege the preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

155.   Defendants have total control over whether Plaintiffs and Class members can access the Uber App.

156.   Defendants have total control over how work is allotted to Plaintiffs and Class members.

157.   Plaintiffs and Class members are financially dependent on the fares provided to them by Defendants.

158.   Plaintiffs and Class members must submit to stringent rules, requirements and conditions in order to obtain fares from Defendants.

159.   Defendants have control over Plaintiffs and Class members' ability to earn a living as a limousine driver

160.   Defendants restrict Plaintiffs and Class members' ability to earn a living as a limousine driver by suspending and terminating Plaintiffs and Class members' access to the Uber App.

161.   Defendants act as a debt collector by automatically deducting auto loan payments and other expenses from money earned by Plaintiffs and Class members.

162.     Since the aforesaid expenses are automatically deducted from Plaintiffs and Class members' earnings, Defendants have the ability to force Plaintiffs and Class members into default by restricting their access to the Uber App.

163.     Plaintiffs and Class members must pay for liability insurance coverage purchased by Gegen. Since Plaintiffs and Class members are not permitted to view the terms of this insurance, let alone participate in the purchase process, Plaintiffs and Class members must rely solely on Gegen's judgment in purchasing and paying for said insurance.

164.     Plaintiffs and Class members must pay for fees assessed by the PPA on Gegen. Since Plaintiffs and Class members have no ability to challenge the fees assessed on Gegen, Plaintiffs and Class members must rely solely on Gegen's judgment in challenging and paying said fees.

165.     Given the overmastering influence Defendants exert of Plaintiffs and Class members, Defendants owe Plaintiffs and Class members a fiduciary duty.

166.     Defendants breached their fiduciary duty to Plaintiffs and Class members by purposefully creating, marketing and managing UberX.

167.     UberX is on-demand taxicab service that, since its launch, has been illegal in Philadelphia, Pennsylvania.

168.     UberX drivers are in direct competition with UberBLACK drivers.

169.     In facilitating UberX, Uber blatantly disregards Title 53, Chapter 57 of the Pennsylvania Consolidated Statutes, Taxicabs and Limousines in First Class Cities, 53 Pa. C.S. §§ 5701-5745.

Case ID: 160100?

170.    Under 53 Pa. C.S. § 5703, the PPA has exclusive authority in setting taxi and limousine rates. Uber intentionally violates 53 Pa. C.S. § 5703 by charging rates lower than those approved by the PPA for UberX rides. UberX is thus anticompetitive and illegal.

171.    UberX drivers are also subject to certification, inspection, license, medallion, dispatcher, insurance and fee requirements under 53 Pa. C.S. §§ 5706, 5711-5722. Uber advises UberX drivers to disregard these requirements. Uber and UberX drivers are thus subject to criminal and civil penalties under 53 Pa. C.S. §§ 5724-5725.

172.    Numerous UberX driver have been arrested and fined as a result of the foregoing violations. Instead of ceasing their UberX operations, Uber pays all fines and legal fees incurred by its UberX drivers, thus indemnifying and promoting their criminal activity.

173.    Plaintiffs and Class members have been damaged by the foregoing actions. These actions constitute a breach of fiduciary duty.

174.    Uber recently updated its App so that customers are incentivized and induced to choose UberX over UberBLACK.

175.    Defendants have recently used their overmastering influence over Plaintiffs and Class members in an effort to convert Plaintiffs and Class members into UberX drivers, which would provide customers access to limousine services at a rate lower than those permitted by the PPA.

176.    Defendants have sent emails to Plaintiffs and Class members advising them that they would earn more money by operating as UberX drivers.

177.    Defendants purposely forced Plaintiffs and Class members into a dire financial situation by cannibalizing UberBLACK business. Now Defendants have the audacity to tell Plaintiff and Class members that they should break the law in order to earn more money.

27

Meanwhile, Defendants continue to cover their own bills by automatically deducting money earned by Plaintiffs and Class members.

178.    In response to Uber's efforts to convert UberBLACK drivers into UberX drivers, PPA has published the following enforcement bulletin[1]:



**PHILADELPHIA PARKING AUTHORITY**
**TAXICAB AND LIMOUSINE DIVISION**

<u>A MESSAGE TO CERTIFIED GEGEN/UBER BLACK DRIVERS</u>

As you are probably aware, on October 17, 2014, your company decided to roll out Uber-X in Philadelphia. Uber did this knowingly and intentionally without acquiring the proper certifications and in violation of the law. Uber-X, which deploys unregulated family cars driven by uncertified drivers, is considered to be an Illegal Service Provider by the PPA. The Authority has responded, and will continue to enforce the rule of law.

Our enforcement officers have been inundated by complaints from Uber Black drivers regarding the drain Uber-X is placing on their work. We agree that it is patently unfair for Uber to offer your assignments to someone who is uncertified and operating an uninsured family car just to further increase their own profit margin. This disregard for your partnership is especially egregious, in light of all the certification requirements, training and vehicle financing obligations to which you have committed for this company.

Now, your company has announced that Uber Black partners can apply to bid on Uber-X trips. Uber, in an attempt to stem the tide of drivers leaving their company, fails to inform you that this is a **Tariff Violation**. Certified limousine companies and their drivers may only charge the approved tariff rates, and no Uber-X trip within Philadelphia is ever legal. Please don't risk your driver certification by violating the tariff and falling for Uber's self serving bait and switch tactics.

Help us help you!

William P. Schmid
Deputy Director of the TLD
The Philadelphia Parking Authority
TLDEnforcement@Philapark.org

---

[1] *See* http://www.philapark.org/wp-content/uploads/2014/03/Enforcement-Bulletin-Uber-Tariff-Violation.pdf (last visited on Jan. 6, 2016).

