IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALI RAZAK, KENAN SABANI, KHALDOUN CHERDOUD<br><br>v.<br><br>UBER TECHNOLOGIES, INC., GEGAN, LLC | CIVIL ACTION<br><br>NO.  16-573 |

**Baylson, J.**  **July 21, 2016**

**MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION AND MOTION TO STAY**

**I.  INTRODUCTION**

Plaintiffs Ali Razak ("Razak"), Kenan Sabani ("Sabani"), and Khaldoun Cherdoud ("Cherdoud" and, together with Razak and Sabani, "Plaintiffs") bring putative class, individual and representative claims for violations of federal and Pennsylvania wage and labor laws by defendants Gegen, LLC ("Gegen") and its sole member Uber Technologies, Inc. ("Uber" and, together with Gegen, "Defendants").  Defendants move to dismiss this case and compel arbitration and, in a separate motion, to stay this action.  For the following reasons, this Court **DENIES** Defendants' motion to dismiss and compel arbitration, and **DENIES** Defendants' motion to stay this action.

**II.  FACTUAL BACKGROUND**

**A.** **Plaintiffs' Action in the Eastern District of Pennsylvania**

Plaintiffs are Pennsylvania drivers participating in the Uber ride-sharing service who bring this action on behalf of a putative class of "[a]ll persons who provided limousine services, now known as UberBLACK, through Defendants' App in Philadelphia, Pennsylvania."  (Compl., ECF 1 Ex. A, ¶ 108).  Uber furnishes a mobile phone application (the "Uber App") "providing

1

on-demand car services to the general public." (Compl. ¶ 24). Uber App users (the "Rider") can request a ride on their mobile phone. (Compl. ¶ 30). When a request is received on the Uber App, the request is submitted to one of Uber's subsidiaries, referred to as third-party "Transportation Companies," which then forwards the request to a driver (the "Driver") logged into the Uber App. (Compl. ¶¶ 31, 33). Defendant Gegen is Uber's "Transportation Company" in Philadelphia. (Compl. ¶ 32). When the trip is completed, Uber automatically charges the Rider's credit or debit card, which must first be supplied in order to use the Uber App. (Compl. ¶ 36). As such, no money changes hands directly between Rider and Driver. (Compl. ¶ 36).

Plaintiffs are certified limousine drivers who provide services as Drivers through the Uber App's UberBLACK platform. (Compl. ¶¶ 2, 65). On or about November 23, 2013, Plaintiff Sabani completed the sign-up process to use the UberBLACK platform to book passengers, and his account was activated on November 23, 2013. (ECF 15, Defs.' Motion to Dismiss ("Defs.' Mot."), Ex. 1 (the "Colman Decl.") ¶ 12, Ex. G). Plaintiff Cherdoud completed the sign-up process to use the UberBLACK platform to book passengers on or about December 26, 2013, and his account was activated on December 30, 2013. (Colman Decl. ¶ 13, Ex. H). On or about July 14, 2014, Plaintiff Razak completed the sign-up process to use the UberBLACK platform to book passengers, and his account was activated on July 15, 2014. (Colman Decl. ¶ 11, Ex. E).

In the instant action, Plaintiffs bring claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA") 42 Pa. Cons. Stat. § 333.101 *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. § 260.1 *et seq.*, alleging that Defendants misclassified Plaintiffs as independent contractors when they are actually employees. (Compl. ¶¶ 1, 4). According to

Plaintiffs, Defendants violated the foregoing laws by failing to pay Plaintiffs and other limousine drivers any wages; failing to pay Plaintiffs and other limousine drivers an overtime premium for every hour worked in excess of forty (40) hours in a workweek; and, in requiring Plaintiffs and other limousine drivers to cover their own business expenses, reducing and/or eliminating their earnings. (Compl. ¶ 6). In addition, Plaintiffs allege that, in introducing the UberX platform into the marketplace, Defendants violated their fiduciary duty to Plaintiffs and the proposed class. (Compl. ¶ 7).

**B.     Relevant Sections of the Governing Agreements**

On December 11, 2015, Uber issued to independent transportation providers a revised Technology Services Agreement (Ex. I to Colman Decl., the "TSA") containing a revised arbitration provision (TSA § 15.3), and a Driver's Addendum (ECF 27, Pls.' Suppl. Ex. C to Abay Decl. in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss (the "Driver Addendum")). Plaintiffs each accepted the TSA and Driver Addendum (together, the "Agreement") on December 11, 2015. (Colman Decl. ¶ 14, Exs. E, G, H).

