**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALI RAZAK, KENAN SABANI, KHALDOUN CHERDOUD**<br><br>v.<br><br>**UBER TECHNOLOGIES, INC., GEGAN, LLC** | **CIVIL ACTION**<br><br><br>**NO.  16-573** |

**Baylson, J.**                                                                    **October 7, 2016**

<u>**MEMORANDUM RE: DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**</u>

**I.      Introduction**

Plaintiffs Ali Razak ("Razak"), Kenan Sabani ("Sabani"), and Khaldoun Cherdoud ("Cherdoud" and, together with Razak and Sabani, "Plaintiffs") bring putative class, individual and representative claims for violations of federal and Pennsylvania wage and labor laws by defendants Gegen, LLC ("Gegen") and its sole member Uber Technologies, Inc. ("Uber" and, together with Gegen, "Defendants").

Plaintiffs' Complaint ("Compl.") contains six Causes of Action ("Counts")[1]:

1) Failure to pay the federal minimum wage, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*;
2) Failure to pay an overtime premium for every hour worked in excess of forty (40) hours in a workweek, in violation of the FLSA;
3) Failure to pay "free and clear" wages, in violation of the FLSA;
6) Failure to pay minimum and overtime wages, in violation of the Pennsylvania Minimum Wage Act ("PMWA"), 42 Pa. Cons. Stat. § 333.101 *et seq.*;
7)  Failure to designate regular paydays, in violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. § 260.1 *et seq.*; and
8) Breach of fiduciary duty for "purposefully creating, marketing and managing UberX."

---

[1]      The Court refers to the Counts as they are numbered in the Complaint, which omits a Count Four and Count Five.

(Compl. ¶¶ 1, 126, 135, 140, 146, 152, 166).  For purposes of all Counts, Plaintiffs allege that Defendants misclassified Plaintiffs as "independent contractors" when they are actually "employees." (Id. ¶¶ 3-4).

On August 19, 2016, Defendants moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).  (See Defendants' Motion for Judgment on the Pleadings ("Defs.' Mot.), ECF 38).  On September 2, 2016, Plaintiffs filed an opposition to Defendants' Motion, (see Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings ("Pls.' Opp."), ECF 41), to which Defendants filed a reply on September 16, 2016.  (See Defendants' Reply in Support of Motion for Judgment on the Pleading ("Defs.' Rep. Mem."), ECF 44).

For the following reasons, Defendants' Motion will be **GRANTED** without prejudice with respect to Count Two; **GRANTED** with prejudice with respect to Count Eight; **GRANTED** in part and **DENIED** in part without prejudice with respect to Count Six; and **DENIED** with respect to Count One, Count Three and Count Seven.

## II.    Factual Background

Plaintiffs are Pennsylvania drivers participating in the Uber ride-sharing service who bring this action on behalf of a putative class of "[a]ll persons who provided limousine services, now known as UberBLACK, through Defendants' App in Philadelphia, Pennsylvania."  (Compl. ¶ 108). Uber furnishes a mobile phone application (the "Uber App") "providing on-demand car services to the general public." (Id. ¶ 24).  Uber App users (the "Rider") can request a ride on their mobile phone.  (Id. ¶ 30).  When a request is received on the Uber App, the request is submitted to one of Uber's subsidiaries, referred to as "Transportation Companies," which then forwards the request to a driver (the "Driver") logged into the Uber App.  (Id. ¶¶ 31, 33).  Defendant Gegen is Uber's "Transportation Company" in Philadelphia.  (Id. ¶ 32).  When the trip is completed, Uber automatically charges the Rider's credit or debit card, which

must first be supplied in order to use the Uber App.  (Id. ¶ 36).  As such, no money changes hands directly between Rider and Driver.  (Id. ¶ 36).

Plaintiffs are certified limousine drivers who provide services as Drivers through the Uber App's UberBLACK platform.  (Id. ¶¶ 2, 65).  Plaintiffs Sabani, Cherdoud and Razak have each completed a required sign-up process to use the UberBLACK platform to book Riders, which involved  "enter[ing] into an agreement with Uber setting forth the terms for using Uber's Technology," known as the Software and Online Service Agreement (the "Service Agreement").  (Defendants' Motion to Dismiss, Ex. 1 (the "Colman Decl.") ¶¶ 7, 11-13, ECF 15-1).

### III.    Procedural History & Jurisdiction

Plaintiffs commenced this action on January 6, 2016, by filing a complaint in the Court of Common Pleas of Philadelphia County.  (ECF 1, Ex. A).  On February 4, 2016, Defendants removed the action to this court under 28 U.S.C. §§ 1331, 1332(a)(1), 1367(a), 1441, and 1446, citing federal question and diversity jurisdiction.  (Id.)

