IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALI RAZAK, KENAN SABANI, AND KHALDOUN CHERDOUD,<br><br>*Plaintiffs,*<br><br>v.<br><br>UBER TECHNOLOGIES, INC. AND GEGEN LLC,<br><br>*Defendants* | Case No. 2:16-cv-00573-MMB<br><br>Judge Michael M. Baylson |

**PLAINTIFFS' MOTION REQUESTING THE COURT TO INCLUDE A SEPARATE JURY INSTRUCTION AND QUESTION REGARDING PENNSYLVANIA LAW**

Plaintiffs Ali Razak, Kenan Sabani, and Khaldoun Cherdoud were "UberBLACK" drivers in Philadelphia, who have brought claims under Pennsylvania law (specifically the Pennsylvania Wage Payment Collection Law, 43 P.S. § 260.1, *et seq.* ("WPCL"), and the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* ("PMWA")), and the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), claiming that they were "employees" under these statutes, but misclassified as "independent contractors," and that they experienced certain wage violations as a result of their misclassification. *See generally* First Amended Complaint, ECF No. 47.

Plaintiffs now request that, at the upcoming trial, the Court give separate jury instructions (and ask a separate question) regarding Plaintiffs' employee status under Pennsylvania law as compared to federal law. A recognition that Pennsylvania law is more protective of employee

1

status than federal law is consistent with recent Pennsylvania Supreme Court precedent that has found Pennsylvania law to be broader and more protective of workers than the federal FLSA.[1]

Neither the Pennsylvania Wage Payment and Collection Law ("WPCL") nor its regulations describe the test to be applied in determining whether a purported "independent contractor" should be classified as an "employee" entitled to the WPCL's various protections. *See generally* 43 P.S. §§ 260.1 *et seq.*; 34 Pa. Code §§ 9.1 *et seq.* Moreover, the Pennsylvania Supreme Court has never addressed the issue. However, Plaintiffs expect that, when the question is presented, the Pennsylvania Supreme Court will adopt a more lenient test for establishing independent contractor misclassification than federal law.

Indeed, in recent years, other state Supreme Courts have adopted an "ABC test" that places the burden on the alleged employer to prove that worker is an independent contractor and makes it especially difficult for workers to be classified as independent contractors under state wage laws (requiring the alleged employer to prove three ABC prongs in order to establish independent contractor status). *See Hargrove v. Sleepy's LLC*, 106 A.3d 449 (N.J. 2015); *Dynamex Operations West, Inc. v. Superior Court*, 416 P.3d 1 (Cal. 2018).[2] It is conceivable that

---

[1] Plaintiffs have conferred with Defendants on this issue, who have taken the position that the Court should give identical instructions regarding Plaintiffs' employee status under the state and federal statutes at issue.

[2] Notably, the New Jersey Supreme Court rejected efforts to apply the FLSA standard, finding that, *inter alia,* the "ABC" test operates to provide more predictability and may cast a wider net than the FLSA "economic realities" standard. *See Hargrove*, 106 A.3d at 464. Similarly, in *Dynamex*, 416 P.3d at 30-36, the California Supreme adopted an ABC test, recognizing the uncertainty created by multi-prong tests and the need for stronger and more predictable employee protections. Under this test, the alleged employer would need to prove that: "(A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." *Id.* at 35-36.

the Pennsylvania Supreme Court will likewise adopt an ABC test or a similar test when presented with the issue.[3]

Plaintiffs thus request that the Court instruct the jury separately on Pennsylvania law from federal law and make clear that the state law test is more lenient than the federal test and places the burden on Defendants to establish that the Plaintiffs were independent contractors. This issue may become very relevant on a further appeal in this case.[4] Thus, it would be in the interest of judicial economy for the Court to include a separate jury instruction and question under Pennsylvania law, so as to prevent the possibility of this case needing to be retried if Plaintiffs are correct that Pennsylvania law is broader and more protective than federal law (and if Plaintiffs do not prevail on their claim under the FLSA).

