**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALI RAZAK, KENAN SABANI, AND KHALDOUN CHERDOUD, <br><br> *Plaintiffs,* <br><br> v. <br><br> UBER TECHNOLOGIES, INC. AND GEGEN LLC, <br> *Defendants* | Case No. 2:16-cv-00573-MMB <br><br><br> Judge Michael M. Baylson |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY AND REMOVAL OF REDACTIONS**

## I.     INTRODUCTION

Plaintiffs Ali Razak, Kenan Sabani, and Khaldoun Cherdoud submit this reply in support of their motion to compel pursuant to Fed. R. Civ. P. 37 and Fed. R. Civ. P. 26(b)(5).  In their motion (Dkt. 164), Plaintiffs requested an order compelling Uber to remove redactions to records documenting communications between Plaintiffs and Uber's support staff, called "Zendesk Messages."

In its Opposition (Dkt. 164), Uber argues that Plaintiffs' motion should be denied both because it is untimely and because the content of the redactions is non-responsive to Plaintiffs' requests. As will be explained below, Uber is wrong on both counts.

First, the redacted communications are highly relevant in this matter and directly responsive to Plaintiffs' Requests. Uber myopically limits its argument to a single request that Plaintiffs made in their First Requests for Production of Documents for communications

between Uber and Plaintiffs. As spelled out in greater detail below, the information that Uber

redacted is responsive to *nineteen* of Plaintiffs' discovery requests.

Second, Plaintiffs' Motion to Compel is not untimely. The parties entered into a

stipulation on October 3, 2023, stating that "[t]he Parties will not object to any outstanding

written discovery request on the basis that the discovery period already closed as to events that

occurred prior to January 11, 2018." Now Uber has done just that. Directing Uber to unredact

these documents will not cause undue delay, and Plaintiffs have a right to receive these relevant

documents in advance of trial. The Court should reject Uber's meritless argument.

## II.    BACKGROUND

Defendants Uber Technologies, Inc. and Gegan LLC ("Defendants" or "Uber") have

violated the Federal Rules of Civil Procedure by withholding relevant evidence from discovery

responses and applying redactions to communications concerning the Plaintiffs.

Uber raises two arguments in its opposition:

1. Redactions were applied to "irrelevant and /or unresponsive information"
   concerning "rider information, uber employee's last names, and…internal notes
   from the customer support representatives ("CSRs")" because this discovery is
   "irrelevant and/or unresponsive information." *See* Dkt. 164 at p. 3.

2. Plaintiffs' Request for an order compelling Defendants to Remove redactions is
   untimely and therefore should be denied. *See* Dkt. 164 at p. 5.

During the oral argument of January 3, 2024, the Court ordered Uber to submit a

random sampling of unredacted versions of the Zendesk communications at issue to the Court

for *in camera* review. (Hearing Tr. at p. 38, Dkt. 162.) The parties agreed that Uber would take

the sample from Exhibit 1 to Plaintiffs' Motion to Compel (Dkt. 155-1), starting on page 5 of

that exhibit and taking the communication that is on every 5th page thereafter, until the sample

reaches 20 documents. Plaintiffs understand that Uber submitted that random sample on January 5, 2024.

## III.    ARGUMENT

### A.    Uber Redacted Relevant Information that Plaintiffs Requested

As explained in Plaintiffs' Motion to Compel (Dkt. 155 at pp. 3-4), Uber produced hundreds of pages of communications between Plaintiffs and Uber on a platform called Zendesk. See Zendesk Messages, Dkt. 155-1. However, Uber's employees also used the Zendesk software to send messages between one another to discuss how to handle different requests or concerns that Plaintiffs (as well as riders) submitted to Uber. See id. These messages appear on the same pages as, and interspersed with, Uber's communications with Plaintiffs. However, on these communications, Uber redacted all communications that it claims was not with Plaintiffs specifically. However, the redacted communications are highly relevant because it seems likely that they are relevant to Uber's control of the method and means of Plaintiffs' work. *See Razak v. Uber Technologies Inc.*, 951 F.3d 137, 143 (3d Cir. 2020) (recognizing the importance of the 'right to control' factor under the FLSA.").[1]

In its opposition (Dkt. 164 at pp. 2-3), Uber claims that all Zendesk Communications were produced in response to Question 1 of Plaintiffs' First Request for Production of Documents. Moreover, Uber asserts that it applied redactions to information from the Zendesk

---

[1]    Presumably, the Court has had the opportunity at this stage to perform its *in camera* review of the sample documents that Uber submitted. While Plaintiffs strongly believe that context clues indicate that the redacted information is relevant, the Court can simply review the unredacted segments of the sample documents themselves to make such a determination. Uber should be compelled to produce not only the unredacted versions of the sample documents in the *in camera* review but *all* of the unredacted Zendesk communications. Even if some of those communications are not relevant, they can simply be excluded from the parties' exhibit lists. Plaintiffs believe, however, that most of those redactions contain probative information that Plaintiffs will need for trial.

communications such as "rider information, Uber employees' last names, and internal notes between Uber Customer Support Representatives on the bases that the information redacted was irrelevant and unresponsive information," as "**Plaintiffs never requested communications regarding Plaintiffs.**" *See* Dkt. 164 at p. 3 (emphasis added).

Uber, however, is simply wrong that Plaintiffs' document requests did not seek the information that Uber redacted. Plaintiffs' First Request for Production asked for all communications from Uber concerning a myriad items related to the Claims made here. *See generally* Defendants' Responses to Plaintiffs' First Set of Request for Production of Documents (attached as Exhibit A). Uber only points to Request 1 in Plaintiffs's First Request for Production of Documents as the basis of relevancy. However, in addition to requesting all communications between Uber and the Plaintiffs, the following communications were requested:

- All written agreements between Defendants and UberBLACK drivers based in Philadelphia, Pennsylvania, along with **communications related to those agreements**. *See* Exhibit A at Request 2 (emphasis added).

- All documents and **communications relating to** the number of hours logged into the Uber App by each UberBLACK driver based in Philadelphia, Pennsylvania since January 1, 2013. *See* Exhibit A at Request 6.

- All documents and **communications relating to** fees and expenses deducted from UberBLACK drivers' earnings. *See* Exhibit A at Request 7.

- All **communications** between Defendants and UberBLACK drivers based in Philadelphia, Pennsylvania **relating to a driver's performance, suspension or termination**. *See* Exhibit A at Request 9.

- All documents and **communications relating to rules and standards** imposed by Defendants on UberBLACK drivers. *See* Exhibit A at Request 10.

- All documents and **communications relating to the size of the "Uber Fee"** deducted from UberBLACK fares. *See* Exhibit A at Request 11.

- All **communications** sent and received by Defendants **relating to fare adjustments** for UberBLACK services provided in Philadelphia, Pennsylvania. *See* Exhibit A at Request 12.

- All documents and **communications relating to an UberBLACK driver's ability to accept or reject fares**. *See* Exhibit A at Request 13.

- All documents and **communications relating to activities performed** by UberBLACK drivers in Philadelphia, Pennsylvania while the driver is logged into the Uber App but not in the process of transporting customers. *See* Exhibit A at Request 15.

- All documents and **communications relating to the UberBLACK fare rate** in Philadelphia, Pennsylvania, including the standard rate, minimum rate and surge rates during the class period. *See* Exhibit A at Request 16.

- All documents and **communications relating to hourly wage guarantees** provided to UberBLACK drivers in Philadelphia, Pennsylvania. *See* Exhibit A at Request 17.

- All **communications** sent and received by Defendants **relating to customer complaints and/or disputes involving UberBLACK drivers** based in Philadelphia, Pennsylvania during the class period. *See* Exhibit A at Request 18 (emphasis added).

- All documents and communications relating to fraudulent billing information provided by customers to pay for UberBLACK services provided in Philadelphia, Pennsylvania during the class period. *See* Exhibit A at Request 19.

- All documents and communications **relating the employment status** of UberBLACK drivers. *See* Exhibit A at Request 26.

- **All data collected by Defendants relating to Ali Razak, along with documents and communications relating to such data.** *See* **Exhibit A at Request 32** (emphasis added)**.**

- **All data collected by Defendants relating to Kenan Sabani, along with documents and communications relating to such data.** *See* **Exhibit A at Request 33** (emphasis added)**.**

- **All data collected by Defendants relating to Khaldoun Cherdoud, along with documents and communications relating to such data.** *See* **Exhibit A at Request 34** (emphasis added)**.**

- All **communications** and documents **relating to the collection and/or use of data** generated by UberBLACK drivers based in Philadelphia, Pennsylvania. *See* Exhibit A at Request 35.

- All **communications** and documents relating to Defendants' **ability to influence or control a driver's behavior**. *See* Exhibit A at Request 37.

Uber's position that the redacted information sought from the Zendesk Messages is non-responsive to any of Plaintiffs' request cannot be correct.  In Uber's opposition, it provided a cryptic description of the information that it withheld form the Zendesk Messages – namely, Uber employees' names, rider information, rider messaging, and internal notes from the Customer Support representatives. *See* Dkt. 164 at pp. 3 and 8. Clearly, a review of the above requests shows that this type of information – particularly what Uber describes as "internal notes from Customer Support representatives" -- was sought in Plaintiffs' Request for Production of Documents. Uber chose to withhold discoverable information by ignoring these requests and the fact that these communications fell within the scope of these requests by liberally redacting Zendesk messages. Context clues from the unredacted portions of the Zendesk Messages indicate that Uber redacted information related to correspondence associated to Plaintiffs Razak, Sabani, and Khaldoun, including information about fare disputes, technological problems with the Uber Driver Application, problems with Riders while on a trip, driver account problems, complaints concerning Uber's quality requirements, issues with Uber's Rating system, and information about Uber deactivating/suspending the named Plaintiffs.  Moreover, the redacted information appears likely to be highly relevant to Plaintiffs' contention that Uber had the "ability to influence a driver's behavior" (Request No. 37), as well as the question of the proper employment status of the drivers (Request No. 26).

In addition, the names and information concerning Uber employees and riders is information that only Uber maintains and is clearly discoverable.[2]

Finally, the communications redacted by Uber relating to rider messages to Uber and/or messages between Uber employees about the Plaintiffs in this matter is overwhelmingly relevant. These communications are evidence of Uber's control of the flow of information to the drivers and Uber's control over the decision-making process concerning fares, quality, and the drivers' access to the Uber platform.

**B.    Plaintiffs' Motion to Compel is Not Untimely**

Uber also argues that Plaintiffs unduly delayed in filing their Motion to Compel the discovery of the redacted materials and therefore have waived the ability to contest Uber's discovery violations. *See* Dkt. 164 at p. 6. This argument fails based on Uber's stipulation made in this matter on October 3, 2023. *See* Dkt. 146. Specifically, the parties stipulated that:

> 2.    Discovery on the threshold liability question will be limited accordingly (i.e., to events occurring prior to January 11, 2018).
>
> 3.    The Parties will not object to any outstanding written discovery request on the basis that the discovery period already closed as to events that occurred prior to January 11, 2018. All other objections are reserved by the Parties.

*See* Dkt. 146 at p. 1, Paragraphs 2 & 3. Here, Uber is making timeliness objections to Plaintiffs Motion to Compel.  However, the parties specifically agreed that discovery could continue related to events that occurred prior to Jan. 11, 2018. **All** of the redactions being challenged

---

[2]    Indeed, the fact that Uber (and Uber alone) maintained this information regarding the identities of the riders whom the drivers transported and the Uber employees who helped resolved issues that arose pertaining to the drivers' work goes to show that Plaintiffs did not genuinely operate their own independent businesses and that Plaintiffs were economically dependent on Uber.

relate to messages prior that were sent or received prior to January 11, 2018. Uber should have produced unredacted versions of these documents in the first place, and now that the Court has engaged in an *in camera* review of sample documents for relevance, there is no reason for the Court to simply deny the motion outright for timeliness reasons – especially when the parties stipulated that they would not make timeliness objections. Compelling Uber to produce these documents will not delay trial in this matter, and indeed, Plaintiffs need the probative information the redactions likely conceal for use at trial.

**IV.     CONCLUSION**

The Court should order Uber to reproduce all Zendesk messages produced in this case without any redactions.

Dated: January 12, 2024

> ALI RAZAK, KENAN SABANI, AND
> KHALDOUN CHERDOUD,
>
> By their attorneys,
>
> /s/ Shannon Liss-Riordan
> Shannon Liss-Riordan (*pro hac vice*)
> Thomas Fowler (*pro hac vice*)
> Krysten Connon (*pro hac vice*)
> LICHTEN & LISS-RIORDAN, P.C.
> 729 Boylston Street, Suite 2000
> Boston, MA 02116
> (617) 994-5800
> sliss@llrlaw.com; tfowler@llrlaw.com;
> kconnon@llrlaw.com
>
> Jeremy E. Abay (PA # 316730)
> PIETRAGALLO GORDON ALFANO BOSICK
> & RASPANTI, LLP
> 1818 Market Street, Suite 3402
> Philadelphia, Pennsylvania 19103
> Tel: (215) 988-1462

8

Fax: (215) 754-5195
jea@pietragallo.com

Bret Stanley (*pro hac vice*)
KHERKER GARCIA LLP
2925 Richmond Ave., Suite 1560
Houston, Texas 77098
(713) 333-1030
bstanley@kherkhergarcia.com

### CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, certify that on January 12, 2024, a true and accurate copy of

the foregoing document was served on counsel for Defendants by electronic mail.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan