IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALI RAZAK, KENAN SABANI, AND KHALDOUN CHERDOUD,<br><br>*Plaintiffs,*<br><br>v.<br><br>UBER TECHNOLOGIES, INC. AND GEGEN LLC,<br><br>*Defendants* | Case No. 2:16-cv-00573-MMB<br><br>Judge Michael M. Baylson |

## **PLAINTIFFS' STATUS REPORT**

Pursuant to the Court's directive during the conference of February 1, 2024 (Audio Recording at Dkt. 188), Plaintiffs submit this status report regarding the state of discussions with Uber on the potential for agreeing to stipulations of fact that would streamline the issues in this matter, as well as the issue of whether this case may be decided by the Court, rather than a jury.

**I.  PLAINTIFFS BELIEVE STIPULATIONS MAY BE FRUITFUL**

Plaintiffs continue to confer with Uber about the possibility of entering into stipulations that could significantly narrow the issues in this trial and could eliminate any actual factual disputes to be decided by a jury.

Plaintiffs are working on editing Uber's proposed stipulations in a way that could be acceptable. Plaintiffs believe that many of Uber's proposed stipulations are not material or are redundant (or Plaintiffs do not agree with). However, Plaintiffs hope that the parties may be able to agree on a set of stipulations that would also include stipulations proposed by Plaintiffs and would eliminate redundancy.

1

**II.     THE ISSUE OF BENCH TRIAL VERSUS JURY TRIAL**

Plaintiffs also wish to expand on what they raised during the February 1, 2024, status conference regarding the question of whether this case should be tried to a jury or the Court. As Plaintiffs discussed, they are willing to agree to a bench trial rather than a jury trial. Although Uber has most recently stated that it wants a jury trial, such a trial would pose two problems.

First, as the Court noted during the conference, while Plaintiffs have the burden of proof with respect to their claim under the Fair Labor Standards Act ("FLSA"), Plaintiffs maintain that Uber has the burden of proof with respect to their Pennsylvania state law claims. See In re Amazon.com, Inc., 255 A.3d 191, 201-02, 202 n.5 (Pa. 2021); Lowman v. Unemployment Comp. Bd. of Rev., 661 Pa. 29, 65 (Pa. 2020). Plaintiffs have explained this point in greater detail in their Pre-trial Memorandum (Dkt. 169) and their Motion Requesting the Court to Include a Separate Jury Instruction and Question Regarding Pennsylvania Law (Dkt. 151). As the Court pointed out, it would be difficult for a jury comprised of lay people to make this burden of proof distinction.

More fundamentally, however, as Plaintiffs noted, the ultimate decision of whether Plaintiffs were misclassified is a question of law for the Court under both the FLSA and Pennsylvania law. As the Third Circuit explained in this case, "[h]ere, the ultimate question of law is whether Plaintiffs are employees or independent contractors, which is for a judge to decide." Razak v. Uber Technologies, Inc., 951 F.3d 137, 144 (3d Cir. 2020). There, the Third Circuit addressed both the FLSA and Pennsylvania law. The Third Circuit has also addressed this point more specifically with respect to Pennsylvania law, explaining that "'[i]n Pennsylvania, 'whether a claimant is an independent contractor or an employee is a question of law." Estate of Accurso v. Infra-Red Services, Inc., 805 Fed. App'x 95, 101 (3d Cir. 2020)

(quoting <u>Johnson v. Workmen's Comp. Appeal Bd. (Dubois Courier Exp.)</u>, 631 A.2d 693, 696 (Pa. 1993)). The Third Circuit recognized that, while there are cases where "one or more genuine disputes of material facts … preclude a trial court from drawing a conclusion as a matter of law on the 'employee' or 'independent contractor' issue," the misclassification issue ultimately is to be decided by the Court. <u>Id.</u>

Thus, if the parties are not able to reach stipulation on all material factual disputes, the Court may find it appropriate to impanel an advisory jury to address those disputes. However, at the end of the day, the Court will be responsible for making the ultimate determination of whether Plaintiffs were misclassified.

Should there be disagreement between the parties on this point, Plaintiffs request the opportunity to brief it more fully.

### III. THE POTENTIAL FOR ISSUE PRECLUSION

Plaintiffs have another issue to raise that could obviate the need for an extensive trial in this case. As Plaintiffs explained in their Pre-trial Memorandum (Dkt. 169 at pp. 3-4), the Pennsylvania Supreme Court determined an Uber driver to be an employee, for unemployment purposes, in <u>Lowman</u>, 661 Pa. at 71-78. As it would not make sense for Uber drivers to be employees for purposes of unemployment but not for wage purposes, Plaintiffs believe that <u>Lowman</u> should have the force of issue preclusion here. Plaintiffs request the opportunity to brief this issue more fully.

In brief, the Supreme Court in <u>Lowman</u> applied an "AC" test. As set forth in their Motion Requesting the Court to Include a Separate Jury Instruction and Question Regarding Pennsylvania Law (Dkt. 151), it is uncertain what test the Pennsylvania Supreme Court may ultimately adopt for misclassification under the Pennsylvania Minimum Wage Act ("PMWA"),

3

43 P.S. §§ 333.101 *et seq.*, and the Pennsylvania Wage Payment Collection Law ("PWPCL"), 43 P.S. §§ 260.1 *et seq.*  Should the Court adopt the same "AC" test as it applied in Lowman (one possibility), then issue preclusion here would be clear.  Should the Court go even further to adopt an "ABC" test (which is even stronger than an "AC" test), as the California Supreme Court did in Dynamex Operations West, Inc. v. Superior Court, 416 P.3d 1, 30-36 (Cal. 2018), and the New Jersey Supreme Court did in Hargrove v. Sleepy's LLC, 106 A.3d 449, 464 (N.J. 2015), then it would certainly make no sense for an Uber driver to be an employee under a less strict (unemployment) test but not under a more strict (wage law) test.

In evaluating an Uber driver's status under the "AC" test in Lowman, the Pennsylvania Supreme Court decided that, under Prong A (whether the driver was subject to Uber's control), "[t]here is comfort in the conclusion Uber controlled and directed Lowman's performance for driving-for-hire services,' because "Uber, presenting itself as a transportation network company, invites a passenger without any personal contact with anyone, to request a ride from a driver (who will be a stranger), and "[v]etting, monitoring and supervising the provision of services by its drivers is implicit in Uber's services." Id. at 74. Regarding Prong C, the Court in Lowman held that the driver was not engaged in an independently established business because (among other reasons) Uber required the driver to display the Uber decal on his car, Uber prohibited the driver from building his own client base "under the auspices of his Uber relationship because his contract limits his communications with customers to the Uber App and are permitted only for the purpose of providing rides through Uber," Uber determined which drivers would be offered an assignment, and the driver could not set or negotiate his remuneration. Id. at 76.

Plaintiffs submit that these facts – and thus these conclusions – will be no different in this case.  And because Uber has already had a full and fair opportunity to litigate these issues in

4

Lowman, and the Pennsylvania Supreme Court held that the plaintiff was an employee, see id. at 71-78, issue preclusion should be applied here. As the Third Circuit has explained, "[i]ssue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated," and "[t]he prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" Peloro v. U.S., 488 F.3d 163, 175 (3d Cir. 2007). The requirements here for the application of issue preclusion are all met.[1]

Thus, with the application of issue preclusion, it may not be necessary for the Court even to hold a trial on factual issues related to misclassification in this case. The parties could then move on to the class and damages phases of the case. Plaintiffs thus request that the Court apply issue preclusion, or at least allow a briefing schedule regarding the application of issue preclusion in this matter.

Dated: February 6, 2024                    Respectfully submitted,

ALI RAZAK, KENAN SABANI, AND
KHALDOUN CHERDOUD,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (*pro hac vice*)
Thomas Fowler (*pro hac vice*)
Krysten Connon (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.

---

[1] Indeed, whichever test is ultimately applied here, issue preclusion from Lowman should apply to these factors.

>729 Boylston Street, Suite 2000
>Boston, MA 02116
>(617) 994-5800
>sliss@llrlaw.com; tfowler@llrlaw.com;
>kconnon@llrlaw.com
>
>Jeremy E. Abay (PA # 316730)
>PIETRAGALLO GORDON ALFANO BOSICK &
>RASPANTI, LLP
>1818 Market Street, Suite 3402
>Philadelphia, Pennsylvania 19103
>Tel: (215) 988-1462
>Fax: (215) 754-5195
>jea@pietragallo.com
>
>Bret Stanley (*pro hac vice*)
>KHERKER GARCIA LLP
>2925 Richmond Ave., Suite 1560
>Houston, Texas 77098
>(713) 333-1030
>bstanley@kherkhergarcia.com

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, certify that on February 6, 2024, a true and accurate copy of the foregoing document was served on counsel for Defendants by filing via the Court's CM/ECF system.

>/s/ Shannon Liss-Riordan
>Shannon Liss-Riordan