**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALI RAZAK, KENAN SABANI, AND KHALDOUN CHERDOUD, | |
| *Plaintiffs,* | Case No. 2:16-cv-00573-MMB |
| v. | |
| UBER TECHNOLOGIES, INC. AND GEGEN LLC, | Judge Michael M. Baylson |
| *Defendants* | |

**PLAINTIFFS' MOTION FOR SANCTIONS, TO ADMIT DOCUMENTS,
AND FURTHER OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE (DKTS. 179 AND 181)**

I.      **INTRODUCTION**

Over the last several months as the parties have been preparing for trial, Plaintiffs have followed up with Uber multiple times regarding various critical documents that their counsel know exist (from their work on other similar cases against Uber) but which Uber did not produce in this case.  These documents show detailed instructions that are used by Uber staff and others ("CSRs", or "Customer Service Representatives") in their interactions with Uber drivers and addressing issues and concerns related to the drivers.  Plaintiffs believe these documents are very important in showing the extent of Uber's detailed control over the drivers (an important part of the FLSA misclassification test, and possibly one prong of the Pennsylvania misclassification test).[1]

---

[1]      Plaintiffs prepared this motion on February 23, 2024, and attempted to file it that day. However, the Court's CM/ECF system was down.

Plaintiffs requested that Uber produce these documents in this case, but Uber did not produce them.  Plaintiffs then moved to compel Uber to produce the documents. (Dkt. 150.)  In response, Uber repeatedly represented to the Court that no such documents were in use in Philadelphia during the time period covered by this case (2013–18).  (Hearing Tr. p. 32, January 3, 2024, Dkt. 162.)  The Court ordered Uber to submit a declaration that such documents were searched for and the results of that search. (Hearing Tr. p. 35, January 3, 2024, Dkt. 162.) Uber submitted a declaration designed to suggest to the Court that no such documents were in use in Philadelphia during the time period at issue in this case. (Lantis Decl., Dkt. 167.) The Court then ordered Uber to "produce all generalized reference guides pertaining to disciplinary issues with drivers that were available to Uber Customer Support Representatives in Philadelphia on January 2, 2016." (Order ¶ 2, Dkt. 176.)  In response, Uber produced 20 pages of (mostly blank) documents.  See UBER_RAZAK_0016001-16020 (Dkt. 205-1.)  Plaintiffs moved to enforce the Court's order (Dkt. 205), and in response Uber again led the Court to believe that no other documents of the type Plaintiffs were describing (that their counsel knew about from other cases) existed. (Defendants' Opposition to Plaintiffs' Motion to Compel, Dkt. 219.)

At the hearing held just yesterday, the Court informed the parties that it was not convinced that Uber was withholding documents and said that Plaintiffs had not shown that the documents their counsel knew of from other cases were in use in Philadelphia during the time period at issue in this case. The Court joked about how the U.S. Attorneys' office should be called in if Uber had these documents and had not produced them.

***Today, however, former Uber manager Tara Murray who worked in the Philadelphia office testified that these documents were in use in Philadelphia during the time period of this case.*** (Murray Dep. Rough Draft at pp. 8, 173-90, attached here as Exhibit A.) She also

confirmed that these documents were in use in Philadelphia in January 2016, the time period for which the Court specifically ruled for Uber to "produce all generalized reference guides pertaining to disciplinary issues with drivers that were available to Uber Customer Support Representatives in Philadelphia . . . . ."  (Order ¶ 2, Dkt. 176.)

In particular, Plaintiffs have been seeking what Uber refers to as "Knowledge Base" documents, which are contained in a database of reference guides used by Uber employees and CSRs to guide their interactions with drivers.  Plaintiffs have also been seeking general guides their counsel know of (from other cases) that Uber has created to instruct staff and CSRs how to interact with drivers.  Ms. Murray confirmed during her deposition today that both sets of documents that Plaintiffs have been pressing Uber to produce in this case – and that Plaintiffs have put on their exhibit list (but that Uber has objected to, on the ground that they were produced in other cases and were not in use in Philadelphia during the time period at issue in this case) – were in fact used in Philadelphia during the time period at issue in this case.

Thus, despite Uber's tireless attempt to avoid producing these documents in this case – and attempt to prevent Plaintiffs from using these documents at trial that were obtained in other cases – it is now clear that Uber misled the Court.

Sanctions are in order.  Plaintiffs have been severely prejudiced by Uber's lack of candor (both to Plaintiffs and to this Court).  First, the Court should hold that these documents (Exhibits 350-356 and 357-376 on Plaintiffs' Amended Exhibit List[2]) are admissible at trial (thereby

---

[2]    These exhibits were Exhibits 121-127 and 128-147 on Plaintiffs' initial Exhibit List, which Plaintiffs served on Uber on January 16, 2024. As such, Defendants' motions in limine (Dkts. 179 and 181) refer to the exhibits by their original numbers. Plaintiffs refer to them here by the numbers stated in their Amended Exhibit list, as those numbers will be used at trial, and Attorney Liss-Riordan referred to those amended numbers during Ms. Murray's deposition.

denying Uber's motions in limine to exclude them (Dkts. 179 and 181).[3]  Second, the Court

should impose a fine on Uber and its counsel, accounting for the attorneys' fees and costs

incurred by Plaintiffs in having to have to repeatedly address Uber's failure to produce these

documents, when Uber and its counsel well knew that they existed and were directly relevant in

this matter.[4]  Third, the Court should impose any other penalty that it deems appropriate.[5]

## II.    BACKGROUND

In Plaintiffs' Motion to Compel of December 8, 2023, Plaintiffs explained that they

"have become aware of the existence of numerous documents that provided guidance to Uber

manager and 'customer service representatives' in addressing the various issues that arise with

respect to drivers." (Dkt. 105 at p. 6) Plaintiffs explained further that these documents addressed

issues like "drivers requesting fare adjustments, issues with riders, and others" and noted that

they had come into possessions of versions of these documents that Uber had produced in the

Saxton Arbitration. See (Dkt. 105 at p. 6 and n.5).  Uber responded to this motion to compel by

declining to address the documents that were produced in Saxton head on, and instead skating

the issue by arguing that these "Knowledge Base" documents were not linked to the issue types

---

[3]      At the hearing held yesterday, the Court explained that Plaintiffs could use these documents at trial if they can present a witness who can testify that they were used in Philadelphia during the relevant time period.

[4]      In the other cases in which Plaintiffs' counsel obtained these documents in discovery, O'Connor v. Uber Technologies, Inc., No. 3:13-cv-03826-EMC (N.D. Cal.), and Saxton v. Uber Technologies, Inc., (Karl Bayer, Arb. 2023), Uber was represented by the same firms that represent Uber in this case – Littler Mendelson and Gibson Dunn.

[5]      Had Plaintiffs obtained these documents earlier in this case, and known they were relevant to Philadelphia during the 2013-18 time period, they would have engaged in further discovery related to the use of these documents, over the last several months while the parties conducted final discovery to prepare for trial.  Now, confirming that these documents are indeed relevant to this case – just 10 days before trial begins – Plaintiffs have been prejudiced.  Another sanction the Court could consider to alleviate this prejudice is giving the jury an instruction regarding Uber's misconduct here in attempting to prevent these documents from being seen by the jury.

in the various "Zendesk" communications that had been produced. See Uber's Opposition to Plaintiffs' Motion to Compel at pp. 8-10 (Dkt. 156).

The Court held a hearing on Plaintiffs' Motion to Compel on January 3, 2024.  During that hearing, Uber's counsel Paul Lantis pointed out that the Knowledge Base documents Plaintiffs sought "are documents that [Plaintiffs' counsel Bret Stanley] litigated in a case in Texas in 2021 from a system called Knowledge Base [and] that all of the documents have a created dated of sometime in 2019 or thereafter." (Hearing Tr. at p. 32, January 3, 2024, Dkt. 162.) Mr. Lantis continued by pointing out that "the system . . . happened years after the issues in this case" and that Plaintiffs were "factually incorrect" that they were "inappropriately withheld." (Hearing Tr. p. 32, January 3, 2024,  Dkt. 162.) The Court then had the following exchange with Mr. Lantis:

> THE COURT: Are you representing that the documents that Ms. Liss-Riordan just discussed do not exist in this case?
>
> MR. LANTIS: That's correct, Your Honor. There is no document that underlies the issue type listed in that Zendesk ticket.

(Hearing Tr. p. 32, January 3, 2024, Dkt. 162.)

Because of Uber's representation, the Court went on:

> THE COURT: All right, look, you're talking about your experience in Texas on documents that existed after 2018. In this case, the discovery period ends as of January of 2018. And Mr. Lantis is here in court and he's representing that Uber doesn't have the documents you're talking about in this case because it's before 2018.

(Hearing Tr. p. 34, January 3, 2024, Dkt. 162.) The Court then directed Mr. Lantis to make another search with Uber and to file a sworn declaration "as to whether or not Uber has these type of documents that Plaintiffs are seeking and Mr. Stanley had in the Texas case, specifically, and represent the facts, the truth, as to whether they ever existed and, if so, what has been done with them or can any of them be produced . . . ." (Hearing Tr. p. 35, January 3, 2024, Dkt. 162.)

Mr. Lantis submitted a declaration -- but did not do as the Court directed. Rather than stating whether Uber had the type of Knowledge Base documents that "Mr. Stanley had in the Texas case," (Hearing Tr. p. 34, January 3, 2024, Dkt. 162), Mr. Lantis stated only that "[t]o the best of my knowledge, information, and belief, the issue types in the Zendesk communication with the Plaintiffs do not link to policies or decision trees." (Lantis Decl. ¶ 6, Dkt. 167.) Rather than answering outright whether Uber used Knowledge Base documents (similar to those produced in <u>Saxton</u>) in Philadelphia during the relevant period of this case as the Court ordered, Mr. Lantis skated around the issue by stating that:

> Uber has not denied and does not deny that Customer Support Representatives may have looked to internal resources to determine the appropriate responses to issues raised by users of the Uber App (or that they might respond based on their past experiences or specific instances of particular communications with a user) in connection with their Zendesk communications.

(Lantis Decl. ¶ 7, Dkt. 167.)

Plaintiffs submitted a letter to the Court (Dkt. 173) which appeared to show that screenshots of Uber's internal webpages that Mr. Lantis had produced to Plaintiffs in conjunction with his Declaration appeared to include links to Knowledge Base documents. These screenshots of webpages were linked in Zendesk Communications between Uber and the named Plaintiffs.

Following an unrecorded telephone hearing on January 26, 2024, the Court ordered Uber to "produce all generalized reference guides pertaining to disciplinary issues with drivers that were available to Uber Customer Support Representatives in Philadelphia on January 2, 2016." (Order ¶ 2, Dkt. 176.)

In the meantime, on February 1, 2024, Uber submitted four motions *in limine*, two of which sought the exclusion of the Knowledge Base documents that Uber produced in <u>Saxton</u> from evidence, as well as other similar reference guides regarding drivers that Plaintiffs' counsel

had obtained in the O'Connor litigation (Dkts. 179-1 and 181-1.) In Uber's Motion *in Limine* to

Preclude Evidence Outside Stipulated Scope of the Trial at. p. 3 (Dkt. 179-1), Uber argued that

the Knowledge Base documents produced in Saxton "are facially outside the limited scope

stipulated by the parties in this matter."[6]  Uber made the same argument with respect to the

documents from O'Connor (which Plaintiffs explained to the Court were documents in use

nationally by Uber during the time period at issue in this case, and were not limited to

California): "The *O'Connor* matter involved drivers utilizing uberX (in addition to uberBLACK)

to connect with riders in *California* as early as *August 2009*."  (Motion *in Limine* to Preclude

Evidence Outside Stipulated Scope of the Trial at. p. 3, Dkt. 179-1)

Then on February 7, 2024, Uber produced documents to Plaintiffs in response to the

Court's Order of January 26, 2024 (Dkt. 176), to "produce all generalized reference guides

pertaining to disciplinary issues with drivers that were available to Uber Customer Support

Representatives in Philadelphia on January 2, 2016." See UBER_RAZAK_0016001-16020 (Dkt.

205-1.) Although the Court's Order should have put this issue to rest and resulted in the

production of the Knowledge Base documents in question, as well as the documents Plaintiffs'

---

[6]      Uber contended that "the *Saxton* arbitration related to a driver utilizing uberX to connect
with riders in *Texas* from 2017 through *2021*." Likewise, Uber contended that the "*O'Connor*
matter involved drivers utilizing uberX (in addition to uberBLACK) to connect with riders in
*California* as early as *August 2009*." (Uber's Motion Uber's Motion *In Limine* to Preclude
Evidence Outside Stipulated Scope of the Trial at. p. 4, Dkt. 179-1.) Uber argued that in both
matters, "the documents Plaintiffs seek to introduce . . . relate or apply to different markets (*i.e.*,
outside of Philadelphia), different products (*i.e.*, not limited to UberBLACK), different
individuals (*i.e.*, not Plaintiffs), and different periods (*i.e.*, both before and after the relevant
period in this case)." (Uber's Motion Uber's Motion *In Limine* to Preclude Evidence Outside
Stipulated Scope of the Trial at. p. 4, Dkt. 179-1.) Similarly, in Uber's Motion *In Limine*
Regarding Other Drivers Uber argued that the Knowledge Base documents produced in Saxton
should and the documents produced in O'Connor should be excluded because they "clearly
related to the experiences of other drivers" and that "[d]ocuments about the experiences of non-
party drivers in California and Texas simply have no bearing on the independent contractor
status of the three Plaintiffs." (Dkt. 181-1), at p. 8.

counsel had obtained in the <u>O'Connor</u> case, Uber produce a paltry 20-page production of incomplete (mostly blank) documents that contained practically no information.  <u>See</u> UBER_RAZAK_0016001-16020 (Dkt. 205-1.)

Again, Plaintiffs moved to compel Uber to produce these documents, through a Motion to Enforce [the Court's Order] and Compel (Dkt. 205).  Uber again failed to describe outright whether the Knowledge Base documents existed in Philadelphia during the relevant time period. (Uber's Opposition, Dkt. 219.)

The Court heard argument on Plaintiffs' Motion to Enforce and Compel (Dkt. 205) yesterday, on February 22, 2024. During that hearing, Uber represented that it possessed no further responsive "generalized reference guides pertaining to disciplinary issues with drivers that were available to Uber Customer Support Representatives in Philadelphia on January 2, 2016."[7] Though Plaintiffs had pointed out that the screenshots of Uber's internal webpages appeared to make reference to Knowledge Base documents that would be responsive to the Court's order, the Court accepted Uber's representation and stated:

> The Court cannot conclude that Defendants have not followed the Court's Order and will not make any ruling on this issue prior to the trial. However, the Court will require Defense counsel to engage in a reasonable dialogue with Plaintiffs' counsel about the documents that have been produced in response to the Court's prior Order, and to provide details as reasonably requested, as to how Defendants have responded to the Court's Order. Defense counsel may refer to the representations and statements in its briefs filed with the Court as substantiating Defendants' belief that they have fully complied.

(Pretrial Order at ¶ 23, Dkt. 229.)

Today, on February 23, 2024, Uber took the deposition of one of its former UberBLACK managers in Philadelphia, Tara Murray. Ms. Murray worked for Uber during the time period 2015 to 2020. (Murray Dep. Rought Draft at p. 8, Exhibit A.) During cross-examination of Ms.

---

[7]     Plaintiffs have ordered the transcript of the February 22, 2024, hearing but have not yet received it.

Murray, Plaintiffs' counsel asked her about the documents that Plaintiffs have been pressing to get produced and admitted in this case.

With respect to the Knowledge Base documents that had been produced in <u>Saxton</u>, Ms. Murray confirmed that the "Knowledge Base" system was in use by Uber nationally, including in Philadelphia, during the time period at issue in this case.  She explained that the Knowledge Base system consisted of documents describing "everything you could possibly deal with and how you should respond to it along with responses and details of process." (Murray Dep. Rough Draft at p. 173, Exhibit A.) Ms. Murray confirmed that "every support person" at Uber had access to these documents, including Uber's customer service representatives. (Murray Dep. Rough Draft at p. 173-74, Exhibit A.) Further, Ms. Murray confirmed that this was the case during the entire time she worked for Uber.  (Murray Dep. Rough Draft at pp. 8, 174, Exhibit A.) She also testified that she as an Uber manager would consult Knowledge Base for "[l]iterally anything and everything." (Murray Dep. Rought Draft at p. 175.)

Plaintiffs then read the headings from the <u>Saxton</u> Knowledge Base documents that are included on Plaintiffs' Exhibit List (Exhibits 357-376) to Ms. Murray and asked Ms. Murray to state whether she was familiar with each such Knowledge Base document and whether it was in use in Philadelphia during the time period at issue in this case.  For each (except possibly one), Ms. Murray responded that she was familiar with the document and that it was in use in Philadelphia during the time period at issue in this case. (Murray Dep. at pp. 176-190.) Plaintiffs' counsel asked Ms. Murray whether such documents were in use with respect to UberBlack drivers in January 2016 in Philadelphia, and she stated that they were:

> Q: Were those knowledge base documents applicable to [UberBLACK] drivers in Philadelphia in January 2016?
>
> A: Yes.

Q: Just for the record the subject headings I was reading come from plaintiffs' trial exhibits 357 through 376.

(Murray Dep. Rought Draft at p. 190.)

These Knowledge Base documents cover the following topics:

- Accidents – Property Damage to Vehicle Involving Rider

- Account Inactive

- Background Check Knowledge Base

- Begin and End Trip Instead of Cancel

- Not Getting Requests

- Potential Safety Concern

- Substance Abuse

- Verbal Altercation

- Document Status Check

- Earnings Amount

- Fare Review

- Feedback About Rider

- Multiple Destinations

- Cleaning Fee

- Long ETA or Pickup Longer than Trip

- Missing from Trip History

- Standards & Service Questions – Animals in Vehicle

- Upcharge Request

- Driver Cancellation Fee

- Vehicle Solutions

(Murray Dep. at pp. 176-190, Exhibit A.)

With regard to the materials that Uber produced in O'Connor that are also guidelines used by Uber staff in their dealings with drivers (and are included on Plaintiffs' Exhibit List as Exhibits 350-356), Plaintiffs' counsel showed Ms. Murray these documents, [8] and Ms. Murray confirmed that she recognized these documents and that they were in use in Philadelphia during the relevant period. (Murray Dep. Rought Draft at pp. 160-69.) These documents include guidelines on the following subjects:

- Account (De)Activation

- Deactivations: Inactivity, Quality, and Missing Documents

- Driver Deactivations – Quality

- Driver Account Waitlisting

- Driver Deactivations – Quality

- Quality Assurance & Deactivations

- Driver Suspensions

(Exhibits 350-356.)

## III.    ARGUMENT

Pursuant to Rules 37 and 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and their own inherent authority, courts may "sanction parties' discovery misconduct . . . [i]f a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Bistrian v. Levi,

---

[8]    Uber's counsel refused to allow Ms. Murray to look at the Saxton Knowledge Base Documents, so Plaintiffs' counsel read Ms. Murray the subject titles of the documents, and she affirmed being familiar with them and their use in Philadelphia during the relevant time period in this case. (Murray Dep. at pp. 170-190, Exhibit A.)

2022 WL 888878, at *4 (E.D. Pa. Mar. 2022) (quoting <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1991); <u>Weisberg v. Riverside Tp. Bd. of Educ.</u>, 272 Fed. App'x 170, 173 (3d Cir. 2008)). "The Court has broad discretion to determine whether, and what kinds of sanctions are warranted." <u>Id.</u>

In evaluating whether sanctions are appropriate, and what form sanctions should take, "[c]ourts will first 'consider the conduct at issue and explain why the conduct warrants sanction' before 'specifically consider[ing] the range of permissible sanctions and explain[ing] why less severe alternatives to the sanction imposed are inadequate or inappropriate." <u>Id.</u> (quoting <u>Republic of Phillippines v. Westinghouse Elec. Corp.</u>, 43 F.3d 65, 74 (3d Cir. 1994)).

Here, Uber has shamelessly misled the Court (as well as Plaintiffs) as to whether various documents in its "Knowledge Base" repository, as well as other documents that guided Uber's staff in their interactions with drivers, were in use by Uber in Philadelphia during the time period at issue in this case. Sanctions are clearly warranted.

Despite Plaintiffs' repeated requests for these documents, Uber obfuscated the issue, refusing to confirm that these documents did not exist in Philadelphia for UberBLACK drivers during the relevant period (and confusing the Court into believing that no such documents existed in Philadelphia at that time). Ms. Murray's sworn testimony has now made unequivocally clear that these documents **did** exist and were in use in Philadelphia for UberBLACK drivers during the time period at issue in this case.

Uber's efforts to mislead both Plaintiffs and the Court have prejudiced Plaintiffs, requiring them to raise the issue to the Court *repeatedly* (and preventing them from conducting further discovery related to these documents in preparation for trial over the last several months). The Court should impose sanctions.

First, the Court should issue an order admitting these documents that Plaintiffs have included on their Exhibit List for the purposes of trial (Exhibits 350-356 and 357-376). Because Uber attempted to hide this evidence, and because they are now clearly relevant to Philadelphia and the time period at issue in this trial), Uber's objection to their admission should be overruled and their motions *in limine* to exclude them should be denied.

Plaintiffs anticipate that Uber will object that these documents were produced under protective orders in the <u>Saxton</u> arbitration and <u>O'Connor</u> case. However, Uber could have avoided that issue if it had been candid with Plaintiffs (and the Court) and had produced the documents in this case. Uber should not be permitted to benefit from its sanctionable behavior in failing to produce the documents in this case and misleading the Court into believing that the documents were not in use in Philadelphia during the time period of this case (and thus not relevant). Uber should not be permitted to hide behind protective orders to prevent the use of these critical documents at trial.[9]

Indeed, courts have rejected similar arguments. <u>See</u> <u>Tessera Inc. v. Sony Elecs., Inc.</u>, 2012 WL 13035109, at *3-4 (D.N.J. Aug. 8, 2012) (compelling party to produce documents that had been produced in other matters that were the subject of confidentiality orders). Indeed, "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." <u>Foltz v. State</u>

---

[9]     Plaintiffs' counsel did not broadcast these documents, disclose them to the press, put them online, or such other conduct that would have violated the protective orders. Instead, they showed them to *Uber and its counsel*, in their representation of their clients in this case who had the right to obtain these same documents in this case. Now that it is clear that these documents are relevant to this case and should have been produced in this case, Uber should not benefit from the protective orders it produced the documents under in other cases (and its sanctionable refusal not to produce the documents in this case) by preventing these documents from being used at the upcoming trial in this case.

Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131-34 (9th Cir. 2003) (internal citation omitted).[10] In this case, the Court repeatedly refused to require Uber to produce the documents in this case because it relied on representations made by Uber suggesting to the Court that these documents were not in use in Philadelphia during the time period at issue in this case.

Second, Uber and its counsel should be ordered to pay the attorneys' fees and costs associated with Plaintiffs' repeated efforts to compel them to produce these documents. (Those motions and letters were filed at Dkts. 150, 158, 173, 205, and 226.)

Finally, the Court should enter such other relief as the Court finds appropriate, such as giving an instruction to the jury regarding Uber's misconduct in hiding these documents and misleading the Court and Plaintiffs regarding their use in Philadelphia during the time period at issue in this case.

---

[10] Moreover, courts have frequently found misleading conduct like Uber's to justify the relief from judgment (an extraordinary form of relief) when such conduct has come to light. See Young v. Act Fast Delivery of W. Virginia, Inc., 2019 WL 4859009, at *3 (S.D.W. Va. Oct. 1, 2019) (granting Rule 60(b)(3) motion where defendant "deliberately concealed evidence through misleading and false responses to discover requests" and where the information and "data concealed by [defendant] was important to the case."); see also Cap Exp., LLC v. Zinus, Inc., 996 F.3d 1332, 1342 (Fed. Cir. 2021) (affirming Rule 60(b)(3) relief where defendant's president and expert witness misrepresented knowledge of key facts relevant to patent case); Rozier v. Ford Motor Co., 573 F.2d 1332, 1346 (5th Cir. 1978) ("the district court abused its discretion in denying plaintiff's Rule 60(b)(3) motion" where "Ford completely sabotaged the federal trial machinery, precluding the 'fair contest'" and engaged in the "selective disclosure of information."); Abrahamsen v. Trans-State Exp., Inc., 92 F.3d 425, 429 (6th Cir. 1996) (Rule 60(b)(3) relief was warranted where defense "counsel prevented the Plaintiffs from fully and fairly presenting their case" because false testimony was given and defendant's counsel did nothing to correct the record, thus "show[ing]contempt for the rules of discovery and violat[ing] the trust placed in counsel to obey the fundamental rules of court.").

Here, thankfully, Uber's misconduct has come to light before trial, and the Court may address this misconduct before final judgment.

IV.     **CONCLUSION**

For the reasons discussed above, the Court should issue sanctions against Uber and its counsel.  The Court should allow Plaintiffs to use these documents at trial that should have been produced in this case (Exhibits 350-356 and 357-376), fine Uber and its counsel for the costs incurred by Plaintiffs in submitting numerous filings seeking these documents in this case, and such other relief as the Court finds appropriate (such as an instruction to the jury regarding Uber's misconduct).


Dated: February 24, 2024                    Respectfully submitted,

ALI RAZAK, KENAN SABANI, AND
KHALDOUN CHERDOUD,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (*pro hac vice*)
Thomas Fowler (*pro hac vice*)
Krysten Connon (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com; tfowler@llrlaw.com;
kconnon@llrlaw.com

Jeremy E. Abay (PA # 316730)
PIETRAGALLO GORDON ALFANO BOSICK &
RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
Tel: (215) 988-1462
Fax: (215) 754-5195
jea@pietragallo.com

Bret Stanley (*pro hac vice*)
KHERKER GARCIA LLP
2925 Richmond Ave., Suite 1560

Houston, Texas 77098
(713) 333-1030
bstanley@kherkhergarcia.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Shannon Liss-Riordan, certify that on February 24, 2024, a true and accurate copy of

the foregoing document was served on counsel for Defendants by filing on the Court's CM/ECF

system.

<u>/s/ Shannon Liss-Riordan</u>
Shannon Liss-Riordan