IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALI RAZAK, KENAN SABANI, AND KHALDOUN CHERDOUD,<br><br>        Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. AND GEGEN LLC,<br><br>        Defendants. | Civil Action No. 2:16-CV-00573-MMB<br><br>Judge Michael M. Baylson |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SANCTIONS**

**I.   INTRODUCTION**

Plaintiffs' quest to waste time and judicial resources on the eve of trial continues. Plaintiffs again cry foul regarding their demand that Uber produce general guideline documents previously produced in unrelated proceedings, specifically California lawsuit *O'Connor v. Uber* and Texas arbitration *Saxton v. Uber*. (*See* ECF 230). However, this time, Plaintiffs also request a variety of sanctions for what they resort to characterizing as Defendants' malfeasance. The Court should flatly deny their requests.

To support these most recent claims that Defendants and their counsel have been untruthful, Plaintiffs point exclusively to the nine-year-removed recollection of former Uber employee Tara Murray, to attempt to establish that certain general guideline documents existed in Philadelphia on a very specific date in time, January 2, 2016. (*See id*. at 2-3). Ironically, Plaintiffs' motion alleging lack of candor fails to bring to the Court's attention other witness testimony that contradicts Ms. Murray's recollection and supports what Uber has long represented to Plaintiffs

and the Court. Moreover, Plaintiffs fail to recognize the limits the Court has repeatedly placed on what documents they are entitled to in this litigation.

These witnesses' contradictory recollections and the Court's previous orders in response to the same prove a death knell to Plaintiffs' motion. To be sure—just last month—the Court was faced with a similar scenario where witness recollections diverged as to the existence of general guideline documents in Philadelphia during the relevant period. Rather than rely on nearly decade-old recollections, the Court ordered Defendants to search to confirm the documents' existence. Defendants engaged in that search and confirmed the documents they were able to locate that fell within the parameters of the Court's orders—*i.e.*, "disciplinary issue" documents that existed and were used in Philadelphia on January 2, 2016. Adding a third witness' recollection that purportedly differs from the others does nothing to prove that Defendants failed to comply with the Court's prior orders—and certainly cannot support Plaintiffs' request for sanctions. To the extent the Court deems it necessary to further confirm Defendants' diligent search efforts, Defendants invite the Court to an *in camera* discussion of their efforts to comply with the Court's orders. At bottom, Plaintiffs are entitled to nothing, and their motion should be denied in its entirety.

## II.     RELEVANT PROCEDURAL HISTORY

### A.     Plaintiffs Depose Rachel Perl And Chad Dobbs Seeking, In Part, To Attempt To Confirm The Existence Of Knowledge Base Documents In Philadelphia During The Relevant Period.

On November 15, 2023, Plaintiffs deposed Rachel Perl, Uber's Head of U.S. Northeast Regulatory Strategy and Operations. When questioned whether Knowledge Base documents existed in 2014 or 2017, Ms. Perl responded that she did not know, but that they might have existed, or might have existed but in a different form. (Exhibit A, Excerpts of Perl Deposition Transcript at 17:10-13, 18:3-10).

On December 19, 2023, Plaintiffs deposed Chad Dobbs, Uber's Director of U.S. City Operations. When questioned whether Knowledge Base documents existed between 2014 and 2017, he responded "I don't believe [they] did." (Exhibit B, Excerpts of Dobbs Deposition Transcript at 147:5-8). Mr. Dobbs further testified that he also did not believe "any other platform existed during that period that would have similar documents that customer service representatives could use." (*Id*. at 147:9-15).

### B. The Court Orders Defendants And Their Counsel To Search Again For Specified Documents And Confirm The Results Of Their Search.

Based on Ms. Perl's deposition testimony related to questions about general guideline documents in Philadelphia during the relevant period, Plaintiffs moved to compel the production of Knowledge Base documents previously produced by Defendants in *prior litigation* in *different states* involving Uber, different plaintiffs, and the same counsel representing Plaintiffs here. (ECF 150, 158; Exhibit C, Excerpts of January 3, 2024 Hearing Transcript at 32:5-35:6). Specifically, Plaintiffs' counsel argued Ms. Perl's testimony supported counsel's assertions that "issue tags" in Zendesk communications purportedly linked Uber employees to specific Knowledge Base documents during the relevant time of this case. (*Id*. at 25:16-27:3, 32:22-34:6, 34:17-35:7).

With respect to these "issue tags" in Zendesk communications, and rather than rely on the fleeting memories of Uber employees, the Court ordered at the January 3 hearing that Defendants' counsel, "specifically Mr. Lantis, to make *another* search with [Defendants] and, within seven days, to file a declaration, sworn declaration as to whether or not Uber has these types of documents that Plaintiffs are seeking and Mr. Stanley had in the Texas case." (*Id*. at 35:8-13) (emphasis added). The Court further held that "[n]ow if he files that, that's the end of the story as far as I'm concerned, okay? I can't make Uber produce something which one of their lawyers has

3

investigated and says they don't have." (*Id*. at 36:6-9). Mr. Lantis complied with the Court's Order in its entirety. (*See* ECF 167).

      **C.**     **The Court Orders Defendants To Produce All Generalized Reference Guides Pertaining To Disciplinary Issues With Drivers That Were Available To Uber Customer Support Representatives In Philadelphia On January 2, 2016 – And Defendants Comply.**

In addition to the Court's order during the January 3 hearing, the Court entered the January 26, 2024 Order that also required Defendants to "produce all generalized reference guides pertaining to disciplinary issues with drivers [that] were available to Uber Customer Support Representatives in Philadelphia on January 2, 2016." (ECF 176). Critically, prior to this Order, Defendants had *already* produced numerous documents pertaining to the subject of the Court's Order (*e.g.*, Deactivation Policy (UBER_RAZAK_0015919-15931; 015967-15990); Community Guidelines (UBER_RAZAK_015949-15955; 010186); Quality Playbook (UBER_RAZAK_010771-10786); Code of Conduct (UBER_RAZAK_015936-15948); Owner/Operator Agreement (UBER_ RAZAK_0010879-10895); Driver Addendum Related to Uber Services (UBER_ RAZAK_00007833-7835); and Software License and Online Services Agreement (UBER_ RAZAK_00007836-7846)). In addition, Defendants agreed in November to treat seven documents from the *O'Connor v. Uber* matter which touch on the subject as having been produced in this case. (*See* Exhibit D, November 13, 2023 email).

Notwithstanding their prior productions, Defendants undertook a reasonably diligent search for documents specifically responsive to the Court's January 26 Order. As a result of this targeted search, Defendants identified twenty additional pages of responsive documents and produced them at UBER_RAZAK_0016001-16020.

> **D. Plaintiffs Depose Ms. Murray, And Attempt (Again) To Establish The Existence Of Certain Knowledge Base Documents In Philadelphia During The Relevant Period.**

On February 23, 2024, Plaintiffs deposed Ms. Murray. Still unsatisfied with Defendants' production of "generalized reference guides pertaining to disciplinary issues with drivers were available to Uber Customer Support Representatives in Philadelphia on January 2, 2016," Plaintiffs attempted to engage Ms. Murray in questions related to documents previously produced in the California lawsuit *O'Connor v. Uber* (which related to Uber's operations *in California*) and Texas arbitration *Saxton v. Uber* (which related to Uber's operations *in Texas*). However, Plaintiffs' questioning proved nothing more than an attempt to manufacture confusion about the possible existence of additional documents responsive to the Court's order. Notably, Ms. Murray did not even begin working at Uber until November 16, 2015 – just seven weeks before the January 2, 2016 date that is the subject of the Court's Order. (ECF 230-1 at 5 (8:19-22)). She continued working for Uber for more than four years *after* the January 2, 2016 date. (*Id.*).

With respect to the some of the documents previously produced in *O'Connor v. Uber*, Plaintiffs first attempted to confirm that the documents existed at the relevant time, and that they were actually used in Philadelphia. The resultant answers were a far cry from unequivocal confirmations of their existence as Plaintiffs would lead this Court to believe. For example, Plaintiffs' counsel presented a document titled "Deactivations: Inactivity, Quality, and Missing Documents," and asked "[d]oes this look like the type of document you could refer to when you were working for Uber?" (ECF 230-1 at 9 (163:12-15); *accord id*. at 25 (180:4-8)). Ms. Murray stated "yes," but this establishes nothing more than that the document looked "*like*" the "*type*" of document she could refer to at some point during her tenure at Uber between November 2015 and June 2020—not that these particular documents existed in Philadelphia on the specific January 2, 2016, date that is the subject of the Court's Order. When presented with a similar document and

asked "[w]ere these available to you between 2015 and the beginning of 2018," Ms. Murray responded, "[a]gain, they're super old. I can't remember … when I would have referenced them…. So we're talking like 2015 and 2016. I mean, again, I can't even remember how long they were in rotation for." (*Id*. at 22 (177:4-23)). Plaintiffs' counsel later asked, "[a]nd did [Uber employees] also have access to documents that we went through and you looked at a little while ago?" (*Id*. at 31 (186:11-20)). In response, Ms. Murray repeated, "I'm not sure." (*Id*. at 31 (186:21)). Plaintiffs' counsel then asked, "So, when you were working for Uber Black in Philadelphia, did you have access to more than this document that we're looking at Exhibit 10 to provide general guidance on how you should interact with Uber Black drivers and address concerns they raised?" (*Id*. at 34 (189:9-14)). In response, Ms. Murray reiterated, "I don't recognize this document. Like I said, it's really old." (*Id*. at 34 (189:16-18)).

With respect to some of the documents previously produced in *Saxton v. Uber*, Plaintiffs' counsel did not show Ms. Murray any of the documents, but instead only read her the subject headings of those documents to determine whether they existed on January 2, 2016[1] and were used in Philadelphia. (*See id*. at 21-27 (176-182); ECF 230 at 9). Indeed, only after reading off subject headings and taking a ten-minute break did Plaintiffs' counsel ask whether Ms. Murray believed the documents existed on January 2, 2016 and were used in Philadelphia. (*See id*. at 21-27, 35 (176-182; 190:4-16)).

Critically, regardless of whether the documents even existed as of January 2, 2016, many of the document headings read to Ms. Murray by Plaintiffs' counsel confirm that the documents

---

[1] As noted in Plaintiffs' motion and previously raised by Defendants, the *Saxton* documents were subject to a protective order from that matter and were marked with "Attorneys' Eyes Only" designations. Notwithstanding the fact that Ms. Liss-Riordan was not counsel in *Saxton v. Uber* and should not be in possession of those documents, she nonetheless had them in her possession, and tried to further defy that protective order by showing Ms. Murray these documents.

do not relate to "disciplinary issues" and would therefore not be responsive to the Court's January 26 Order (*See id*. at 22 (176:11-13) (topic title "Potential Safety Concern"), 2 (176:14-18) (topic title "Not Getting Requests"), 22 (176:20-177:1) (topic title "Substance Abuse"), 177:3-7 (topic title "Verbal Altercation"), 177:15-19 (topic title "Earnings Amount"), 23 (177:21-178:1) (topic title "Accident – Property Damage to Vehicle Involving Rider), 25-26 (179:18-180:21) (topic title "Fare Review"), 25 (179:23-180:2) (topic title "Feedback About Rider"), 25 (180:4-7) (topic title "Multiple Destinations"), 25 (180:9-12) (topic title "Cleaning Fee"), 27 (181:19-22) (topic title "Long ETA or Pickup Longer than Trip"), 27 (182:5-8) (topic title "Driver Cancellation Fee")).

### III. ARGUMENT

Defendants have conducted an additional, diligent search to confirm additional responsive "Knowledge Base" documents were not in existence in Philadelphia on January 2, 2016. Nothing in Plaintiffs' instant motion, or Ms. Murray's underlying deposition testimony, alters this fact. Plaintiffs' motion should be denied.

> **A. Three Witnesses' Differing Recollections Of What Generalized Reference Guides Pertaining To Disciplinary Issues With Drivers Were Available To Uber Customer Support Representatives In Philadelphia On January 2, 2016 Undermines Plaintiffs' Motion.**

Contrary to Plaintiffs' contentions, Ms. Murray's testimony based on Plaintiffs' counsel's muddied questioning establishes nothing. While true that Plaintiffs elicited testimony from Ms. Murray that certain documents purportedly "*similar to*" the Knowledge Base documents at issue in *O'Connor* and *Saxton* may have been used in Philadelphia at some point between 2015 and 2020 when she worked for Uber, Plaintiffs conveniently omit the critical facts that (i) Ms. Murray did not even review the documents (relying instead on Plaintiffs' counsel's reading of the subject headings); (ii) she could not confirm that any particular documents existed as of January 2016; (iii) other witnesses have previously provided testimony in direct contradiction of Ms. Murray's

7

recollection (both Ms. Perl and Mr. Dobbs testified to the contrary); and (iv) Ms. Murray was only employed by Uber for approximately 1.5 months of the relevant time period (*i.e.*, before January 2, 2016). (Exhibit A at 8:19-22, 17:10-13, 18:3-10; Exhibit B at 147:5-15). Accordingly, we now have three witnesses nine years removed from the January 2016 period with three different recollections related to what "generalized reference guides pertaining to disciplinary issues with drivers were available to Uber Customer Support Representatives in Philadelphia on January 2, 2016."

Contrary to Plaintiffs' counsel's rhetoric, Ms. Murray's testimony has made nothing about the alleged existence of additional documents responsive to the Court's order "unequivocally clear." (*See* ECF 230 at 12). Instead, her testimony is merely one of three differing recollections, nearly a decade after-the-fact, as to whether the specific Knowledge Base documents Plaintiffs seek existed in Philadelphia generally during the relevant period (and not specifically on January 2, 2016). This reality simply does not support Plaintiffs' motion.

### B. Plaintiffs Have Already Raised And The Court Already Resolved Issues Of Inconsistent Witness Recollection With Respect To These Very Documents.

Even if Ms. Murray's testimony was conclusive (and it is not), this issue was litigated just last month to complete resolution. Rather than rely on (at best) inconclusive testimony from multiple witnesses, the Court ordered Defendants to affirmatively search their systems again to confirm the existence of the at-issue documents, two-fold. First, the Court ordered Defendants to search their systems again to confirm whether there were documents that linked to Zendesk communications existed during the relevant time period with respect to UberBLACK Philadelphia. (*Id*. at 35:8-13). Second, the Court ordered Defendants to search their systems and to "produce all generalized reference guides pertaining to disciplinary issues with drivers were available to Uber Customer Support Representatives in Philadelphia on January 2, 2016." (*See* ECF 176).

8

Defendants fully complied with these orders; they searched their systems, the undersigned filed a declaration, and Defendants produced additional documents responsive to the Court's order requiring production of "all generalized reference guides pertaining to disciplinary issues with drivers were available to Uber Customer Support Representatives in Philadelphia on January 2, 2016." (ECF 167, *see generally* ECF 219).

Despite all of this, Plaintiffs' counsel continues to cast aspersions based on the mixed recollection of one witness in response to questions about documents she did not see. Ms. Murray's testimony does not undercut Defendants' representations or searches to date, let alone support sanctions. Instead, her pertinent recollection—when assessed in contrast with the recollections of Mr. Dobbs and Ms. Perl—only further underscores the Court's prior decision was the right one: order Defendants to confirm the documents' existence (or non-existence) during the relevant period. (Exhibit C at 35:8-13; ECF 176). Defendants did that, and "that [should be] the end of the story." (*See* Exhibit C at 36:6-9). The Court should deny Plaintiffs' motion.

### C. Defendants Invite The Court To An *In Camera* Discussion Of Their Efforts To Comply With The Court's Order.

While Defendants remain steadfast that Plaintiffs' motion lacks all merit and that Defendants have fully met (and exceeded) their obligations regarding both discovery production and candor toward the Court, to further (and hopefully) finally put to rest the issue, to the extent the Court deems necessary, Defendants invite the Court to question undersigned counsel regarding Defendants' efforts to comply with the Court's orders related to these purported documents in an *in camera* session.

**D.      Notwithstanding The Lack Of Merit Of Plaintiffs' Allegations, Plaintiffs' Proposed Sanctions Are Extreme And Unwarranted.**

Notwithstanding the fact that Defendants have fully complied with their discovery obligations and Plaintiffs' motion lacks merit, Plaintiffs also cannot justify their proposed extreme sanctions.

**1.      Plaintiffs cannot establish they have been "severely prejudiced."**

Plaintiffs fail to articulate how they have actually been "severely prejudiced" such that it would justify their request for sanctions ranging from recovering fees to instructing the jury regarding an adverse inference. (ECF 230 at 3, 12). Instead, they argue that Defendants' alleged malfeasance restricted them from conducting further discovery. Not so.

Plaintiffs cannot establish the requisite element that Defendants "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Bistrian v. Levi*, 2022 U.S. Dist. LEXIS 53882, at *10-11 (E.D. Pa. Mar. 25, 2022) (citations omitted). As outlined above, Ms. Murray's testimony does nothing to prove Defendant acted in contravention to the Court's Order, let alone in a manner rising to the conduct required for Plaintiffs' requested sanctions. In addition, as this Court is intimately aware, **Plaintiffs have had** general guideline documents from *O'Connor v. Uber* and *Saxton v. Uber* for years. Plaintiffs have repeatedly attempted to inject those documents into this litigation wholesale, and the Court has repeatedly refused the invitation. Moreover, throughout the Court's permitted "limited additional discovery" period between June 9 and November 17, 2023, Plaintiffs have run wild in the volume of written discovery and documents requested, and depositions, including consistently attempting to reopen discovery issues and topics previously concluded. Their only complaint following this period of additional discovery is that documents they already have must have been in use during the relevant period and should be admissible,

10

notwithstanding Defendants' good faith representations to the contrary. This could hardly be characterized as sanctionable conduct, much less conduct warranting the award of attorneys' fees.

### 2. Plaintiffs' proposed jury instruction is far afield of making Plaintiffs' "whole."

Plaintiffs' request for an adverse jury instruction is baseless. As this Court is aware, "[w]hen a district court imposes sanctions under its inherent power, this serv[es] the dual purpose of vindicat[ing] judicial authority without resort[ing] to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party *whole* for expenses caused by his opponent's obstinacy." *Id*. at *10-11. Plaintiffs request as a potential sanction a jury instruction stating,

> During this case, the Court has ruled that Uber misled Plaintiffs and the Court by hiding the existence of certain guidelines that Uber's staff used in connection with their interactions with drivers. These guidelines were provided to Uber management and customer service representatives and included information regarding how to address disciplinary matters that arose with the drivers. Although Plaintiffs obtained some of these documents, which are admitted in the record as Exhibits 350-356 and 357-376, you may infer that these documents contain information harmful to Uber's position that Plaintiffs were properly classified as independent contractors.

(ECF 238 at Instruction No. 20).

The type of adverse inference Plaintiffs are requesting is available only when electronically stored information that should have been preserved has been "lost because a party failed to take reasonable steps to preserve it" and *only* upon a finding that the loss of evidence was based on a party's "intent to deprive" the requesting party of the information. *See* F.R.C.P. 37(e)(2). Rule 37(e)(1) cautions that a court "may order measures no greater than necessary to cure the prejudice . . . ." To be sure, there is absolutely no evidence that any information was lost or that there was any intent to deprive the Plaintiffs of the evidence (even if Plaintiffs could demonstrate prejudice, which they cannot). As discussed above, Defendants have produced the generalized reference

guides that were located during the course of discovery, and nothing about the testimony of Ms. Murray suggests anything that would warrant such a draconian sanction.

In sum, a jury instruction requiring any negative inference would exceed the purpose of sanctions and place Plaintiffs in a better position, and opposed to making them "whole." *See Bistrian*, 2022 U.S. Dist. LEXIS 53882, at *10-11. Plaintiffs' proposed jury instruction is entirely inappropriate here.

## IV.    CONCLUSION

Plaintiffs' latest effort to undercut Defendants' efforts to comply with the Court's orders and their counsel's representations falls considerably flat. This Court should deny Plaintiffs' motion.

Dated: March 3, 2024

Respectfully submitted,

*/s/ Paul C. Lantis*
Robert W. Pritchard, Bar No. 76979
rpritchard@littler.com
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
Telephone: 412.201.7628
Facsimile: 412.774.1957

Paul C. Lantis, Bar No. 309240
plantis@littler.com
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Telephone: 267.402.3073
Facsimile: 267.402.3131

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC and
GEGEN LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of March 2024, Defendants' Memorandum In Opposition to Plaintiffs' Motion For Sanctions, To Admit Documents, And Further Opposition To Defendants' Motions *In Limine* (Dkts. 179 And 181) was filed using the Eastern District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel and parties of record.

/s/ Paul C. Lantis