IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALI RAZAK, KENAN SABANI, and KHALDOUN CHERDOUD,<br><br>    Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. and GEGEN LLC,<br><br>    Defendants. | Civil Action No. 2:16-CV-00573-MMB<br><br>Judge Michael M. Baylson |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CORRECTIVE JURY INSTRUCTION**

Defendants Uber Technologies, Inc. and Gegen LLC submit this memorandum of law in support of their motion requesting the Court to retract its confusing and prejudicial statements made during its response to the jury's question related to unanimity.

I.   **BACKGROUND**

During jury deliberations on June 17, 2024, the jury, through its foreperson, presented the Court with its first question: "The jury would like to know what the next steps are if we continue to not agree or be close on a unanimous decision." (Exhibit A, June 17, 2024 Trial Transcript at 150:24-151:6). In response, the Court answered,

> Okay. Thank you for your considerations. First of all, I appreciate your diligence and I appreciate your conscientiousness and being very attentive to this case. I am going to ask you to continue to try to come to a unanimous agreement. Remember, you've got six separate questions here. Now, I am not going to suggest that you divide the plaintiffs up and decide for one, one way and the other the other way. **But what you could do, if you were so inclined, it's completely up to you, is come to unanimous decision on each subparagraph. That would be different. You could decide for the plaintiffs on subparagraph A of the three plaintiffs, and then decide for the defendants on subparagraph B, or vice versa.** Okay? In that event, **as I said at the very beginning, the plaintiffs that were successful would have the opportunity to present -- to pursue damages.** So it would mean that they would have damages, but they would only have damages under either sub A or sub B, as opposed to both. So they – then

under that scenario, and I can't tell you which would be more favorable to the plaintiffs than to either one. Of course, the defendants are interested in having you decide for the defendants. **But you're allowed to compromise your beliefs if you want to reach a unanimous verdict.** But as I said before, you should not give up, you know, deeply-held opinions just to reach a unanimous verdict. But it's fair to say that this case was very well prepared for a long time and, as you heard, it's been -- it was actually filed eight years ago. **And if you still can't agree, it may have to go in front of another jury and repeat this all over again, which would be very expensive for everybody, including the judicial system because you have to come in here and we have to get people out of their ordinary lives and come agree to be on the jury, so it's a big production.** But our justice system is very important, and it's important for you to maintain your beliefs and I don't want you to change your vote merely to get a unanimous verdict. But on the other hand, getting a unanimous verdict has valid, positive aspects for the reasons I just said. So I'm going to ask you to go back and continue your deliberations. I don't intend to keep you here real long, but that's the -- that's the current thought. So you were -- you went out a little after 1 o'clock, I think you had lunch. So it's basically been two hours. And this was a four-day trial, so two hours is not that long to deliberate. So I'm going to ask you to continue trying to reach a unanimous verdict. Thank you. All right.

(Exhibit A, 151:9-153:11) (emphasis added). After the jury exited the courtroom and returned to their deliberations, the undersigned raised an objection related to the Court's statement to the jury. Specifically, the undersigned objected, in pertinent part, "As I heard the Court's instruction, it essentially encouraged the jurors to trade a 'yes' vote on one line for a 'no' vote on another line, rather than to each preserve their own integrity as jurors with regard to coming to consensus view of that in question." (*Id.*, 157:8-12).

After a brief recess and Defendants' review of the real-time transcript of the day's proceeding, the undersigned again requested the Court revisit its answer to the jury's question regarding next steps in deliberations in light of its statements (1) related to damages in potentially future proceedings; and (2) potential confusion related to whether or not compromising beliefs was encouraged or prohibited. (*Id.* at 161:11-162:10). Accordingly, Defendants moved for a mistrial, which the Court denied. (*Id.* at 163:5-7).

2

However, before the jury was excused for the day, the Court provided a "clarification" to his previous statements. (*Id*. at 173:17-8). Specifically, the Court read a portion of Third Circuit Model Civil Jury Instruction 3.1, *rev*. Aug. 2020. (*Id*. at 173:19-174:6). At the end of the Court's soliloquy, the Court incorrectly noted that Chapter 3.1 of the Third Circuit Model Jury Instructions was "repetitive of something I said before." (Exhibit A, 174:7-8).

**II.     ARGUMENT**

It is reversible error for a trial court's supplemental instructions to "coerce" a jury into reaching a verdict. *Petrole v. George A. Fetter, Inc.,* 411 F.2d 5 (3d Cir. 1969) (reversing verdict in civil case due to judge's "coercive" instruction); *see also United States Healthcare, Inc v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 940 (3d Cir. 1990) (citing *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)).

A classic example of this is when the trial court encourages the jury to "compromise" their views. *Cf. United States v. Wilson*, 257 F. App'x 547 (3d Cir. 2007) (rejecting argument that instruction was improper where there was "nothing to suggest that any juror would believe it was necessary to compromise his/her view of the evidence to allow the jury to return a unanimous verdict"); *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182 (4th Cir. 1994) (supplemental instructions to hung jury not coercive where "the jurors were not told to sacrifice their convictions" and "the tenor of the district court's instruction was not obnoxious"). Similarly,

> Courts have also disapproved of statements telling a deadlocked jury that it must reach a decision or "instruct[ing] a deadlocked jury to consider the burdens and expense [] of a new trial." *United States v. Brennan*, 326 F.3d 176, 193 (3d Cir. 2003) (collecting cases). On the latter point, the Court of Appeals has explained that "a charge is unduly coercive when the trial court not only states that a new trial will result, but goes further and unduly emphasizes the consequences, *i.e.*, time, toil, or expense, that will accompany a failure to arrive at an unanimous verdict."

Third Circuit Model Civil Jury Instruction 3.4, comment, *rev*. Aug. 2020 (cases collected in *Brennan* held that instructions emphasizing expense of retrial were coercive and were reversed). Moreover, for "jury instructions" in a bifurcated case to be "appropriat[e]," they must "focu[s] on the issue of liability and omi[t] any mention of damages." *Chlopek v. Fed. Ins. Co.,* 499 F.3d 692, 701 (7th Cir. 2007). Overall, left undisturbed, Court's statement answering the jury's question poses significant risk of juror confusion and contains improper statements. Accordingly, the Court should retract its prior statements with explanation, and issue a corrective jury instruction consistent with the Third Circuit Model Jury Instruction related to deadlocks. (*See* Exhibit B, Defendants' Proposed Corrective Jury Instruction).

### A. The Court's Statements Regarding Decisions of Different Subparts Poses Significant Risk of Confusion and May Inadvertently Coerce the Jury.

The Court's statement that "[y]ou could decide for the plaintiffs on subparagraph A of the three plaintiffs, and then decide for the defendants on subparagraph B, or vice versa" proves confusing and inadvertently coercive. (*Id*. at 151:21-23). *Cf. Wilson*, 257 F. App'x 547 (rejecting argument that instruction was improper where there was "nothing to suggest that any juror would believe it was necessary to compromise his/her view of the evidence to allow the jury to return a unanimous verdict"). Although likely intending to provide an example of *potential* deliberation results, this portion of the Court's response is confusing and poses significant risk that the jury may be encouraged to compromise their beliefs and engage in impermissible vote-trading or exchange in order to reach unanimity. Such conduct is expressly prohibited under the Third Circuit Model Jury Instruction related to deadlocking. Accordingly, the Court should retract its prior statements with explanation, and issue Defendants' proposed corrective jury instruction, Exhibit B.

### B. The Court's Encouragement of Compromised Beliefs Proves Confusing and Improper.

The Court instructed the jury that "you're allowed to compromise your beliefs if you want to reach a unanimous verdict." (Exhibit A, 152:8-10). The Court's instruction was improper and it is plainly inconsistent with the Third Circuit Model Jury Instructions. *Cf. Wilson*, 257 F. App'x 547; *Bethlehem Steel Corp.*, 41 F.3d 182 (supplemental instructions to hung jury not coercive where "the jurors were not told to sacrifice their convictions" and "the tenor of the district court's instruction was not obnoxious"). While the Court attempted to correct its error by also instructing the jury that "you should not give up, you know, deeply-held opinions just to reach a unanimous verdict" (*id*. at 10-12), these two sentences together pose significant risk of juror confusion as to how they should interact with other jurors or otherwise engage during continued deliberations. Accordingly, the Court should expressly retract its prior statement encouraging jurors to "compromise your beliefs" and provide a replacement instruction as proposed in Exhibit B.

### C. The Court's Statements Regarding the Expense of Potential Future Trials and Damages Prove Improper.

The Court wrongly instructed the members of the jury that their inability to come to unanimous decision would result in significant additional expense – both to the parties and to the judicial system. (Exhibit A, 152:15-21) ("And if you still can't agree, it may have to go in front of another jury and repeat this all over again, which would be very expensive for everybody, including the judicial system because you have to come in here and we have to get people out of their ordinary lives and come agree to be on the jury, so it's a big production."). Indeed, as the Third Circuit Model Jury Instructions' comments indicate, such statements have been previously disapproved. Third Circuit Model Civil Jury Instruction 3.4, comment, *rev*. Aug. 2020 (citing *Brennan*, 326 F.3d at 193 (collecting cases). Accordingly, the Court should retract this statement.

5

In addition, the Court similarly improperly raised the issue of potential damages before this jury. However, it is well-established that this trial is limited to only liability. *See* ECF 138 (Court approving the parties' proposal to bifurcate these proceedings and conduct a jury trial limited to the critical threshold liability question of whether the three individual Plaintiffs were Defendants' employees under the Fair Labor Standards Act (FLSA), Pennsylvania Minimum Wage Act (PMWA), and/or Pennsylvania Wage Payment and Collection Law (WPCL)). Thus, any mention of damages proves irrelevant and improper. *Chlopek,* 499 F.3d at 701 (jury instructions in bifurcated case should only focus on liability and omit mention of damages). Accordingly, the Court should retract this statement.

### III. CONCLUSION

For the foregoing reasons, the Court should retract its prior statements with explanation, and issue Defendants' proposed corrective jury instruction, Exhibit B. Defendants respectfully submit that if the Court fails to correct its jury instruction before deliberations resume on June 18, the substantial confusion and prejudice that would result would taint the remaining deliberations and leave the Court no other choice but to declare a mistrial. If the Court declines to correct its instruction, Defendants request a mistrial.

| | |
|---|---|
| Dated: June 17, 2024 | Respectfully submitted, |
| | */s/Robert W. Pritchard* |
| | Robert W. Pritchard, Bar No. 76979 |
| | rpritchard@littler.com |
| | LITTLER MENDELSON, P.C. |
| | 625 Liberty Avenue, 26th Floor |
| | Pittsburgh, PA 15222 |
| | Telephone:   412.201.7600 |
| | Facsimile:    412.456.2377 |
| | |
| | Paul C. Lantis, Bar No. 309240 |
| | plantis@littler.com |
| | LITTLER MENDELSON, P.C. |
| | Three Parkway |
| | 1601 Cherry Street, Suite 1400 |
| | Philadelphia, PA 19102 |
| | Telephone: 267.402.3073 |
| | Facsimile: 267.402.3131 |
| | |
| | Attorneys for Defendants |
| | UBER TECHNOLOGIES, INC. and |
| | GEGEN LLC |

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of June 2024, Defendants' Motion for Corrective Jury Instruction was filed using the Eastern District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel and parties of record.

*/s/Robert W. Pritchard*