28

Case ID: 1601(

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves, members of the FLSA Collective Action and members of the Class Action, respectfully request the following relief:

    a.    An order certifying the FLSA Collective Action described above;

    b.    An order certifying the Class Action defined above;

    c.    Injunctive relief requiring Defendant to comply with all applicable state and federal wage laws;

    d.    Injunctive relief requiring Uber to cease its UberX operations in Philadelphia, Pennsylvania or, in the alternative, requiring UberX to comply with PPA regulations;

    e.    An order requiring Defendants to provide Plaintiffs and members of the FLSA Collective Action and Class Action with notice of Defendants' misconduct;

    f.    Damages equal to the amount of compensation withheld by Defendants plus interest;

    g.    Damages equal to the amount of all business expenses paid by Plaintiffs and Class members that were for the benefit of Defendants' business, plus interest;

    h.    All forms of damages permitted under the FLSA, including liquidated damages, prejudgment interest, attorneys' fees, costs;

    i.    An award of prejudgment and post-judgment interest to Plaintiff and the Class;

    j.    Disgorgement of profits earned by Defendants from their operation of UberX in Philadelphia, Pennsylvania;

    k.    An award of costs;

Case ID: 1601

l.      All forms of damages attributable to Defendants' violations as alleged

herein; and,

m.      All other relief the Court deems just and proper.


**SACKS WESTON DIAMOND, LLC**

s/ Jeremy E. Abay
JEREMY E. ABAY (Attorney # 316730)
JOHN K. WESTON (Attorney # 26314)
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
Telephone: (215) 925-8200
Facsimile: (267) 966-8655
jabay@sackslaw.com
jweston@sackslaw.com


Date:   January 6, 2016

30

Case ID: 16010(

### PLAINTIFF'S CONSENT PURSUANT TO 29 U.S.C. § 216(B)

Pursuant to 29 U.S.C. § 216(b), I, Ali Razak, hereby provide my written consent to be a party plaintiff in the attached lawsuit against Uber Technologies, Inc. and Gegen LLC alleging, among other things, violations of the Fair Labor Standards Act.

_____
Signature

Case ID: 160100

## PLAINTIFF'S CONSENT PURSUANT TO 29 U.S.C. § 216(B)

Pursuant to 29 U.S.C. § 216(b), I, Kenan Sabani, hereby provide my written consent to be a party plaintiff in the attached lawsuit against Uber Technologies, Inc. and Gegen LLC alleging, among other things, violations of the Fair Labor Standards Act.

_____
Signature

Case ID: 16010

## PLAINTIFF'S CONSENT PURSUANT TO 29 U.S.C. § 216(B)

Pursuant to 29 U.S.C. § 216(b), I, Khaldoun Cherdoud, hereby provide my written consent to be a party plaintiff in the attached lawsuit against Uber Technologies, Inc. and Gegen LLC alleging, among other things, violations of the Fair Labor Standards Act.

_____
Signature

Case ID: 16010

**<u>VERIFICATION</u>**

I, Ali Razak, hereby verify that I am a Plaintiff in the attached Complaint,

and I hereby state that the facts above set forth are true and correct, or are true and correct to the

best of my knowledge, information and belief, and that I expect to be able to prove the same at a

hearing held in this matter. I understand that the statements herein are made subject to the

penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).

_____
Signature

Case ID: 160

## VERIFICATION

I, Kenan Sabani, hereby verify that I am a Plaintiff in the attached Complaint,

and I hereby state that the facts above set forth are true and correct, or are true and correct to the

best of my knowledge, information and belief, and that I expect to be able to prove the same at a

hearing held in this matter. I understand that the statements herein are made subject to the

penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).

Signature _____

## **VERIFICATION**

I, Khaldoun Cherdoud, hereby verify that I am a Plaintiff in the attached Complaint, and I hereby state that the facts above set forth are true and correct, or are true and correct to the best of my knowledge, information and belief, and that I expect to be able to prove the same at a hearing held in this matter. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).

_____
Signature

Case ID: 1

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALI RAZAK, KENAN SABANI and,   :
KHALDOUN CHERDOUD, individually   :
and on behalf of all others similarly situated,   :      Case No. _____

          Plaintiffs,   :      Judge _____

     v.   :

UBER TECHNOLOGIES, INC. and   :      Removed from Court of Common Pleas,
GEGEN LLC,   :      Philadelphia County
                                  :      Civil Action No. 160100404

          Defendants.   :

## DECLARATION OF MICHAEL COLMAN IN SUPPORT OF DEFENDANTS'
## REMOVAL OF CIVIL ACTION FROM STATE COURT

I, MICHAEL COLMAN, hereby declare and state:

1.      I am currently an Operations Specialist for Defendant Uber Technologies, Inc. ("Uber"), and I work out of Uber's San Francisco location. I have been employed by Uber since October 19, 2011, and have worked as an Operations Specialist since February 2013. In this role, I consult with local operations teams about various aspects of Uber's operations and I have comprehensive personal knowledge of Uber's general business model, as well as the operations of Gegen, LLC ("Gegen"). I have personal knowledge of the facts set forth in this Declaration, and I can and would testify to those facts if called and sworn as a witness.

2.      Uber is a privately held corporation incorporated in the State of Delaware. Its headquarters and principal place of business is in San Francisco, California. Uber's primary administrative and financial functions, including human resources, benefits and payroll, are all managed at Uber's headquarters in San Francisco.

3.      Gegen is a Delaware limited liability company, and its sole member is Uber. As provided above, Uber is incorporated in the State of Delaware, and its principal place of business

is San Francisco, California.  Gegen therefore is a citizen of Delaware and California.  Neither Uber nor Gegen are governmental entities.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed at San Francisco, California, this 4th day of February 2016.


MICHAEL COLMAN