Section 15.3 of the TSA, the revised arbitration agreement (the "Arbitration Provision"), is explicitly referenced and incorporated in section 7 of the Driver Addendum. Both the TSA and the Driver Addendum independently state the procedures for opting out of the Arbitration Provision. (TSA § 15.3(viii); Driver Addendum § 7.1). An Uber Driver may opt out of the Arbitration Provision by notifying Uber, in writing, of her intent to opt out "by sending a letter by U.S. Mail, by any nationally recognized delivery service . . . to" Uber's office in San Francisco, California, postmarked within 30 days of the date the Driver executes the Agreement. (Driver Addendum § 7.1; <u>accord</u> TSA § 15.3(viii)). Here, Plaintiffs allege they exercised their putative right to opt out from the Arbitration Provision via a letter from Plaintiffs' counsel, post-

3

marked January 4, 2016, containing the signatures of Messrs. Razak, Sabani, and Cherdoud. (Colman Decl. ¶ 14; see also Pls.' Suppl. Ex. D (the "Opt-Out Notices")).

### III. PROCEDURAL HISTORY & JURISDICTION

Plaintiffs commenced this action on January 6, 2016, by filing a complaint in the Court of Common Pleas of Philadelphia County. (ECF 1, Ex. A). Defendants removed the action to federal court under 28 U.S.C. §§ 1331, 1332(a)(1), 1367(a), 1441, and 1446, citing federal question and diversity jurisdiction. On March 22, 2016, Defendants moved to dismiss this action and compel arbitration (ECF 16), and on May 12, 2016, also moved to stay this action (ECF 18). On June 21, 2016, this Court held oral argument as to both Defendants' pending motions, and ordered supplemental briefing. Plaintiffs (ECF 34) and Defendants (ECF 35) filed these supplemental briefs on July 7, 2016.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and venue is proper pursuant to 28 U.S.C § 1441(a).

### IV. LEGAL STANDARDS

**A.     Motion to Compel Arbitration**

A court "decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment." Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009). The Court applies this standard because a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 528 (3rd Cir. 2009). As such, "the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." Kaneff, 587 F.3d at 620. Furthermore, "[a]s with the standard for summary judgment, '[o]nly when there is no genuine issue of fact

4

concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." Vilches v. The Travelers Cos., Inc., 413 Fed. App'x 487, 491 (3d Cir. 2011) (alteration in original) (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)).[1]

**B.     Motion to Stay**

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936). Accordingly, a court may, "[i]n the exercise of its sound discretion . . . hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Bechtel Corp. v. Local 215, 544 F.2d 1207, 1215 (3d Cir. 1976). Although the Third Circuit has not endorsed a definitive formulation of factors to consider, courts in this Circuit engage in a balancing analysis to determine if a stay is appropriate. See Cheyney State Coll. Faculty v. Hufstedler, 703 F.2d 732, 737-78 (3d Cir. 1983) (stating that granting a stay requires "the exercise of judgment, which must weigh competing interests and maintain an even balance."); Duchene v. Westlake Servs., LLC, No. 13-1577, 2015 WL 5947669, at *2 (W.D. Pa. Oct. 13, 2015) (providing that factors to be examined include respective hardships of the parties and judicial economy).

---

[1] Although courts are not to consider exhibits on a Rule 12(b)(6) motion, because a decision regarding dismissal in favor of arbitrability is akin to a summary judgment decision, and furthermore because there does not appear to be a factual dispute as to the authenticity of Plaintiff's opt-out notices, the Court determines that Rule 12(d) is not implicated here.

## V.  DISCUSSION

The motions pending in this case bring to mind the dictate, given in *Hamlet* by Polonius to his servant Reynaldo, to "[b]y indirections find directions out."[2]  Both Plaintiffs and Defendants have argued, by filing numerous supplemental exhibits,[3] the significance of other actions pending against Uber in several jurisdictions.  When the dust (i.e., numerous filings) settles, Plaintiffs have not only alleged, but also demonstrated, that they opted out of Uber's Arbitration Agreement.  Indeed, it is this important factual difference that distinguishes this case from any other and directs the Court to its decision.

**A.     There is No Agreement to Arbitrate Issues of Arbitrability**

Defendants attempt to neuter Plaintiffs' opt-outs by contending that an order, issued by another court in another jurisdiction, "nullified" the Arbitration Provision and therefore rendered immaterial and ineffective Plaintiffs' putative right to opt out.  Thus the Court is invited to consider the effect of that order, which was issued on December 23, 2015 by Judge Chen in the Northern District of California in the following related cases: O'Connor v. Uber Technologies, Inc., No. 13-3826, In re Uber FCRA Litigation, No. 14-5200, and Yucesoy v. Uber Technologies, Inc., No. 15-262 (collectively, the "Rule 23(d) Order").

Judge Chen's Rule 23(d) Order was issued pursuant to the district court's authority under Federal Rule of Civil Procedure 23(d), which governs communications in class actions, both with class and putative class members.  (No. 13-3826, ECF 429; No. 14-5200, ECF 137 No. 15-262, ECF 161).  In O'Connor, a class was certified on September 1, 2015 (No. 13-3826, ECF

---

[2]     WILLIAM SHAKESPEARE, HAMLET act 2, sc. 1.
[3]     See, e.g., Defs.' Statement of Suppl. Authority in Supp. of their Mot. to Dismiss (ECF 22); Pls.' Statement of Suppl. Authority in Supp. of their Opp'n to Defs.' Mot. to Dismiss (ECF 25); Pls.' Notice of Filing of Suppl. Ex. C to Abay Decl. in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss (ECF 27); Defs.' Response to Pls.' Statement of Suppl. Authority in Supp. of their Opp'n to Defs.' Mot. to Dismiss (ECF 28); Pls.' Second Statement of Suppl. Authority in Supp. of their Opp'n to Defs.' Mot. to Dismiss (ECF 29); Pls.' Notice of Filing of Suppl. Ex. D to Abay Decl. in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss (ECF 31).

341), and a subclass certified on December 9, 2015 (No. 13-3826, ECF 429).  No class has yet been certified in In re Uber FCRA or Yucesoy.  Judge Chen's Rule 23(d) Order (1) enjoins Uber from sending out arbitration agreements to the class certified in O'Connor; and (2) requires Uber to send out a revised cover letter and arbitration agreement, in accordance with specified directives, to putative class members in Yucesoy and In re Uber FCRA.  O'Connor v. Uber Techs., Inc., Nos. 13-3826, 14-5200, 15-262, 2015 WL 9460292, at *4 (Dec. 23, 2015).  Furthermore, Judge Chen's Rule 23(d) Order states that "[t]he Court does not rule on the enforceability of the terms of the December 2015 Agreement, nor will it prevent Uber from sending out any arbitration agreements in the future (except as to the O'Connor certified class)." Id.  On December 28, 2015, Uber appealed the Rule 23(d) Order to the Ninth Circuit.  (No. 13-3826, ECF 437).  As of the date of this Memorandum, the Ninth Circuit has not issued a decision on the appeal of Judge Chen's Rule 23(d) Order.

Defendants first argue that Judge Chen's Rule 23(d) Order enjoining enforcement of the Arbitration Provision rendered the Arbitration Provision void, thereby raising a "threshold question of arbitrability" which must first be decided by an arbitrator, and not this Court, pursuant to the Arbitration Provision's delegation clause.  (Defs.' Br. at 11).  This argument is incorrect.  The Rule 23(d) Order did not, *ab initio*, render the Arbitration Provision a nullity.  Therefore, the only relevant question before this Court is whether Plaintiffs complied with the opt-out procedure in the Arbitration Provision such that there was no agreement to arbitrate.

"Because this is a question of arbitrability, it is governed by the [FAA]."  Khan v. Dell, Inc., 669 F.3d 350, 354 (3d Cir. 2012).  The Supreme Court has observed that the FAA reflects "a 'liberal federal policy favoring arbitration.'"  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24

(1983)). Nonetheless, "questions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 228 (3d Cir. 2012). In this respect, the Supreme Court has directed that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and umistakabl[e]' evidence that they did so." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (alteration in original) (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)).

Here, the Arbitration Provision contains a broad delegation clause, which states that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." (TSA § 15.3(i)). Thus, the language of the Arbitration Provision unequivocally evinces an intention to arbitrate arbitrability. However, the Arbitration Provision also contains a conspicuous opt-out provision, which allows for the resolution of disputes between Drivers and Uber in a court of law. (TSA § 15.3(viii); Driver Addendum § 7.1). The undisputed facts before the Court conclusively show that Plaintiffs complied with all of the procedure stated in the Arbitration Provision. The name, date and signature of Messrs. Razak, Sabani, and Cherdoud, sent in a notice postmarked January 4, 2016 (before the expiration of the 30-day opt-out period),[4] and delivered in accordance with the opt-out procedure, are apparent in a letter evidencing Plaintiffs' "formal notice" and intent to "opt out of the Arbitration Provisions contained in Section 7 of the 'Driver Addendum to Technologies Services Agreement' and Section 15 of the 'Technology Services Agreement.'" (Opt-Out Notices at 6, 27, 28).

---

[4] Plaintiffs' counsel also sent these opt-out notices on January, 4, 2016, via e-mail (Pls.' Suppl. Ex. D), which is provided for under the Arbitration Provision (TSA § 15.3(viii); Driver Addendum § 7.1).

In addition, Defendants do not dispute validity of the Plaintiffs' opt-outs in the following exchange before the Court:[5]

> Mr. Abay: If [Judge Chen's Rule 23(d) Order], which is the cornerstone of defendants' motion, if that is vacated, then defendants must give[] effect to my client's opt-out notices.
>
> The Court: What is the defense response to that?
>
> Mr. Hank: Your Honor, the short answer is yes[.]

(Tr. of Mot. Hr'g on June 21, 2016 ("Hr'g Tr." at 9:19-24).

As this exchange demonstrates, Defendants challenge the continued validity of the Arbitration Provision, *not* Plaintiffs' compliance with the procedures for opting out of the Arbitration Provision. But the Court has already found that, as a matter of law, Judge Chen's Rule 23(d) Order does *not* render the Arbitration Provision a nullity. There is thus no material dispute that Plaintiffs did not agree to arbitrate issues of arbitrability because Plaintiffs opted out from the Arbitration Provision.

In conclusion, because Plaintiffs complied with the terms of the opt-out procedure outlined in the TSA and Driver Addendum, the Court finds that Plaintiffs' opt-out notices are effective and there was no agreement to arbitrate issues of arbitrability. Accordingly, this Court has jurisdiction to determine whether this Court must dismiss this action and compel arbitration.

**B.    There is No Agreement to Arbitrate Disputes Arising out of or Related to the Agreement**

Defendants next contend that even if the Court has jurisdiction to decide the issue of arbitrability, the Court must still dismiss this action. In so arguing, Defendants again posit (1) that Judge Chen's Rule 23(d) Order has rendered the Arbitration Provision a "nullity" (Defs.'

---

[5]    Defs.' Br. at 12 n.16. Although Defendants initially challenged the validity of Plaintiffs' opt-outs (Defs.' Br. at 6 n.3), Defendants admitted during the hearing before this Court on June 21, 2016 that the opt-outs were valid (Hr'g Tr., ECF 33, at 9:24).

9

Br. at 12); (2) that, because the arbitration provisions in the prior November 2014 and April 2015 Uber agreements contained survival clauses, this Court must disregard the December 2015 TSA and Driver Addendum in favor of those prior agreements; and (3) because Plaintiffs did not opt out from those prior arbitration agreements, the Court must dismiss this action and compel arbitration of Plaintiffs' dispute. (Defs.' Br. at 11-12).

Because the Court has already rejected the first premise of this argument, Defendants' motion to dismiss arbitration and compel arbitration fails. The Court *also* rejects the second premise in Defendants' argument because the language of the Arbitration Provision itself mandates *against* substitution of one arbitration clause with another. Defendants are correct that the November 2014 and April 2015 agreements contain survival clauses, each of which provides "[t]his Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates." (Colman Decl. Ex. C § 15.3(i); Colman Decl. Ex. D § 15.3(i)). Defendants also correctly note that the merger clause in the December 2015 TSA, pursuant to the federal common law of arbitration principle of severability, does not reach the Arbitration Provision. (Defs.' Reply at 6). However, Defendants fail to acknowledge that the December 2015 Arbitration Provision *itself* contains a merger clause:

> ix. <u>Full and Complete Agreement Related to Formal Resolution Of Disputes; Enforcement Of This Agreement</u>.
>
> This Arbitration Provision is the full and complete agreement relating to the formal resolution of disputes arising out of this Agreement. Except as stated in subsection v, above, in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.

(TSA § 15.3(ix)).

10

Because the Arbitration Provision contains a merger clause, the Court will not substitute this valid agreement to arbitrate with a prior arbitration provision that has been superseded. The Arbitration Provision is valid, Plaintiffs took advantage of their putative right to opt out from Defendants' arbitration dispute resolution scheme, and this action will proceed.

For the foregoing reasons, the Court denies Defendants' motion to dismiss and compel arbitration.

C.   **The Court Will Not Stay This Case Pending a Ruling in <u>O'Connor</u>**

Defendants further argue that the Rule 23(d) Order is determinative of the pending motions because if the Ninth Circuit vacates the Order, Uber is not enjoined from enforcing its Arbitration Agreement and Plaintiffs' opt-outs are given effect, thus allowing this litigation to proceed. Thus, Defendants' motion to stay these proceedings is grounded in their contention that Judge Chen's Rule23(d) Order nullified the Arbitration Agreement, thereby preventing Plaintiffs from opting out of the Arbitration Agreement, as there was effectively no agreement from which to opt out. In denying Defendants' motion to dismiss and compel arbitration, the Court has rejected this argument.

This Court may have been inclined to grant Defendants' request to stay these proceedings had the facts of this case been different in one critical respect, namely, if Plaintiffs had never taken advantage of the opt-out procedures in the Arbitration Agreement. However, that is not the case before the Court.

In conclusion, a stay pending appeal of Judge Chen's Rule 23(d) Order is not appropriate, and this case will proceed.

## V.  CONCLUSION

For the foregoing reasons, the Court denies both Defendants' (1) motion to dismiss the complaint pursuant to contractual arbitration requirement and compel arbitration, and (2) motion to stay the proceeding.

An appropriate Order follows.

O:\CIVIL 16\16-573 Razak v Uber Technologies\Memo re MTD and MTS.docx