On March 22, 2016, Defendants previously moved to dismiss this case and compel arbitration, and, in a separate motion, to stay this action.  (See ECF 15, 18).  In those motions, Defendants argued that an order issued by Judge Chen in the Northern District of California in related cases had "nullified" the arbitration provision in Defendant Uber's Service Agreement, thereby raising a "threshold question of arbitrability" that had to be decided by an arbitrator.  Finding that Judge Chen's order had no such effect, this court concluded that Plaintiffs had complied with the arbitration opt-out procedures allowed by the Service Agreement.  The Court denied both motions.  (ECF 37); Razak v. Uber Techs., Inc., No. 16-cv-573, 2016 WL 3960556, at *1 (E.D. Pa. July 21, 2016).

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and venue is proper pursuant to 28 U.S.C § 1441(a).

## IV.     Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Judgment on the pleadings is appropriate only when the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008).  "The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." Zion v. Nassan, 283 F.R.D. 247, 254 (W.D. Pa. 2012).  Either motion may be used to seek the dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6), (h)(2)(B).  The only difference between the two motions is that a Rule 12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule 12(c) motion can be made "[a]fter the pleadings are closed."

The United States Supreme Court has established a two-part test to determine whether to grant a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  First, the court must ascertain whether the complaint is supported by well-pleaded factual allegations.  Iqbal, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555.  In turn, these factual allegations must be sufficient to provide a defendant the type of notice contemplated in Rule 8.  See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Taking the well-pleaded facts as true, the court must then determine whether the plaintiff is "plausibly" entitled to relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  That is, the pleadings must contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 679.  In short, a complaint must not only allege entitlement to relief, but must also demonstrate such entitlement with sufficient facts to push the claim "across the line from conceivable to plausible."  Id. at 683; accord Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

To decide a motion for judgment on the pleadings, like a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and, where appropriate and necessary, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## V.    Analysis

### a.  Fair Labor Standards Act

#### i.  Background

Counts One, Two and Three of the Complaint are brought under the FLSA, which was enacted to "govern the maintenance of standard hour and wage practices."  De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 305-06 (3d Cir. 2003).  Specifically, the FLSA "establishes federal minimum-wage, maximum hour, and overtime guarantees that cannot be modified by contract."  Genesis Healthcare Corp. v. Symczyk, 133 S.Ct. 1523, 1527 (2013).  Under the FLSA, employers are required "to pay their employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207."  De Asencio, 342 F.3d at 306.

An employer who violates § 206 or § 207 is subject to § 216(b), which provides, in relevant part:

> Any employer who violates the provisions of section 206 or section 207
> of this title shall be liable to the employee or employees affected in the
> amount of their unpaid minimum wages, or their unpaid overtime
> compensation, as the case may be, and in an additional equal amount as
> liquidated damages.

"Unlike the complex antitrust scheme at issue in Twombly that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite simple and straightforward." Harris v. Scriptfleet, Inc., 11-cv-4561, SRC, 2011 WL 6072020, at *3 (D.N.J. Dec. 6, 2011) (citing Sec'y of Labor v. Labbe, 319 Fed. App'x. 761, 763 (11th Cir. 2008). To state a *prima facie* claim under the FLSA, a plaintiff must allege that: (1) the plaintiff was an "employee," as defined by the FLSA; (2) the defendant was "engaged in commerce," as defined by the FLSA; and (3) the plaintiff was not paid the federal minimum wage or was not paid overtime compensation for hours worked in excess of forty in a given week. See 29 U.S.C. § 216(b); Mell v. GNC Corp., 10–cv–945, 2010 WL 4668966, at * 5 (W.D. Pa. Nov. 9, 2010).

The leading case in the Third Circuit regarding the sufficiency of allegations in the FLSA context is Davis v. Abington Memorial Hospital, 765 F.3d 236 (3d Cir. 2014). In that case, adopting what it called a "middle-ground approach," the Third Circuit held that plaintiffs are not required to provide exact dates and times that they worked overtime to survive a motion to dismiss. Davis, 765 F.3d at 241. However, plaintiffs must "connect the dots between bare allegations of a 'typical' forty-hour workweek and bare allegations of work completed outside of regularly scheduled shifts, so that the allegations concerning a typical forty-hour week *include* an assertion that the employee worked additional hours during such a week." Id. at 243 n.7 (emphasis added); Ford-Greene v. NHS, Inc., 106 F. Supp. 3d 590, 610 (E.D. Pa. 2015). In sum, "plaintiffs must provide sufficient detail about the length

and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." Davis, 765 F.3d at 243 (citations omitted).

To illustrate, in Davis, the Third Circuit held that the plaintiffs' allegations that they "typically" worked at least forty hours a week, and also "frequently" worked during meal breaks or outside their scheduled shifts were insufficient. Id. That is, because the plaintiffs did not allege that they worked extra hours *during* an already forty-hour week, they had not stated a claim for unpaid overtime wages under the FLSA. Id.

### ii. **Employer-Employee Relationship**

The "first inquiry in most FLSA cases is whether the plaintiff has alleged an actionable employer-employee relationship." Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 148 (3d Cir. 2014). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and an employee as "any individual employed by an employer." Id. § 203(e)(1). Under the FLSA, to employ means "to suffer or permit to work." Id. § 203(g).

"In the Third Circuit, courts determining whether a worker is an employee or an independent contractor for purposes of the FLSA look to the economic realities of the relationship between the alleged employer and employee." Verma v. 3001 Castor, Inc., 13-cv-3034, 2014 WL 2957453, at *4 (E.D. Pa. June 30, 2014) (quoting Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382-83 (3d Cir. 1985)). In ascertaining the "economic realities" of the relationship, the following factors should be considered:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship;

[and] 6) whether the service rendered is an integral part of the alleged
employer's business.

Donovan, 757 F.2d at 1382-83.  Courts applying the Donovan factors are admonished that "[n]either the
presence nor absence of any particular factor is dispositive," and to consider whether, "as a matter of
economic reality, the individuals are dependent upon the business to which they render service."  Id. at
1382.

Plaintiffs contend that Defendants "misclassify" them as independent contractors when, in fact,
they are Defendants' employees, within the meaning of the FLSA.  (Compl. ¶ 3).  The question of
whether UberBLACK drivers are properly classified as "employees" or "independent contractors" is, of
course, at the heart of this dispute.  In accordance with Federal Rule of Civil Procedure 8(a), however, at
this time "the only relevant question is whether, taking all pleaded facts as true, it is plausible that
[Defendants] are employers within the FLSA . . . definition[]."  Juan Su v. Guang Yang Li, 10-cv-5268
(MLC), 2011 WL 3329882, at *5 (D.N.J. Aug. 1, 2011).

Plaintiffs' Complaint contains several well-pleaded allegations which the court must consider
true, and which weigh in favor of an employee-employer relationship being plausible under the
Donovan factors.  For instance, with respect to the degree of control exercised by Defendants (factor
one), Plaintiffs allege, inter alia, that Defendants "control the number of fares each driver receives,"
"have authority to suspend or terminate a driver's access to the App," "are not permitted to ask for
gratuity," and "are subject to suspension or termination if they receive an unfavorable customer
rating[.]"  (Compl. ¶ 91).  As to whether the services Plaintiffs rendered require a special skill (factor
four), Plaintiffs allege that, in order to serve as Drivers, "drivers must undergo PPA training, testing,
examination, a criminal background check and driving history check."  (Id. ¶ 51).  As to the importance
of Plaintiffs' services to the Defendants' business (factor six), Plaintiffs aver that Defendants' business
is to "provide on-demand car services to the general public," and that Plaintiffs are "drivers that perform

on-demand transportation services for defendants."  (Id. ¶ 1, 24).  Plaintiffs also specifically allege that

they are "dependent upon the business to which they render service."  (See, e.g., id. ¶157 ("Plaintiffs and

Class members are financially dependent on the fare provided to them by Defendants.")); Donovan, 757

F.2d at 1383.

Courts in this district have found that plaintiffs had adequately pled the existence of an

employer-employee relationship based on far less detailed complaints.  See, e.g., Mackereth v. Kooma,

Inc., 14-cv-04824, 2015 WL 2337273, at *5 (E.D. Pa. May 14, 2015) (holding that plaintiffs sufficiently

alleged employee-employer relationship by asserting that "Defendants have employed and/or continue

to employ Plaintiff," "that they all received paychecks from [Defendants]," that "they worked at the

addresses that correspond with the locations of [Defendants], and by providing the dates of their alleged

employment); Diaz v. Counsins, Inc., 15-cv-06620, 2016 WL 3165603, at *2 (E.D. Pa. June 7, 2016)

(holding Plaintiff "sufficiently alleged a plausible claim under the FLSA" by alleging that "'[f]or

approximately three years prior to November 2015, Defendants employed Plaintiff at their Philadelphia

restaurant and paid him hourly wage.'").  Accepting, as the Court must, Plaintiffs' allegations as true,

and heeding the Third Circuit's admonition that "[n]either the presence nor absence of any particular

factor is dispositive," Donovan, 757 F.2d at 1382, Plaintiffs have sufficiently alleged that they are

properly classified as employees of the Defendants within the meaning of the FLSA.

### iii.  Engaged in Commerce

To make out a claim for violation of the FLSA, plaintiffs must also establish that they were

employees who were "covered" by the FLSA's overtime wage provision.  The FLSA extends coverage

to employees by two means: (1) the employee himself may be engaged in commerce or in the

production of goods for commerce (so-called "individual" coverage), see 29 U .S.C. § 207(a)(1)(1); or

(2) the employee may be employed in an enterprise engaged in commerce or the production of goods for

commerce (so-called "enterprise coverage."), <u>see</u> 29 U.S.C. § 203(s)(1).  <u>See</u> <u>Genarie v. PRD Mgmt.,</u> <u>Inc.</u>, No. 04-cv-2082 (JBS), 2006 WL 436733, at *5 (D.N.J. Feb. 17, 2006).  Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  Courts in this Circuit frequently hold that alleging that the defendant was an enterprise engaged in commerce under the FLSA "[i]s sufficient for purposes of a motion to dismiss."  <u>Dong v. Ren's Garden</u>, 09-cv-5642 (MLC), 2010 WL 1133482, at *4 (D.N.J. Mar. 22, 2010) (internal citations omitted); <u>see also</u> <u>Zebroski v. Gouak</u>, No. 09-1857, 2009 WL 2950813, at *1 (E.D. Pa. Sept. 9, 2006).

Here, Plaintiffs allege that Defendants were "employers in commerce within the meaning of 29 U.S.C. §203(e), 203(m), and 206(a)."  (Compl. ¶¶ 122, 125.)  In the Third Circuit, this is sufficient, particularly since Plaintiffs have alleged that Defendants "provide[] on-demand car services," which, by definition, requires the use of interstate channels, namely roads and interstate highways.  (Compl. ¶ 2).

### iv.  Minimum Wage Allegations (Count One)

The Court next turns to whether Count One of the Complaint adequately alleges that Defendants failed to pay Plaintiffs the minimum wage of $7.25 per hour, as required by the FLSA.  <u>See</u> 29 U.S.C. 206(a)(1)(C).  Defendants argue that Plaintiffs' allegations regarding minimum wage amount to "general conclusions."  (Defs.' Mot. at 8).  Specifically, Defendants aver that Plaintiffs "make no effort to identify the Plaintiffs' or other individual limousine driver's actual rates of pay [or] wages actually earned in a workweek," to "quantify the expenses that were allegedly deducted from earnings," or to allege "to what extent such deductions reduced Plaintiffs wages below the minimum wage such that Plaintiffs' allegedly unpaid minimum and overtime wages could be theoretically calculated or even inferred."  (<u>Id.</u>).  Plaintiffs contend that the facts to which Defendants point are mere "details, not operative facts," and any dearth of detail in Plaintiffs' Complaint was due to Defendants' failure to keep

"records of how many hours the drivers worked each day and each week," as the FLSA requires.  (Pls.'

Opp. at 5).

"An employee cannot state a claim for minimum wage violations 'unless [his] average hourly

wage falls below the federal minimum wage.'"  Johnson v. Equinox Holdings, Inc., No. 13-cv-6313,

2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (quoting Lundy v. Catholic Health Sys. Of Long

Island, Inc., 711 F.3d 106, 115 (2d Cir. 2013).  A plaintiff's average hourly wage is determined "by

dividing his total remuneration for employment . . . in any workweek by the total number of hours

actually worked by him in that workweek for which such compensation was paid."  29 CFR § 778.109.

Unlike claims brought pursuant to the overtime provision of the FLSA, the Third Circuit has not

specifically addressed the level of specificity required to plead a minimum wage claim under the FLSA.

Defendants cite cases out of the Third Circuit and rely principally on Zhong v. August August

Corp., 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007), for the proposition that "a claim under the FLSA to

recover unpaid minimum or overtime wages should indicate the applicable rate of pay and the amount of

unpaid or overtime wages due," as well as "allege the hours worked for which wages were not

received."  As noted above, the Third Circuit articulated in Davis, in the context of overtime claims, a

"middle-ground approach" to test the sufficiency of allegations, and Defendants cite no cases since

Davis[2] that endorse the pleading requirement articulated in Zhong.[3]

---

[2]      For instance, while Defendants cite Scott v. Bimbo Bakeries, USA, Inc., 10-cv-3154, 2012 WL
645905, at *2 (E.D. Pa. Feb. 29, 2012), a pre-Davis case, for its endorsement of Zhong, the court there
acknowledged that "[t]he United States Court of Appeals for the Third Circuit has not addressed how
precisely a plaintiff must plead the third element of an FLSA claim and district courts are split on this
question."

[3]      It bears mentioning that Nicholson v. UTI Worldwide, Inc., et al, No. 09-cv722, 2010 WL
551551 (S.D. Ill. Feb 12, 2010)—on which Defendants also rely—explicitly rejects the reasoning of
Zhong.  See id. ("While Zhong might be right that a plaintiff should plead his rate of pay and the wages
due, no rule requies that he do so.  On the contrary, notice pleading is still alive and well in federal
courts, and under that standard a plaintiff need only provide enough details to give the defendant fair
notice of the claim and to show that the claim is plausible.").

Courts in this Circuit have noted that the rationale for why plaintiffs are not required to allege specific facts regarding wages earned and hours worked is, as Plaintiffs point out in their Opposition, that the FLSA requires employers to keep records of the "wages, hours, and other conditions and practice" of its employees.  28 U.S.C. 211(c).  Indeed, regulations advanced pursuant to Section 11(c) of the FLSA *require* employers to keep, *inter alia*, payroll records of the following: 1) hours worked per day; 2) total hours worked per week; 3) total daily or weekly straight-time earnings; and 4) total premium pay for overtime hours.  See 29 C.F.R. 516.2; see also Williams v. Tri-County Growers, Inc., 747 F.2d 121, 127 (3d Cir. 1984).  In light of this burden, "it cannot be the case that a plaintiff must plead specific instances of unpaid overtime or minimum wage violations before being allowed to proceed to discovery to access the employer's records."  Scriptfleet, 2011 WL 6072020, at *3.

The instant Complaint presents a close case because Plaintiffs have not explicitly alleged that their average hourly wage fell below the federal minimum during any *particular* week, which would have squarely satisfied the standard announced in the overtime context in Davis.  Construed liberally, however, Plaintiffs' Complaint contains sufficient factual allegations to permit the Court to allow the reasonable inference that Plaintiffs were not paid minimum wage.  Specifically, Plaintiffs have alleged that, "at the end of each week, the driver receives an electronic earnings statement from Uber and Geden," which amounts to the driver's "trip earnings' less 'miscellaneous' expenses."  (Compl. ¶¶ 40-41).  "Trip earnings," the Complaint alleges, "equal the driver's fare less Uber's fee" of twenty-five percent "taken off the top."  (Id. ¶¶ 42-43).  Additionally, Plaintiffs allege that "Uber automatically deducts various expenses from the driver's earnings," including, but not limited to, "(1) regulatory fees accessed by the PPA, (2) vehicle payments, and (3) insurance premium payments."  (Id. ¶ 43).  "The aforesaid expenses are automatically deducted from the driver's earnings, regardless of whether the driver earned enough money to cover expenses.  If there is a net negative balance, the driver must go to

12

Gegen office and pay the balance in order to maintain access to his or her Uber account." (Id. ¶ 47). The Court finds that these allegations contain sufficient detail to "put [Defendants] on notice of the essential elements" of Plaintiffs' claim. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Accordingly, Defendants' Motion with respect to Count One of the Complaint will be denied.

### v.   Overtime Allegations (Count Two)

The Court next addresses whether, in Count Two of the Complaint, Plaintiffs have alleged facts sufficient to state a claim for failure to pay overtime wages, in violation of the FLSA. Defendants argue that Plaintiffs' Complaint is insufficient because, among other reasons, it "fails to allege the nature and compensability of their 'work' for Defendants, how many hours they worked in a given workweek or per workweek, or that they worked uncompensated time in excess of the 40 hours in a given work week." (Defs.' Mot. at 11). Plaintiffs essentially respond that they "allege that they were not paid overtime which was due to them" and that "Defendants' failure to keep records . . . absolves Plaintiffs from the requirement of pleading any further detail." (Pls.' Opp. at 7).

Under Davis, supra, "[i]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a given workweek as well as some uncompensated time in excess of the [forty] hours." Id. (internal citations omitted).

Applying Davis, Plaintiffs have not sufficiently alleged a claim for overtime wages. While Plaintiffs state the legal conclusion that Defendants failed to pay Plaintiffs "an overtime premium for hours worked in excess of 40 hours in a work week" (Compl. ¶ 135), nowhere do they allege to have worked in excess of 40 hours in a workweek, let alone that there was any given week in which they were not paid overtime. See Ford-Greene v. NHS, Inc., 106 F. Supp. 3d 590, 611 (E.D. Pa. 2015) (holding plaintiff's overtime claim was "fatally deficient" because plaintiff did not allege that the "off the clock" work she did "took place during a week in which she worked in excess of forty hours total for that

week").  Accordingly, Count Two of the Complaint will be dismissed without prejudice, with leave to amend.

### vi.   Free and Clear Wages (Count Three)

Count Three of the Complaint alleges that Defendants violated the FLSA by not paying Plaintiffs "any wages, let alone wages that were free and clear," and because "the cost of having to pay various expenses cut into the wages and overtime pay that Plaintiffs and members of the Collective Action are entitled to."  (Compl. ¶ 140).  The Court construes Count Three as a claim for failure to pay minimum wage, which, as explained above, Plaintiffs have adequately alleged.  Defendants' Motion with respect to Count Three will therefore be denied.  (See *supra*, V.a.iv.).

### b.   Pennsylvania Minimum Wage Act (Count Six)

Similar to the wording in the minimum wage standard set forth in the FLSA guidelines, the PMWA states that "[e]very employer shall pay to each of his or her employees wages for all hours worked at a rate of not less than . . . [s]even dollars fifteen cents ($7.15) an hour beginning July 1, 2007."  43 Pa. Stat. § 333.104(a) (8); see Ford-Greene v. NHS, Inc., 106 F. Supp. 3d 590, 612–13 (E.D. Pa. 2015).  Additionally, "[e]mploye[e]s shall be paid for overtime not less than one and one-half times the employee's regular rate . . . for hours in excess of forty hours in a workweek."  Id. § 333.104(c).

Because the PMWA "substantially parallels" the FLSA, see 43 Pa. Stat. Ann. § 333.104(a), (c), federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA.  See, e.g., Ford-Greene, 106 F. Supp. 3d at 610–13 (applying the Third Circuit's analysis in Davis to the plaintiff's claims under both the FLSA and PMWA); Philadelphia Metal Trades Council v. Konnerud Consulting W., A.S., 15-cv-5621, 2016 WL 1086709, at *5-6 (E.D. Pa. Mar. 21, 2016) (same).

Therefore, consistent with the Court's analysis of the FLSA, Plaintiffs have sufficiently alleged that Defendants' failed to pay them minimum wage under the PMWA, but have not sufficiently alleged

that Defendants failed to pay them overtime.  Therefore, Count Six will be dismissed without prejudice, and with leave to amend, only with respect to Plaintiff's overtime claim under the PMWA.

### c.  Pennsylvania Wage Payment and Collection Law (Count Seven)

In Count Seven of the Complaint, Plaintiffs assert that they are entitled to unpaid wages pursuant to the WPCL.  The WPCL provides that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer."  43 Pa. Cons. Stat. Ann. § 260.3(a).  The WPCL confers onto employees the ability to institute legal actions to collect wages payable to them by employers.  See id. § 260.9a; see also Oberneder v. Link Computer Corp., 548 Pa. 201, 696 A.2d 148, 150 (Pa. 1997) ("The Wage Payment and Collection Law provides employees a statutory remedy to recover wages and other benefits that are contractually due to them.").  The Third Circuit has explained that the "WPCL does not create a right to compensation.'  Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages.  The contract between the parties governs in determining whether specific wages are earned.'"  Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1996) (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990).

Preliminarily, Defendants ask the Court for judgment on the pleading on the basis that the Complaint requests relief for "Failure to Designate Regular Paydays."  (Compl. at 24).  Notwithstanding the fact that, as Plaintiffs concede, failure to designate regular paydays is not a cause of action under the WPCL, (Pls.' Opp. at 8), the Court will determine whether Plaintiffs have alleged adequate facts to make out a claim for unpaid wages pursuant to an employment contract, which the WPCL does authorize.  See Jordan v. City of Philadelphia, 66 F. Supp. 2d 638, 647 (E.D. Pa. 1999) ("Under the liberal federal pleading rules, the fact that a complaint does not cite the specific statutory provisions does not require dismissal.").

Defendants also argue that the Complaint is devoid of information that is "absolutely necessary to determining whether Defendants complied with the WPCL's requirement to pay on 'regular paydays.'" (Defs.' Mot. at 16). In the alternative, Defendants contend that, to the extent Plaintiffs' allegation that "[a]t the end of each week, the driver receives an electronic earnings statement from Uber and Gegen" is taken as true, "Plaintiffs' complaint would concede as a matter of law that Defendants paid drivers lawfully under the WPCL since they paid on regular paydays." (Id.).

Plaintiffs, for their part, maintain that the factual allegations contained in paragraphs 24-49 of the Complaint, combined with the Service Agreement into which Plaintiffs entered with Uber (Colman Decl., Ex. C),[4] allege "basic offer-acceptance-consideration contract formation[.]" (Pls.' Opp. at 9).

### i. Employer-Employee Relationship

As noted above concerning the FLSA, also under the WPCL, the existence of an employer-employee relationship is a prerequisite to stating a *prima facie* claim. However, courts have articulated slightly different tests to determine whether a plaintiff qualifies as an employee or an independent contractor pursuant to the FLSA and WPCL. See Sherman v. Am. Eagle Exp., Inc., 09-cv-575, 2012 WL 748400, at *8 (E.D. Pa. Mar. 8, 2012) (noting that the tests are "not identical"). In interpreting the meaning of "employee" under the WPCL, Pennsylvania courts have applied a multifactor test, which includes:

> the control of the manner that work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; the skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is

---

[4]     The Court can consider the Service Agreement because it was attached to the affidavit of Michael Colman in connection with Defendants' motion to dismiss (See ECF 15); see also Pension Ben. Guar. Corp., 998 F.2d at 1196 (A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

> part of the regular business of the employer, and the right to terminate the
> employment at any time.

Morin, 871 A.2d at 850 (quoting Lynch v. Workmen's Comp. Appeal Bd., 554 A.2d 159, 160 (Pa.

Commw. Ct. 1989)).  Although, like the Donovan test, no one factor is dispositive, for purposes of the

WPCL the "paramount" factor is the right to control the manner in which the work is accomplished.

Accurso v. Infra-Red Servs., Inc., 119 F. Supp. 3d 316, 328 (E.D. Pa. 2015) (quoting Morin, 871 A.2d at

850).  In the context of workers' compensation, the "control over the work to be completed and the

manner in which it is to be performed are the primary factors in determining employee status."

Williams, et al. v. Jani-King, et al., 15-cv-2049, 2016 WL 5111920, at *4 (3d Cir. Sept. 21, 2016)

("predict[ing]" that "the right to control, rather than actual control, is the most important of the factors.")

(quoting Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd., 762 A.2d 328, 333 (Pa. 2000)).

      As described above, *supra* V.a.ii, Plaintiffs' Complaint sufficiently alleges facts to demonstrate

that Defendants exercised a high degree of control over the way Plaintiffs' work was conducted, and

have therefore satisfied the "paramount" factor in the test announced in Morin.  As such, Plaintiffs have

sufficiently alleged that they were "employees" within the meaning of the WPCL.

### d.  Existence of a Contract

      In addition to establishing employee status, "a prerequisite for relief under the WPCL is a

contract between employee and employer that sets forth their agreement on wages to be paid . . . Relief

under the WPCL is implausible without [the] existence of a contract.'"  Scott v. Bimbo Bakeries, USA,

Inc., 10-cv-3154, 2012 WL 645905, at *4 (E.D. Pa. Feb. 29, 2012) (quoting Lehman v. Legg Mason,

Inc., 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007)).  In the absence of a written employment contract or

collective bargaining agreement, the plaintiff bears the burden of "establish[ing] the formation of an

implied oral contract [in order] to recover under the WPCL."  Oxner v. Cliveden Nursing & Rehab. Ctr.,

132 F. Supp. 3d 645, 649 (E.D. Pa. 2015).  An implied contact exists "where one performs for another,

with the other's knowledge, a useful service of a character that is usually charged for, and the latter

expresses no dissent or avails himself of the service." Id. (quoting Martin v. Little, Brown & Co., 450

A.2d 984, 987 (Pa. Super. 1981)) (internal quotations omitted).

Here, Plaintiffs have not adequately alleged that they were working under an express

employment contract.  The Service Agreement into which they entered makes no reference to wages or

the obligation to pay wages.  In fact, the Agreement contains an express disclaimer that "this Agreement

is not an employment agreement, nor does it create an employment relationship, between Uber and . . .

any Driver[.]"  (Colman Decl., Ex. C at 26).  Courts in this district consistently hold that disclaimers

stating an intention not to contract "can dispel the existence of a contract."  Bosler v. Bio-Med.

Applications of Pennsylvania, 14-cv-1530, 2015 WL 479914, at *3 (E.D. Pa. Feb. 3, 2015).

Plaintiffs have, however, alleged sufficient facts to show that they were working for Defendants

under an *implied* contract for wages.  The Complaint alleges that (1) "Plaintiffs are certified limousine

drivers" for UberBLACK (Compl. ¶ 2); (2) "When Gegen receives the fare request from Uber, it

forwards that request to a driver who is logged into the App," which the driver could decide to accept

(Compl. ¶¶ 33, 35); and (3) "[a]t the end of each week, the driver receives an electronic earnings

statement from Uber and Gegen."  (Compl. ¶ 40).  As UberBLACK Drivers, Plaintiffs have necessarily

accepted such a request at least once, which is sufficient to give rise to an implied contract for wages

pursuant to their employment by Defendants.  See Restatement Restitution § 107(2) (1937) ("When a

person requests another to perform services, it is ordinarily inferred that he intends to pay for them,

unless the circumstances indicate otherwise.").  "There is at least an inference, which must be drawn in

Plaintiffs' favor, that [Defendants] breached its contract with its employees."  Compare Masterson v.

Fed. Exp. Corp., 07-cv-2241, 2008 WL 4415700, at *4 (M.D. Pa. Sept. 26, 2008) (holding plaintiffs

sufficiently plead claim under PWCL by alleging "that they believed they would be paid for all hours

worked, but that [defendant] has failed to do so") with Mackereth v. Kooma, Inc., 14–cv–04824, 2015 WL 2337273, at *10 (E.D. Pa. May 14, 2015) (dismissing plaintiff's WPCL claim where plaintiff entirely failed to allege "the existence of a contractual right, either express or implied, to recover the wages they seek").

Defendants argue that, by alleging that UberBLACK Drivers were paid on a weekly basis, Plaintiffs have effectively admitted that, "as a matter of law . . . Defendants paid drivers lawfully under the WPCL since they paid on regular paydays." (Defs.' Mot. at 16.) This argument must fail, however, since plaintiffs are entitled, pursuant to § 260.3(a), to assert their right to "all wages." The fact that Plaintiffs were paid *something* on a weekly basis does not foreclose their claim. To the contrary, the fact that there was consideration strengthens the notion that the parties were operating under an implied contract. Whether the payments Defendants provided to Plaintiffs in the weekly "electronic earnings statement" constituted "all wages"—as opposed to only some wages—due to them "is not for the court to determine at this juncture." Bair v. Baratz Dental, LLC, 15-cv-0817, 2015 WL 5651069, at *4 (M.D. Pa. Sept. 24, 2015) (holding plaintiffs sufficiently alleged a claim under the WPCL by alleging only that "they are entitled to unused, earned vacation time 'in accordance with their pay stubs.'"). Accordingly, Plaintiffs have sufficiently alleged a claim under the WPCL, and Defendants' Motion with respect to Count Seven will be denied.

## VI.    Breach of Fiduciary Duty (Count Eight)

Count Eight of Plaintiffs' Complaint alleges that Defendants breached their fiduciary duty to Plaintiffs by "establishing the Uber-X program, a program in direct competition with UberBLACK which disastrously undercut the UberBLACK drivers' compensation by giving favored treatment to the Uber-X driver." (Pls.' Opp. at 10). Defendants contend that Plaintiffs have failed to allege that any

special relationship existed between the parties that could give rise to a fiduciary duty, which is fatal to their claim for *breach* of a fiduciary duty.

A fiduciary relationship exists where there is a "special relationship" between parties, which involves confidentiality, special trust, or fiduciary responsibilities.  Siematic Mobelwerke GmbH & Co. v. Siematic Corp., 06-cv-5165, 2009 WL 2526436, *4 (E.D. Pa. Aug. 12, 2009).  "A fiduciary relationship does not arise merely because one party relies on and pays for a specialized skill or expertise of another party."  eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 23 (Pa. Super. Ct. 2002).  In an employment context, "an employer-employee relationship does not, in and of itself, give rise to a fiduciary relationship."  U.S. v. Kensington Hosp., 760 F. Supp. 1120, 1133 (E.D. Pa. 1991) (citations omitted); see also Diaz v. Rent-A-Center, Inc., 03-cv-3763, 2004 WL 241505, *3 (E.D. Pa. Feb. 6, 2004) ("Although the state courts have recognized a 'confidential relationship,' requiring one party to act with the utmost good faith for the benefit of the other party in the areas of fiduciaries and estates, we find no precedent to extend this protection to [the] employer/employee relationship.") (citations omitted)); Snyder v. Dietz & Watson, Inc., 837 F. Supp. 2d 428, 444 (D. N.J. 2011) ("The Court is aware of no case that generally imposes on an employer a fiduciary duty to its employees.").

In the instant Complaint, Plaintiffs allege conclusively that "[g]iven the overmastering influence Defendants exert of Plaintiffs and Class members, Defendants owe Plaintiffs and Class members a fiduciary duty."  (Compl. ¶ 165).  In support, Plaintiffs make several factual allegations regarding specific controls Defendants exercise over Plaintiffs.  (See, e.g., Compl. ¶ 155 ("Defendants have total control over whether Plaintiffs can access the Uber App."); id. ¶ 156 ("Defendants have total control over how work is allotted to Plaintiffs and Class members."); id. ¶ 160 ("Defendants restrict Plaintiffs and Class members' ability to earn a living as a limousine driver by suspending and terminating Plaintiffs and Class members' access to the Uber App.")).  None of these allegations, however, show a

relationship that involves the "confidentiality" or "special trust" required to state a claim for breach of fiduciary duty.  Siematic Corp., 2009 WL 2526436, at *4.  As Defendant points out, these allegations, taken as true, merely describe the typical balance of power in an employer-employee relationship.  (See Defs.' Mot. at 16).

Plaintiffs' reliance on Babiarz v. Bell Atl.-Pennsylvania, Inc., No. 1863 AUG.TERM 2000, 2001 WL 1808554, at *1 (Pa. Com. Pl. July 10, 2001) ("Babiarz I"), is misplaced.  In that case, the court originally found that the plaintiff's allegation that he had disclosed an idea to his employer in confidence, in response to the employer's solicitation for new business ideas, was sufficient to form a fiduciary relationship.  Id. at *1-2.  Upon the defendants' motion for reconsideration, however, the court found that the plaintiff's fiduciary duty claim had been negated in light of newly discovered evidence— namely, the existence of an unambiguous contract "acknowledging that the idea belonged to [the defendants]."  Babiarz v. Bell Atl.-Pennsylvania, Inc., No. 1863, 2001 WL 1807378, at *3 (Pa. Com. Pl. Nov. 20, 2001) ("Babiarz II").  Plaintiffs rely on the unsupported statement in Babiarz I that "it is not clear than an employer can never owe a confidential or fiduciary duty to his employee if the circumstances warrant finding such a duty."  2001 WL 1808554, at *12.  The court in Babiarz II, however, which neither party cites, ultimately held that the duty did not exist under the circumstances in that case, and Plaintiffs cite nothing to suggest that it does in this case either.  (See Defs.' Rep. Mem. at 14).

For the foregoing reasons, Plaintiffs have failed to allege facts sufficient to establish a fiduciary or confidential relationship as required to support a breach of fiduciary duty claim.  The Court, based on established Pennsylvania law, does not believe that any facts in this case will warrant the existence of a fiduciary relationship.  Accordingly, Count Eight will be dismissed with prejudice.

**VII.     Conclusion**

For the following reasons, Defendants' Motion will be **GRANTED** without prejudice with respect to Count Two; **GRANTED** with prejudice with respect to Count Eight; **GRANTED** in part and **DENIED** in part without prejudice with respect to Count Six; and **DENIED** with respect to Count One, Count Three and Count Seven.

An appropriate Order follows.

O:\Jessica.2016\16-cv-573 Razak v. Uber\Order- Motion for Judgment on the Pleadings 10-7.docx