### I. BACKGROUND

#### A. Relevant Procedural History

As the Court is aware, this case involves Plaintiffs' claims that they were misclassified as independent contractors when, in reality, they were Defendants' employees. *See generally* First Amended Complaint, ECF No. 47. Following an entry of summary judgment in Defendants' favor, the Third Circuit found that disputed issues of material facts regarding the Plaintiffs'

---

[3] Neither New Jersey nor California wage statutes contained express language setting forth an ABC test for wage law purposes, yet the Supreme Courts of both states chose to adopt an ABC test, given their desire to ensure that workplace protections are broadly applicable. Similarly, as described herein, the Pennsylvania Supreme Court has routinely, and especially recently, interpreted Pennsylvania wage law broadly to benefit workers and, in doing so, has led Pennsylvania law to diverge from the FLSA in important respects. *See, e.g., Heimbach v. Amazon.com, Inc.*, 255 A.3d 191, 200-01 (Pa. 2021); *Chevalier v. General Nutrition Centers Inc.*, 220 A.3d 1038, 1055-56 (Pa. 2019); *Bayada Nurses Inc. v. Dep't of Labor & Industry*, 8 A.3d 866, 882-83 (Pa. 2010).

[4] If necessary, the Third Circuit could certify this question of Pennsylvania law to the Pennsylvania Supreme Court. 210 Pa. Code § 3341.

employee status precluded an entry of summary judgment and remanded the case to this Court for further proceedings.  *See Razak v. Uber Techs., Inc.*, 951 F.3d 137 (3d Cir.), *amended,* 979 F.3d 192 (3d Cir. 2020).

The parties have agreed that the case will proceed to a jury trial just on the limited issue of whether the three individual named plaintiffs were Uber's employees under the statutes at issue.  *See* ECF No. 136.  All remaining issues (*i.e.* damages, hours worked, and class or collective treatment of this matter) will be deferred until after trial on the threshold liability question.  *See* ECF No. 136.

### B. The Pennsylvania Supreme Court's Recent Decisions In *Lowman* and *In re Amazon*

***Lowman v. Unemployment Comp. Bd. of Rev.***

On July 24, 2020, the Pennsylvania Supreme Court issued its opinion in *Lowman v. Unemployment Comp. Bd. of Rev.*, 661 Pa. 29, 235 A.3d 278 (Pa. 2020), which Plaintiffs submit may affect the applicable standard for the Pennsylvania law claims in this case.

In *Lowman,* the Pennsylvania Supreme Court clarified the proper test for determining whether an individual was "self-employed" (*i.e.,* an "independent contractor"[5]) and therefore ineligible for unemployment benefits, as compared to an "employee" and therefore eligible for unemployment benefits.  Similar to the instant matter before the Court, *Lowman* involved the employee status of an Uber driver, Donald Lowman, and whether his work as an Uber driver rendered him an independent contractor.

The Pennsylvania Supreme Court announced that the appropriate test for determining "independent contractor" status is found in 43 P.S. §§ 753(1)(2)(B) of the Unemployment

---

[5] "One who is an independent contractor can equally be described as self-employed." *Lowman*, 235 A.3d at 297.

Compensation Act. Section 753(1)(2)(B) presumes employee status unless the employer shows that (a) "such individual has been . . . free from control or direction over the performance of such services . . ." and (b) "as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business." 43 P.S. §§ 753(1)(2)(B). And, applying this standard, the Pennsylvania Supreme Court found that Mr. Lowman was Uber's employee – *not* an independent contractor – finding, *inter alia* "as a matter of law that Lowman was not free from Uber's direction or control," 235 A.3d at 303, and that "Lowman was not engaged in an independently established business," *id.* at 308.

With regard to the "control" factor, the Pennsylvania Supreme Court found "the most weighty and thus dispositive factors in this case to include: the required application process; the inability to use a substitute to provide services; Uber's monitoring, review and supervision of Lowman's performance; pay structure; provision of tools and equipment." *Id.* at 303–04. The Pennsylvania Supreme Court observed:

> Uber, presenting itself as a transportation network company, invites a passenger without any personal contact with anyone, to request a ride from a driver (who will be a stranger). Vetting, monitoring and supervising the provision of services by its drivers is implicit in Uber's services. Giving weight to all of the evidence, we conclude that Uber controlled and directed the performance of Lowman's services as a driver-for-hire.

*Id.* And with regard to the "independence" factor, the Pennsylvania Supreme Court likewise found compelling that Lowman could not "develop a separate relationship with clients" per the terms of his relationship with Uber, nor could he "negotiate a higher rate with a passenger" or otherwise "set or negotiate his remuneration," *id.* among other factors.

***In re Amazon***

5

On July 21, 2021, the Pennsylvania Supreme Court issued its decision in *In re Amazon.com, Inc.*, 255 A.3d 191 (Pa. 2021), wherein the Pennsylvania Supreme Court made clear the protective and independent nature of Pennsylvania law and rejected Amazon's efforts to import standards from the federal FLSA onto the PMWA.[6] Plaintiffs highlight *In re Amazon* because of the Pennsylvania Supreme Court's full-throated findings that the PMWA is independent from – and more protective than – the federal FLSA, as these conclusions are highly relevant here and counsel against Defendants' position that the federal standards should be automatically imported onto Plaintiffs' claims arising under Pennsylvania law.

---

[6]   Specifically, in *In re Amazon*, the Pennsylvania Supreme Court answered two certified questions from the United States Court of Appeals for the Sixth Circuit related to mandatory security screenings at an Amazon warehouse facility in Pennsylvania:

> (1) whether time spent on an employer's premises waiting to undergo, and undergoing, mandatory security screening is compensable as "hours worked" within the meaning of the Pennsylvania Minimum Wage Act ("PMWA")?; and
>
> (2) whether the doctrine of *de minimis non curat lex*, as described in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), applies to bar claims brought under the PMWA?

*In re Amazon*, 255 A.3d at 192-93.
   The Pennsylvania Supreme Court expressly found that "time spent on an employer's premises waiting to undergo, and undergoing, mandatory security screening constitutes 'hours worked' under the PMWA; and there exists no *de minimis* exception to the PMWA." *Id.* These findings stand in stark contrast to federal law (under which the mandatory security screenings are *not* compensable) and exemplify the protective and expansive nature of Pennsylvania law and the PMWA. Specifically, the FLSA, 29 U.S.C. §§ 201 *et seq.*, as amended by the federal Portal to Portal Act of 1947, *id.* §§ 251-262, classifies "activities which are preliminary to or postliminary to" a worker's principal activity or activities as non-compensable, 29 U.S.C. § 254(2), and the United States Supreme Court has determined that *the same* Amazon security screenings at issue in *In re Amazon* constituted such "postliminary activities" so as to be excluded from compensable hours worked under the FLSA, *see Integrity Staffing Solutions v. Busk*, 574 U.S. 27 (2014). The Pennsylvania Supreme Court likewise refused to impose the FLSA's *de minimis* doctrine onto the PMWA.

Notably, the Pennsylvania Supreme Court stressed that "the FLSA, by its own terms, specifically permits states "to enact more beneficial wage and hour laws" than provided by the FLSA. *Id.* (quoting *Bayada Nurses, Inc. v. Com., Dep't of Lab. & Indus.*, 607 Pa. 527, 556, 8 A.3d 866, 883 (Pa. 2010)). *Accord Chevalier v. Gen. Nutrition Centers, Inc.*, 656 Pa. 296, 324, 220 A.3d 1038, 1055 (Pa. 2019) (FLSA "establishes only a national floor under which wage protections cannot drop" and "states have the authority to enact more beneficial wage and hour laws than those provided in the FLSA"). Consequently, the Pennsylvania Supreme Court expressly refused to "follow the interpretation of similarly applicable provisions of the federal FLSA," and instead made clear that "the PMWA must be interpreted in accordance with its own specific terms," which requires "examin[ing] the text of the PMWA, as well as the relevant Department of Labor and Industry regulations." *In re Amazon*, 255 A.3d at 201-02.

Particularly relevant here, and as explained in more detail below, the Pennsylvania Supreme Court further expressly "disavow[ed]" a strict reading of prior case law – namely, *Stuber* – that would require importing FLSA principles onto the PMWA. *Id.* at 202, n.5 ("To the extent that our *per curiam* affirmance of Stuber on the basis of the Commonwealth Court's opinion may be read as an endorsement of the principle that the PMWA and federal FLSA mirror each other in all respects and must always be interpreted similarly, we disavow such a reading.").

In sum, Plaintiffs submit that this recent decisional authority from the Pennsylvania Supreme Court provides guidance to this Court regarding the independent and protective nature of Pennsylvania law (as compared to federal law), and that the jury instructions given in this case (and question to be asked to the jury related to the state law claims) should reflect these principles, as described herein.

## II. ARGUMENT

In the absence of Pennsylvania Supreme Court guidance, the Third Circuit has observed that "[i]n interpreting the meaning of employee under the WPCL, Pennsylvania courts have looked to similar statutes such as the Pennsylvania Unemployment Compensation Act and the Pennsylvania Workers' Compensation Act." *Williams v. Jani-King of Phila., Inc.*, 837 F.3d 314, 320 (3d Cir. 2016); *see also Estate of Accurso v. Infra-Red Servs., Inc.*, 805 Fed. Appx. 95, 100 (3d Cir. 2020) ("In deciding whether a worker is an 'employee' under the WPCL, Pennsylvania courts have looked to the Unemployment Compensation Act and the Pennsylvania Worker's Compensation Act for guidance."). The Pennsylvania Superior Court has similarly applied Unemployment Compensation Act and Worker's Compensation Act principles to "employment" disputes arising under the WPCL. *See Morin v. Brassington*, 871 A.2d 844, 849-50 (Pa. Super. 2005); *Frank Burns, Inc. v. Interdigital Communications Corp.*, 704 A.2d 678, 680 (Pa. Super 1997).

Thus, the Court may look to caselaw applying the Pennsylvania Unemployment Compensation Act and the Pennsylvania Workers' Compensation Act, in crafting jury instructions and the jury question related to Plaintiffs' state law claims.

Alternatively, as noted above, it is also very possible that the Pennsylvania Supreme Court may follow the New Jersey Supreme Court in *Hargrove v. Sleepy's LLC*, 106 A.3d 449 (N.J. 2015), and the California Supreme Court in *Dynamex Operations West, Inc. v. Superior Court*, 416 P.3d 1 (Cal. 2018), in choosing to adopt an "ABC test" in order to effectuate the broad purposes of Pennsylvania law to maximize the applicability of statutory workplace protections.

Plaintiffs request that the Court deliver separate instructions to the jury regarding Pennsylvania law and ask a separate question regarding Pennsylvania law. In light of the

uncertainty of exactly what test the Pennsylvania Supreme Court may adopt, the Court may even want to ask the question multiple ways.

Plaintiffs will now address further the ramifications of recent Pennsylvania Supreme Court caselaw.

### A. The Pennsylvania Supreme Court's Decision in *Lowman* Provides a Possible Standard That May Apply to Plaintiffs' WPCL Claim

In *Lowman v. Unemployment Comp. Bd. of Rev.*, 661 Pa. 29, 235 A.3d 278 (Pa. 2020), the Pennsylvania Supreme Court recently clarified the applicable standard for resolving whether an individual is an "employee" or "independent contractor" under the Pennsylvania Unemployment Compensation Act in a case involving – like the instant matter – whether an Uber driver was an "employee" or "independent contractor."

Specifically, the Pennsylvania Supreme Court clarified that the appropriate test is found in 43 P.S. §§ 753(1)(2)(B), which presumes employee status unless the employer shows that (a) "such individual has been . . . free from control or direction over the performance of such services . . ." and (b) "as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business." 43 P.S. §§ 753(1)(2)(B). And, applying this analysis, the Pennsylvania Supreme Court found that the Uber driver was Uber's employee – *not* an independent contractor. Given that Pennsylvania courts have looked to the Unemployment Compensation Act's standards when determining employee status under the WPCL, and in light of the Pennsylvania Supreme Court's recent clarification of the precise standard at issue in *Lowman*, the Court may apply the standard articulated in *Lowman* (and found at 43 P.S. §§ 753(1)(2)(B) of the Unemployment Compensation Act) to Plaintiffs' WPCL claim.[7]

---

[7] Plaintiffs recognize that Pennsylvania courts have looked to the Workers' Compensation Act's definition of "employee" in addition to that contemplated by Unemployment Compensation Act when resolving WPCL claims. However, Plaintiffs submit that here, in light

9

### B. The FLSA is Different from the Standard Applicable to Plaintiffs' PMWA Claim

Plaintiffs expect that Defendants will seek to graft the FLSA's test for determining employment status onto Pennsylvania law. However, Plaintiffs submit that recent Pennsylvania Supreme Court case law has made clear that the PMWA contemplates a broader test than that advocated by Defendants, and that the Pennsylvania Supreme Court's recent *Lowman* decision may provide an appropriate analysis for resolving Plaintiffs' employee status under the PMWA as well as the WPCL.

Defendants may assert that the Court must apply the FLSA analysis to Plaintiffs' Pennsylvania claims, pointing to the Third Circuit's statement earlier in this case that: "Pennsylvania state courts have looked to federal law regarding the FLSA for guidance in applying the PMWA," *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 142 (3d Cir.), *amended,* 979 F.3d 192 (3d Cir. 2020) (citing *Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *aff'd*, 580 Pa. 66, 859 A.2d 1253 (Pa. 2004) ("*Stuber*")), and the *Stuber* Court's application of an "economic realities" analysis drawn from the FLSA to determine employment status in a PMWA matter, *see generally Stuber*, 822 A.2d 870, which was affirmed *per curiam* (and without analysis) by the Pennsylvania Supreme Court, 859 A.2d 1253. But neither the Third Circuit's statements nor *Stuber* are determinative here in light of subsequent authority from the Pennsylvania Supreme Court.

Critically, after the Third Circuit issued its decision in this case in July 2020, the Pennsylvania Supreme Court issued its 2021 *In re Amazon* decision, 255 A.3d 191 (Pa. 2021),

---

of the Pennsylvania Supreme Court's recent and clear recitation of the applicable standard in *Lowman*, which involved a substantially similar issue to the matter before the Court – namely, whether certain drivers of Uber are "independent contractors" or "employees" – that the Pennsylvania Supreme Court's guidance provided in *Lowman* is more likely relevant than the Workers' Compensation Act.

wherein it expressly "disavow[ed]" a strict reading of *Stuber*, explaining that "*Stuber* merely recognized that, where the statutory provisions of the enactments parallel each other, federal decisions construing the federal FLSA *may* be considered in interpreting the PMWA." *In re Amazon.com, Inc.*, 255 A.3d at 202, n.5 (Pa. 2021) (emphasis in original). The Pennsylvania Supreme Court continued: "To the extent that our *per curiam* affirmance of *Stuber* on the basis of the Commonwealth Court's opinion may be read as an endorsement of the principle that the PMWA and federal FLSA mirror each other in all respects and must always be interpreted similarly, we disavow such a reading." *Id.*

And as described below, a plain reading of *Stuber* (particularly against the backdrop of *In re Amazon*) makes clear that the FLSA standard should not be grafted onto this case as Defendants will assert. Further, as noted, the Pennsylvania Supreme Court has also recently issued the *Lowman* decision clarifying the appropriate test for determining independent contractor status under Pennsylvania's Unemployment Compensation Law. *See Lowman*, 235 A.3d 278. Indeed, in *Lowman*, the Pennsylvania Supreme Court *already* ruled that an Uber driver is an employee – not an independent contractor – for the purposes of unemployment compensation. *See generally id.*

What is more, even were the Court to consider *Stuber* and Defendants' arguments, the *Stuber* Court found that the PMWA (like Pennsylvania's unemployment compensation laws) carries a presumption that an individual is an employee (a presumption that the employer may attempt to rebut). *See generally Stuber*, 822 A.2d 870. To the extent that the "economic realities" test does not carry such a presumption, the *Stuber* standard *necessarily* calls for a broader test than federal law. As such, Plaintiffs submit that, at the very least, the Court should

11

adopt the presumption utilized by the *Stuber* Court when instructing the jury on employee status under the PMWA.

While *Stuber* – a Commonwealth Court case that was affirmed *per curiam* (with no analysis) by the Pennsylvania Supreme Court – concerned employee status under the PMWA and has been cited for the proposition that the FLSA may provide a source of guidance when interpreting the PMWA, *Stuber* does not stand for the proposition that the analyses must be identical. *See generally Stuber,* 822 A.2d 870. As noted above, following the Third Circuit's opinion in this matter, the Pennsylvania Supreme Court expressly "disavow[ed]" such a reading of *Stuber*, explaining:

> . . . *Stuber* does not stand for the proposition that our Court *must* construe the PMWA and the federal FLSA in a parallel fashion. *See Bayada* [*Nurses v. Commonwealth Department of Labor and Industry*, 8 A.3d 866, 883 (Pa. 2010)] (rejecting argument that PMWA and federal FLSA must be read in *pari materia*). *Stuber* merely recognized that, where the statutory provisions of the enactments parallel each other, federal decisions construing the federal FLSA *may* be considered in interpreting the PMWA. . . . To the extent that our *per curiam* affirmance of *Stuber* on the basis of the Commonwealth Court's opinion may be read as an endorsement of the principle that the PMWA and federal FLSA mirror each other in all respects and must always be interpreted similarly, we disavow such a reading.

*In re Amazon.com, Inc.*, 255 A.3d at 202 n.5 (Pa. 2021) (emphasis in original). And a plain reading of *Stuber* – particularly against the backdrop of the Pennsylvania Supreme Court's recent disavowal of a strict reading of *Stuber* in *In re Amazon* – supports the conclusion that the PMWA contemplates a broader standard for determining "employee" status than a strict grafting of the FLSA standard, as advanced by Defendant here.

In *Stuber*, the Commonwealth Court considered an appeal of an order assessing damages against Stuber for violations of the PMWA with regard to an individual who performed certain work for Stuber. *Stuber*, 822 A.2d 870. There, like here, the issue before the Commonwealth

Court was whether the individual "was an employee (and therefore entitled to overtime wages) or an independent contractor (and not entitled to such wages) for purposes of the [PMWA]." *Id.* The Commonwealth Court observed:

> We note, initially, that there is no Pennsylvania authority that establishes the standard that should be used to determine whether one is an employee or an independent contractor under the [PMWA]. While both sides agree that the federal "economic reality" standard should be employed in this case of first impression, and also agree that there is a presumption that the individual is an employee, (a presumption the employer must rebut), Stuber additionally argues that the Court should look to other Pennsylvania laws, such as those dealing with unemployment compensation, or the Bureau of Employer Tax Operations cases, to examine the independent contractor/employee question. While such other laws should not be entirely discounted, we must remain cognizant that they were not enacted for precisely the same purpose as the Minimum Wage Act.

*Stuber*, 822 A.2d at 872–73. And while the Commonwealth Court observed a "parallel[]" between the PMWA and FLSA and found that the "economic realities" test, along with a presumption of employee status that the employer must rebut, "is the appropriate standard," *id.* at 873-74, as noted, the Commonwealth Court observed that "other laws [such as those in the unemployment context] should not be entirely discounted." *Id.* at 873.[8] Indeed, the *Stuber* Court also explained that its ultimate decision (finding that the individual was an employee, and not an independent contractor) would likely not change upon application of the test found in the unemployment compensation laws:

> Even applying other law, the outcome would likely not change. For example, under Pennsylvania unemployment law, the inquiries are whether the claimant was free of the employer's control, *i.e.,* does the employer direct the job and manner of performance, and whether the claimant was engaged in an independently established trade, *i.e.,* did the claimant have a proprietary interest in the business or was he free from control by the employer. *Sharp Equipment Co. v. Unemployment Compensation Board of Review,* 808 A.2d 1019 (Pa.Cmwlth.2002). The inquiry, additionally, involves determining whether the claimant could perform the work for anyone, or whether the nature of the services is such that they could only be performed for the employer. Moreover, under both

---

[8]   Notably, the *Stuber* Court observed that *the parties had agreed* that the "economic realities" standard applies.

13

> the [PMWA] and our state unemployment law, there is a statutory presumption of an employment relationship that the employer must overcome. *Id.* When these principles are applied to the facts in the case *sub judice,* a different outcome from the one we reach here is far from assured.

*Id.* at 873, n.5. *Stuber* (read against the backdrop of *Heimbach*), therefore does not dictate an automatic application of the FLSA standard.

Indeed, *Stuber* does not foreclose a court's consideration of the standards applicable in the unemployment context – *Stuber* itself engaged in such an analysis, *see id*. And as the Pennsylvania Supreme Court recently made clear in *In re Amazon*, "*Stuber* merely recognized that, where the statutory provisions of the enactments parallel each other, federal decisions construing the federal FLSA ***may*** be considered in interpreting the PMWA. . . ." *In re Amazon.com, Inc.*, 255 A.3d at 202 n.5 (emphasis in original; bold font supplied).

The federal FLSA standard therefore does not automatically apply to the Pennsylvania state law claims, and *In re Amazon* should guide the Court to conclude that Pennsylvania law requires the application of a more lenient (and employee-friendly) standard than that contemplated by the FLSA.[9]

### III.   CONCLUSION

For the foregoing reasons, the Court should instruct the jury separately on the Pennsylvania claims in this case and have the jury answer a separate question for the Pennsylvania claims. While the Pennsylvania Supreme Court has not yet weighed in specifically

---

[9] Even were the Court to apply the "economic realities" framework to Plaintiffs' PMWA claim like the *Stuber* court ultimately did, *Stuber* makes clear that a proper application of the "economic realities" analysis to the PMWA would carry with it a presumption of employee status that the employer must rebut. *See generally Stuber*, 822 A.2d 870. Plaintiffs anticipate that Defendants will argue that such a presumption is not utilized under the federal FLSA test; however, as set forth above and as the Pennsylvania Supreme Court made clear in *In re Amazon*, the FLSA test should not be automatically imported onto the PMWA. Thus, to the extent the Court adopts the "economic realities" test advanced by Defendants, Plaintiffs submit that, as applied to the PMWA, the test should carry a presumption of employee status.

in defining the applicable test for independent contractor misclassification under the WPCL and the PMWA, recent caselaw strongly suggests that Pennsylvania law will *not* follow the FLSA on the question of whether an alleged employer has misclassified a worker as an independent contractor.

Thus, the Court's jury instructions and questions should recognize that Pennsylvania law is more protective of employees than the FLSA with respect to independent contractor misclassification and puts the burden on the alleged employer to prove that plaintiffs are properly classified as independent contractors. The ABC tests recently adopted by the California and New Jersey Supreme Courts, or the unemployment test recently applied by the Pennsylvania Supreme Court to an Uber driver (finding him to be an employee), are more likely applicable to the state law claims here than the economic realities test that applies to the FLSA.

Dated: December 8, 2023

        ALI RAZAK, KENAN SABANI, AND
        KHALDOUN CHERDOUD,

        By their attorneys,

        /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan (*pro hac vice*)
        Thomas Fowler (*pro hac vice*)
        Krysten Connon (*pro hac vice*)
        LICHTEN & LISS-RIORDAN, P.C.
        729 Boylston Street, Suite 2000
        Boston, MA 02116
        (617) 994-5800
        sliss@llrlaw.com; tfowler@llrlaw.com;
        kconnon@llrlaw.com

        Jeremy E. Abay (PA # 316730)
        PIETRAGALLO GORDON ALFANO BOSICK &
        RASPANTI, LLP
        1818 Market Street, Suite 3402
        Philadelphia, Pennsylvania 19103

Tel: (215) 988-1462
Fax: (215) 754-5195
jea@pietragallo.com

Bret Stanley (*pro hac vice*)
KHERKER GARCIA LLP
2925 Richmond Ave., Suite 1560
Houston, Texas 77098
(713) 333-1030
bstanley@kherkhergarcia.com

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, certify that on December 8, 2023, a true and accurate copy of the foregoing document was served on counsel for Defendants by electronic mail.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan